**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

LINDA GOEHRS                                    §
                                                §
v.                                              §     CIVIL ACTION NO. 4:26-cv-02743
                                                §
MADISON FONTENOT, ET AL.                        §

**INTERVENORS' MOTION TO REMAND
AND REQUEST FOR COSTS AND FEES**

Intervenors Michelle Fontenot ("Michelle") and Dallas Joseph Fontenot III

("Joe"), file this Motion to Remand and Request for Costs and Fees pursuant to 28

U.S.C. § 1447(c) because this removal (7 months into the litigation) was baseless,

frivolous, and done in an attempt to thwart the entry of a Temporary Injunction

against Defendants.

**SUMMARY OF THE ARGUMENT**

1.      Madison's Notice of Removal unsuccessfully attempts to invoke this

Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1), by misleadingly

claiming Defendants are both residents of the U.S. Virgin Islands. *See* Dkt. 1 at p. 2.

Even if that were true, which is dubious, diversity of citizenship did not exist at the

time this lawsuit was filed on August 21, 2025. On that date, the Trustee (Plaintiff)

resided in Harris County, Texas and Defendants were both domiciled in Harris

County, Texas where they lived and worked. Dakota admitted as much under oath

in his pleadings and his own sworn deposition testimony:

```
          And how long have you lived in St. Thomas
U.S. Virgin Islands?
     A.   Since mid-December?
     Q.   And prior to mid December of 2025, had you ever
lived in St. Thomas before?
     A.   No.
     Q.   And where did you live prior to mid-December of
2025?
     A.   Houston, Texas.
     Q.   And what was your address before you relocated
to St. Thomas?
     A.   2926 Fontana Drive.
     Q.   And how long had you lived there?
     A.   Since 2021, I'd say January, or -- yeah -- no,
December 2021.  Sometime around that time frame.
```

2.      "In cases removed from state court, diversity of citizenship must exist

both at the time of filing in state court and at the time of removal to federal court."

*Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). Based on the irrefutable record and

Dakota's own sworn testimony, diversity of citizenship did not exist between the

parties at the time this lawsuit was filed on August 21, 2025. Accordingly, this Court

lacks subject matter jurisdiction and remand is appropriate.

3.      The Court should also award fees and costs. The record before the Court

shows Defendant (who was a party on behalf of her children for six months) initiated

2

this baseless removal to try and avoid or delay a Temporary Injunction Order being entered by the probate court.

## FACTUAL AND PROCEDURAL BACKGROUND

4.      The Holli Ann Hardin Trust Number One (the "Hardin Trust") was created on or about June 5, 1991, by Holli Ann Hardin Fontenot ("Holli"). At the time, Holli was married to Dallas Joseph Fontenot, Jr. ("Dallas"). Dakota is the child of Holli and Dallas. Dallas has two children from a previous marriage, Intervenors Michelle and Joe. Dakota, Michelle, and Joe are each primary beneficiaries of the Hardin Trust. During his lifetime, Dallas owned numerous properties and businesses centered around the Colorado Bar & Grill, which is a gentleman's club located in Houston, Texas. Dallas accumulated millions of dollars of assets which at the time of his death were spread between his Estate, the Hardin Trust, and a separate trust known as the Dakota Trust (collectively the "Trusts").

5.      Dallas died on September 3, 2021. Litigation pertaining to Dallas's Estate and the Hardin Trust was resolved through a settlement agreement dated January 7, 2022 (the "Settlement Agreement"). In 2023, pursuant to the Settlement Agreement, Dakota took over as Officer and/or Director of Ice (the operating entity for the Club) and HFR (the entity that owned the land where the Club is located), both of which were owned by the Hardin Trust.

3

6.     Dakota hired his wife, Madison, and together they rewarded themselves handsomely for swiftly running the business into the ground. Faced with mounting debts, and unbeknownst to Michelle and Joe, Dakota negotiated a sale of Ice and the real property owned by HFR. Dakota and the Trustee closed on the sale the Ice stock and the real property owned by HFR on approximately July 1, 2025. After reduction for debts that Dakota and Madison had allowed to accrue, the Hardin Trust received approximately $700,000 out of a purported $5,000,000 purchase price.

7.     Due to Dakota's and Madison's mismanagement and misappropriation of Hardin Trust assets, on August 21, 2025, the Trustee filed this action against Dakota under Cause No. 537,721, in the Harris County Probate Court No. One. *See* Exhibit 1, Plaintiff's Original Petition. Michelle and Joe subsequently intervened and asserted causes of action against Dakota as well.

8.     The state court litigation proceeded, and Dakota actively participated and sought relief from the state court. Dakota filed numerous counterclaims and requests for interim relief, including a request for specific performance, a motion to compel mediation, a jury demand, and an application for relief under Texas Property Code § 114.008. *See* Dkt. 6, Appendix to Removal, Exhibits 10, 11, 17, 21, and 25. In October of 2025, Madison Fontenot filed an appearance and claims in the state court lawsuit as Next Friend for her two minor children, who lived in Texas at the

4

time. *See* Exhibit 2, Answer and Counterclaim of Madison E. Fontenot as Next Friend of S.F. and W.F., Minors.

9.    Unbeknownst to anyone, Dakota negotiated a separate agreement with the buyers. While this lawsuit was pending, at a hearing on October 24, 2025, Dakota finally revealed that he had sold EMM—an insolvent shell company—for $2,7500,00 payable to him personally in connection with the sale of the Ice stock and HFR real property, demonstrating a clear diversion of Trust assets away from the Hardin Trust, Michelle, and Joe.

10.    On January 15, 2026, Plaintiff amended her petition to add additional, related claims and a request for additional temporary and permanent injunctive relief arising from the undisclosed $2,750,000 EMM transaction. Michelle and Joe similarly amended their pleadings in January 2026, seeking injunctive relief to require that future installment payments for the sale of EMM be placed in the registry of the Court.

11.    The Trustee, Michelle, and Joe's Applications for Temporary Injunctive Relief were set for hearing on Friday, March 6, 2026. At the outset of the hearing, Dakota orally requested a continuance that did not comply with the Rules of Civil Procedure and was denied. On the second day of the Temporary Injunction proceedings, Dakota revealed that on March 5—the day before the Temporary Injunction hearing was set—he released any right to the $937,500 in future payments

under the EMM agreement in exchange for a significantly reduced lump sum payment of $575,000. Dakota further testified that he received the reduced lump sum payment during the injunction proceedings, and subsequently transferred the money to Madison, who then transferred at least a portion of the payment to her payments for an alleged lease of real property.

12.    Given this revelation, Michelle and Joe amended their pleadings again to add fraudulent transfer claims against Dakota and Madison.[1]

13.    On March 13, 2026, the state court concluded the Temporary Injunction proceedings, and orally granted the Temporary Injunction against Dakota. During a hearing before the state court to modify the Temporary Injunction, Madison filed a Notice of Removal in this Court, consented to by Dakota.

14.    Madison and Dakota's removal was a patently frivolous and transparent calculated attempt to prevent the state court from entering an amended Temporary Injunction against Dakota. Michelle and Joe file this motion to remand under 28 U.S.C. § 1447(c) and ask that the Court remand this case to Harris County Probate Court No. One and award their costs and fees.

---

[1] The claim in Madison's Notice of Removal that the Trustee sued her is inaccurate. The claims against Madison were asserted by Joe and Michelle.

## ARGUMENT AND AUTHORITIES

15.    Federal courts are courts of limited jurisdiction, and the authority to remove an action from state to federal court is solely conferred by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004). As a result, the removal statutes are strictly construed against the exercise of jurisdiction, with all doubts and ambiguities resolved in favor of remand. *Herron v. Continental Airlines, Inc.*, 73 F.3d 57, 58 (5th Cir. 1996); *Tebon v. Travelers Ins. Co.*, 392 F. Supp. 2d 894, 898 (S.D. Tex. 2005) (Jack, J.).

16.    This Court must presume that the suit before it lies outside of its jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563, 662 (S.D. Tex. 2005) (Jack, J.). In determining whether this presumption can be overcome in removal, the party seeking removal, and not the party moving to remand, has the "burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

17.    Madison claims that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires complete diversity of

7

citizenship, meaning "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020) (alteration in original). In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *Coury*, 85 F.3d at 249; *see also In re Allstate Ins. Co.*, 8 F.3d 219, 220 (5th Cir. 1993); *Scott v. Communications Services, Inc.*, 762 F. Supp. 147, 150 (S.D. Tex. 1991) (Hughes, J.).

18.    As diversity did not exist when this action was filed, this Court does not have jurisdiction, making removal improper and warranting remand.

**I.    Complete diversity did not exist at the time this lawsuit was filed.**

19.    In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *Coury*, 85 F.3d at 249. On August 21, 2025, both Dakota and Madison were domiciled in Harris County, Texas. Removal fails at the threshold.

20.    The time-of-filing rule is well-settled. "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.' *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). **This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.**" *Grupo Dataflux v. Atlas Global*

*Group, L.P.*, 541 U.S. 567 (2004) (emphasis added). This time-of-filing rule requires an analysis of the parties' citizenships at the time the state court action was filed.

21.    Importantly, a post-filing change in citizenship is wholly irrelevant to the jurisdictional analysis. A party cannot create diversity jurisdiction that did not exist at the time the case was filed by relocating after the fact:

> The change of a party's citizenship after commencement does not affect this court's diversity jurisdiction, which is determined by the citizenship of the parties at the commencement of the suit, not by their citizenship at removal. Although diversity is to be determined at removal by the pleadings, **the pleadings must demonstrate that the parties were diverse at the time of commencement in state court**, even if the original petition failed to demonstrate that the parties were diverse. **If the parties are not diverse at commencement, and one of them moves, creating diversity, the case cannot be removed because diversity did not exist at commencement**…This rule on removal is an extension of that applied in cases that are commenced originally in federal court. Diversity must exist when the plaintiff files the case."

*Scott v. Communications Services, Inc.*, 762 F.Supp. 147, 151 (S.D. Tex. 1991) (Hughes, J.) (emphasis added).

22.    For diversity purposes, the citizenship of an individual is determined by the individual's domicile. *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003). An individual's domicile is "where the individual resides with an 'intention to remain… indefinitely.'" *Solara*, 2021 WL 11723066, at *2 (quoting *Acridge*, 334 F.3d at 448). An individual's domicile "persists until a new one is acquired or it is clearly abandoned." *Coury*, 85 F.3d at

250. And "there is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict." *Id.* In determining a litigant's domicile, the Court must address numerous factors, with no single factor being determinative. *Id.* at 251. "The court should look to all evidence shedding light on the litigant's intention to establish domicile." *Id.* Those factors may include "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.*; *Solara*, 2021 WL 11723066, at *2 (applying the same factors). "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Coury*, 85 F.3d at 251.

23.     Dakota's domicile at the time of filing was Texas. Dakota lived in Houston, Texas, and owned property at 2926 Fontana Drive, Houston, Texas. He purports to serve as Trustee of a Texas trust administering property located in Texas. Dakota testified under oath that prior to mid-December 2025 he lived in "Houston, Texas," at "2926 Fontana Drive," and that he had lived at that address since 2021. *See* Exhibit 3, Dakota Fontenot Deposition Excerpts, at p. 8. He further testified that he had never lived in St. Thomas before mid-December 2025. *Id.* Further, Dakota

was, and is, a licensed attorney in the state of Texas, that operates a law firm organized under the laws of the state of Texas. *See id.*, p. 8:25–9:5, p. 10:20–11:4. These facts track the objective indicia that *Coury* directs this Court to weigh, including "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* at 251; *Solara*, 2021 WL 11723066, at \*2 (applying the same factors). All of them point to Texas.

24. Moreover, in a February 2025 filing just months before this lawsuit, Dakota admitted that he was a citizen and resident of Harris County, Texas. *See* Exhibit 4, No. 4:24-cv-01461, Dkt. No. 37, Dakota Fontenot's Original Answer (admitting allegations in a First Amended Third-Party Complaint that "Dakota J. Fontenot is a citizen and resident of Houston, Texas…"). "A person's domicile persists until a new one is acquired or it is clearly abandoned." *See Coury*, 85 F.3d at 250; *Solara*, 2021 WL 11723066, at \*2. Coupled with the Dakota's own testimony about when he allegedly moved to the Virgin Islands, Dakota's prior admissions indicate that he had not changed citizenship before this lawsuit was filed in August 2025, as he did not have a physical presence in the Virgin Islands until mid-December at the earliest.

11

25.     Madison's Notice of Removal does not address when Dakota allegedly became a U.S. Virgin Islands resident. It asserts only that he is currently a "resident" of the U.S. Virgin Islands. *See* Dkt. 1 at p. 2. That is not the inquiry *Coury* requires, and Dakota's own testimony forecloses any argument that he was a U.S. Virgin Islands citizen on August 21, 2025. Defendants have offered no affidavit, no declaration, and no evidence whatsoever on domicile—only the bare assertion in the Notice of Removal that each "is a resident of the U.S. Virgin Islands." *See* Dkt. 1 at p. 2. The Notice of Removal identifies no property owned in the U.S. Virgin Islands, no licenses issued there, no taxes paid there, no bank accounts maintained there, no exercise of civil or political rights there, no employment there, and no permanent home.

26.     The evidence unequivocally establishes that Dakota was a Texas citizen at the time this action was filed in state court. As the Plaintiff, the Trustee, was also a Texas citizen, diversity did not exist. Even assuming that Madison and Dakota could establish that Dakota's domicile changed during the pendency of this suit, diversity that did not exist at the commencement of the suit cannot be manufactured by later changes in citizenship. Diversity did not exist on August 21, 2025. Removal was therefore improper, and remand is required—even if there was diversity at the time of removal.

## II.    The Court should order Defendants to pay Intervenors' costs and fees.

27.    Under 28 U.S.C. §1447(c), this Court has discretion to award costs and fees associated with an improper removal. An award of costs and fees is appropriate, when, as here, the defendant's removal was objectively unreasonable. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

28.    As established *supra*, Madison and Dakota's removal based on diversity jurisdiction is objectively unreasonable. As explained by Justice Scalia, the time-of-filing rule ignored by Madison and Dakota's removal is "hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). It has been well-settled for decades, if not longer, that in removed cases, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury*, 85 F.3d at 249; *see also Scott v. Communications Services, Inc.*, 762 F.Supp. 147, 151 (S.D. Tex. 1991) (Hughes, J.). On August 21, 2025, the date this lawsuit was filed, complete diversity was absent. Neither the Notice of Removal nor any other filing by Defendants identifies a single fact suggesting either Defendant was domiciled anywhere other than Texas on August 21, 2025. Nor could it, as no such fact exists.

29.    The timing of the Notice of Removal—a clearly calculated attempt to deprive the state court of jurisdiction in the middle of a hearing to amend the

13

Temporary Injunction—coupled with the lack of any credible ability to claim that diversity existed when the lawsuit was filed, demonstrates that Madison and Dakota lacked an objectively reasonable basis to remove this case. Accordingly, the Court should award Michelle and Joe their costs and fees associated with these removal proceedings. *See* 28 U.S.C. § 1447(c); *see also Howard v. St. Germain*, 599 F.3d 455 (5th Cir. 2010) ("The decision to impose any fee award against one or all the Defendants, jointly and severally, is within the court's discretion").  Michelle and Joe have incurred $20,000 in reasonable and necessary attorneys' fees attributable to Madison's improper removal, consented to by Dakota. *See* Exhibit 5, Affidavit of Ryan O. Cantrell.

CONCLUSION

For the foregoing reasons, Intervenors Michelle Fontenot and Dallas Joseph Fontenot III, respectfully request that this matter be remanded to Probate Court No. One of Harris County, Texas, that the Court hold Dakota Fontenot and Madison Fontenot jointly and severally liable for all costs and attorneys' fees associated with the removal action, and for all other and further relief to which the Court finds Michelle and Joe entitled.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By:    */s/ Ryan O. Cantrell*

Ryan O. Cantrell, Attorney-in-Charge
Texas Bar No. 24055259
Southern District of Texas No. 726506
ryan.cantrell@chamberlainlaw.com
Mariah J. Karigan
Texas Bar No. 24123088
Southern District of Texas No. 3663234
mariah.karigan@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone:  (713) 658-1818
Facsimile:   (713) 658-2553

**ATTORNEYS FOR MICHELLE FONTENOT AND DALLAS JOSEPH FONTENOT III**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), Intervenors' counsel has conferred with counsel for Defendants Dakota Fontenot and Madison Fontenot regarding the relief sought herein. Counsel cannot agree about the disposition of this motion.

*/s/ Ryan O. Cantrell*
Ryan O. Cantrell

15

## CERTIFICATE OF SERVICE

On April 30, 2026, pursuant to Federal Rule of Civil Procedure 5, a correct copy of this pleading was sent to the following individuals through the Court's electronic case filing system:

*/s/ Ryan O. Cantrell*
Ryan O. Cantrell