# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA GOEHRS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:26-cv-02743 |
| | § | |
| MADISON FONTENOT, ET AL. | § | |

## INTERVENORS' OPPOSITION TO MOTION TO TRANSFER

Intervenors Michelle Fontenot ("Michelle") and Dallas Joseph Fontenot III ("Joe") file this Opposition to Madison Fontenot's Motion to Transfer (Dkt. No. 4). Notwithstanding the numerous misrepresentations contained in Madison's Motion to Transfer[1] and lack of any evidence whatsoever, as set forth in Intervenors' Motion to Remand, this Court does not have jurisdiction over this action and remand is appropriate. Even if the Court considered Madison's Motion to Transfer, Madison wholly failed to meet her burden to establish good cause for a convenience transfer, and transfer should therefore be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The Holli Ann Hardin Trust Number One (the "Hardin Trust") was created on or about June 5, 1991, by Holli Ann Hardin Fontenot. At the time, Holli was married to Dallas Joseph Fontenot, Jr. Dakota is the child of Holli and Dallas. Dallas has two

---

[1] For example, Madison alleges that Linda Goehrs "is likely not a proper party as she resigned as Trustee of the Trust." *See* Dkt. No. 4, p. 2. Madison offers no support for this entirely inaccurate claim, as Ms. Goehrs is still serving as Trustee and prosecuting claims against Dakota on behalf of the Trust.

35149116.v2

children from a previous marriage, Intervenors Michelle and Joe. Dakota, Michelle, and Joe are each primary beneficiaries of the Hardin Trust. During his lifetime, Dallas owned numerous properties and businesses centered around the Colorado Bar & Grill, which is a gentleman's club located in Houston, Texas. Dallas accumulated millions of dollars of assets which at the time of his death were spread between his Estate, the Hardin Trust, and a separate trust known as the Dakota Trust (collectively the "Trusts").

Dallas died on September 3, 2021. Litigation pertaining to Dallas's Estate and the Hardin Trust was resolved through a settlement agreement dated January 7, 2022 (the "Settlement Agreement"). In 2023, pursuant to the Settlement Agreement, Dakota took over as Officer and/or Director of Ice (the operating entity for the Club) and HFR (the entity that owned the land where the Club is located), both of which were owned by the Hardin Trust.

Dakota hired his wife, Madison, and together they rewarded themselves handsomely for swiftly running the business into the ground. Faced with mounting debts, and unbeknownst to Michelle and Joe, Dakota negotiated a sale of Ice and the real property owned by HFR. Dakota and the Trustee closed on the sale the Ice stock and the real property owned by HFR on approximately July 1, 2025. After reduction for debts that Dakota and Madison had allowed to accrue, the Hardin Trust received approximately $700,000 out of a purported $5,000,000 purchase price.

35149116.v2

Due to Dakota's and Madison's mismanagement and misappropriation of Hardin Trust assets, on August 21, 2025, the Trustee filed this action against Dakota under Cause No. 537,721, in the Harris County Probate Court No. One. *See* Exhibit 1, Plaintiff's Original Petition. Michelle and Joe subsequently intervened and asserted causes of action against Dakota as well.

Unbeknownst to anyone, Dakota negotiated a separate agreement with the buyers. While this lawsuit was pending, at a hearing on October 24, 2025, Dakota finally revealed that he had sold EMM—an insolvent shell company—for $2,7500,00 payable to him personally in connection with the sale of the Ice stock and HFR real property, demonstrating a clear diversion of Trust assets away from the Hardin Trust, Michelle, and Joe.

On January 15, 2026, Plaintiff amended her petition to add additional, related claims and a request for additional temporary and permanent injunctive relief arising from the undisclosed $2,750,000 EMM transaction. Michelle and Joe similarly amended their pleadings in January 2026, seeking injunctive relief to require that future installment payments for the sale of EMM be placed in the registry of the Court.

The Trustee, Michelle, and Joe's Applications for Temporary Injunctive Relief were set for hearing on Friday, March 6, 2026. On the second day of the Temporary Injunction proceedings, Dakota revealed that on March 5—the day

35149116.v2

before the Temporary Injunction hearing was set—he released any right to the $937,500 in future payments under the EMM agreement in exchange for a significantly reduced lump sum payment of $575,000. Dakota further testified that he received the reduced lump sum payment during the injunction proceedings, and subsequently transferred the money to Madison, who then transferred at least a portion of the payment to her payments for an alleged lease of real property. Given this revelation, Michelle and Joe amended their pleadings again to add fraudulent transfer claims against Dakota and Madison. *See* Exhibit 2, Intervenors' Third Amended Answer, Affirmative Defenses, Cross-Claims, and Application for Temporary Injunctive Relief.

On March 13, 2026, the state court concluded the Temporary Injunction proceedings, and orally granted the Temporary Injunction against Dakota. During a hearing before the state court to modify the Temporary Injunction, Madison filed a Notice of Removal in this Court, consented to by Dakota. Shortly thereafter, Madison filed the present conclusory, unsubstantiated Motion to Transfer, seeking a convenience transfer to the Virgin Islands under 28 U.S.C. § 1404(a).

**ARGUMENT AND AUTHORITIES**

## I.   This Court lacks subject matter jurisdiction and should remand the case to Harris County Probate Court No. 1.

As an initial matter, pending before the Court is Intervenors' Motion to Remand to Harris County Probate Court No. 1. *See* Dkt. No. 8. As set forth in

4

Intervenors' Motion to Remand, this Court lacks subject matter jurisdiction and this action was improperly removed to this Court. *Id.* Under the position adopted by many federal courts, the transferring court must have subject matter jurisdiction before it can order a transfer under 28 U.S.C. § 1404(a). *See Miller v. Warren Transport, Inc.*, 2019 WL 11593056 (S.D. Tex. Feb. 7, 2019) ("[T]he Court cannot consider a venue transfer without first determining that it has subject-matter jurisdiction over the case."); *Chandler v. United States*, 338 F.Supp.3d 592, 605 (N.D. Tex. 2018) ("Because the United States has shown that this case must be dismissed for lack of subject-matter jurisdiction, the Court cannot grant Ms. Chandler's request for a transfer of venue under Section 1404(a)…"; *see also Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 568 (5th Cir. 1991) ("Unless a federal court possesses subject matter jurisdiction over a dispute, therefore, any order it makes (other than an order of dismissal or remand) is void."). A challenge to a court's jurisdiction should usually be considered before a motion to transfer, and accordingly, this Court should rule on Intervenors' Motion to Remand before Madison's Motion to Transfer. Should the Court determine that it lacks subject matter jurisdiction, as Intervenors assert, Madison's Motion to Transfer will be moot.

5

To the extent the Court is inclined to consider Madison's Motion to Transfer, Madison wholly fails to meet her burden to establish good cause for a convenience transfer and her Motion should be denied.

## II. This action could not have been brought in the Virgin Islands.

Despite what Madison claims, this action is primarily focused on Dakota's mismanagement of Trust assets—Texas entities—and Dakota's misappropriation of Trust assets—proceeds from the sale of Texas entities. A substantial part of the acts and omissions giving rise to the claims took place in Texas, not the Virgin Islands. *See* Exhibit 1, Plaintiff's Original Petition; Exhibit 3, Plaintiff's First Amended Petition and Application for Additional Temporary and Permanent Injunctive Relief. Thus, as an initial matter, Intervenors dispute that this action "might have been brought" in the Virgin Islands. *See* 28 U.S.C. § 1404(a). At the time this action was filed in August 2025, Dakota and Madison were not Virgin Islands residents, and the claims did not arise out of any acts or omissions taken in the Virgin Islands. *See* Exhibit 1, Plaintiff's Original Petition; *see also* 28 U.S.C. § 1391. The threshold requirement for transfer under 28 U.S.C. § 1404(a) has not been met.

## III. Madison has not met her burden to establish good cause for a convenience transfer.

Even if the Court determined that this action could have been brought in the Virgin Islands, Madison has not met her burden to establish that the private and public interest factors weigh in favor of transfer to the Virgin Islands.

6

The party seeking transfer under 28 U.S.C. § 1404(a) must show good cause. "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.' At a minimum, showing 'good cause' requires the movant 'clearly [to] demonstrate' that its chosen venue is 'clearly more convenient. …Accordingly, to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious— i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.5th 502 (5th Cir. 2024) (quoting *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022)) (emphasis in original).

In determining transfer motions under 28 U.S.C. § 1404(a), courts are required to assess four private interest factors and four public interest factors. The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of

35149116.v2

conflict of laws [or in] the application of foreign law." *Id.* Important here given Madison's failure to address all 8 factors, "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).

### a. Madison has not, and cannot, establish that the private interest factors weigh in favor of transfer.

"Regarding the first public interest factor, the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Defense Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). Madison does not specifically identify any sources of proof located in the Virgin Islands, and instead makes conclusory allegations that "bank officials and real estate agents" reside in the Virgin Islands. *See* Dkt. No. 4, p. 3. Madison ignores, however, the litany of witnesses and sources of proof in Texas, including the purchasers of the Hardin Trust entities, the bookkeeper for the Hardin Trust entities, the CPA for the Hardin Trust entities, and the lender for loans that Dakota allowed to go into default to force a sale of the entities. *See* Exhibit 4, Intervenors' Initial Disclosures. These individuals possess relevant communications and documents regarding the sale of the entities and Dakota's management of the entities at issue in this lawsuit, and all are located in Texas. *Id.* Should there be any confusion about the relevance of these witnesses and the evidence they possess, one of the witnesses, Joanna Gonzalez-

Lambert, has already testified at a hearing in this matter, and her testimony will continue to be relevant. *See* Exhibit 5, Excerpts from September 24, 2025 Hearing Transcript.

Madison relies on the same conclusory allegations for the second private interest factor. Again, Madison fails to specifically identify a single witness that would be out of subpoena range for a Texas court, and instead focuses only on her and Dakota's alleged residence in the Virgin Islands. But this is not the relevant inquiry, as Madison and Dakota are parties and not subject to compulsory process rules that would apply to non-parties. "When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigation would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). On the contrary, there are numerous witnesses located in Texas (identified above) that would not be subject to compulsory process in the Virgin Islands, and Intervenors would be prejudiced by any transfer to the Virgin Islands—a forum that only has any relevance at all strictly due to Defendants' wrongdoing.

9

Finally, Madison does not address the third and fourth private interest factors, and accordingly the Court cannot weigh these factors in favor of transfer. *See Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).

**b. Madison has not, and cannot, establish that the private interest factors weigh in favor of transfer.**

Madison only addresses one of the public interest factors—the local interest factor—and states in a conclusory manner that the Virgin Islands has an interest in resolving a controversy involving its residents. *See* Dkt. No. 4, p. 4. However, this is not the relevant inquiry. "To identify localized interests properly, '[w]e look not to 'the parties' significant connections to each forum…but rather the significant connections between a particular venue and the events that gave rise to a suit.'…**That point bears repeating: We focus on the *events*—not the *parties***." *In re Clarke*, 94 F.4th 502 (5th Cir. 2024) (emphasis added) (internal citations omitted). Madison ignores this requirement and merely focuses on her and Dakota's alleged recent residency in the Virgin Islands. The events giving rise to this suit primarily involve Texas entities previously owned by a Texas Trust and sold to other Texas entities. *See* Exhibit 3, Plaintiff's First Amended Petition and Application for Additional Temporary and Permanent Injunctive Relief; Exhibit 2, Intervenors' Third Amended Answer, Affirmative Defenses, Cross-Claims, and Application for Temporary Injunctive Relief.

10

35149116.v2

Madison does not address, let alone argue, that the remaining three public interest factors support transfer to the Virgin Islands, and accordingly the Court cannot weigh these factors in favor of transfer. Madison has therefore not established that the public interest factors weigh in favor of transfer.

## CONCLUSION

Even if this Court were inclined to resolve Madison's Motion to Transfer before it determines Intervenors' Motion to Remand, transfer would be inappropriate. Madison wholly fails to meet her burden to establish good cause for transfer to the Virgin Islands. Madison's Motion, replete with conclusory allegations and devoid of *any* evidence, utterly fails to clearly establish that *any* of the private or public interest factors weigh in favor of transfer, let alone that good cause exists for transfer to the Virgin Islands. The Court should therefore exercise the broad discretion granted to it and deny Madison's Motion to Transfer Venue under 28 U.S.C. § 1404(a).

11

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By:    */s/ Ryan O. Cantrell*
Ryan O. Cantrell, Attorney-in-Charge
Texas Bar No. 24055259
Southern District of Texas No. 726506
ryan.cantrell@chamberlainlaw.com
Mariah J. Karigan
Texas Bar No. 24123088
Southern District of Texas No. 3663234
mariah.karigan@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone:  (713) 658-1818
Facsimile:   (713) 658-2553

**ATTORNEYS FOR MICHELLE FONTENOT AND DALLAS JOSEPH FONTENOT III**

## CERTIFICATE OF SERVICE

On May 12, 2026, pursuant to Federal Rule of Civil Procedure 5, a correct copy of this pleading was sent to all parties of record through the Court's electronic case filing system.

*/s/ Ryan O. Cantrell*
Ryan O. Cantrell

12

35149116.v2