FILED
8/21/2025 1:36 PM
Teneshia Hudspeth
County Clerk
Harris County - County Probate Court No. 1
Accepted By: TW

CAUSE NO. 537721 _____

| | |
|---|---|
| **LINDA GOEHRS, IN HER CAPACITY AS TRUSTEE OF THE HOLLI ANN HARDIN TRUST NUMBER ONE** | **IN THE PROBATE COURT** |
| *Plaintiff,* | |
| | |
| **v.** | **NO. <u>ONE</u> (1) OF** |
| | |
| **DAKOTA FONTENOT** | |
| *Defendant.* | **HARRIS COUNTY, TEXAS** |

1 PERS BY PP 8/22/2025

<u>**PLAINTIFF'S ORIGINAL PETITION**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff LINDA GOEHRS ("Plaintiff"), in her capacity as Temporary Successor Trustee of the Holli Ann Hardin Trust Number One, and files this her Original Petition and Application for Temporary and Permanent Injunctive Relief against Defendant DAKOTA FONTENOT ("Defendant"), and in support thereof would respectfully show unto the Court the following:

**I.**
**DISCOVERY CONTROL PLAN**

1.    Plaintiff intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

**II.**
**CLAIM FOR RELIEF**

2.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief of more than $1,000,000.00 and non-monetary relief.

Hardin Trust

Page 1 of 1

EXHIBIT
**1**

## III.
## PARTIES

3.      Plaintiff LINDA GOEHRS ("Plaintiff") is an individual residing in Harris County, Texas and currently serving as Temporary Successor Trustee of the Holli Ann Hardin Trust Number One (the "Hardin Trust").

4.      Defendant DAKOTA FONTENOT ("Defendant") is an individual domiciled in Harris County, Texas. DAKOTA FONTENOT may be served with process at 2926 Fontana Drive, Houston, Texas 77043, or any other location where he may be found. Defendant was the President and Director of Ice Embassy, Inc., was the President and Director of HFR Enterprises, Inc. and claims to be the purported trustee of the Dakota Trust and President of Viva Las Vegas Properties, Inc., and is being named in these capacities in addition to his individual capacity.

## IV.
## JURISDICTION AND VENUE

5.      Personal jurisdiction exists over Defendant because Defendant is an individual domiciled in Harris County; the State of Texas and this lawsuit arises from actions within Texas.

6.      This Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

7.      Venue is proper in Harris County, Texas pursuant to Texas Property Code § 115.001 because Defendant, the purported Trustee of the Dakota Trust, is an individual resident of Harris County and upon information and belief, the situs of the administration of the Dakota Trust is in Harris County. Venue is further proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002 because Harris County is the county in which all or a substantial portion of the events giving rise to Plaintiff's claims occurred.

Hardin Trust

8.      A Harris County Statutory Probate Court has jurisdiction over this matter because it is an action by or against a trustee and an action involving and inter vivos trust.  TEX. EST. CODE § 32.006

## V.
## FACTS

9.      The Hardin Trust was created on or about June 5, 1991, by Holli Ann Hardin Fontenot ("Holli"). *See* **Exhibit "A"**, *Trust Agreement*. At the time, Holli was married to Dallas Joseph Fontenot, Jr. ("Dallas"). Defendant is the child of Holli and Dallas.

10.      Dallas had two children from a previous marriage, Dallas Joseph Fontenot III ("Joe") and Michelle Ann Fontenot ("Michelle"). Defendant, Holli, Joe, and Michelle were each initial beneficiaries of the Hardin Trust. During his lifetime, Dallas owned numerous properties and businesses centered around the Colorado Bar & Grill (the "Colorado Club"), a gentleman's club located in Houston, Texas. Dallas accumulated millions of dollars of assets which at the time of his death were spread between his estate, the Hardin Trust, and a separate trust known as the Dakota Trust, which was created on November 9, 1994 by Holli as settlor. *See* **Exhibit "B"**, *Dakota Trust Agreement*.

11.      Until recently, the Hardin Trust owned 100% of the stock of Ice Embassy, Inc., which operated the Colorado Club. The Hardin Trust also owned 100% of the stock of HFR Enterprises, Inc., which, until recently, owned the real property on which the Colorado Club was operated.

12.      Dallas died on September 3, 2021, and his estate was probated in Fort Bend County Court at Law Number Four (4) under Cause No. 21-CPR-036521. Litigation pertaining to Dallas's estate and the two above-mentioned trusts (collectively the "Trusts") was resolved through a

settlement agreement dated January 7, 2022 (the "Settlement Agreement"). *See* **Exhibit "C"**, *Binding Mediated Settlement Agreement.*

13.    As part of the Settlement Agreement, the parties ultimately agreed that Holli would be bought out as a beneficiary of the Trusts, with certain assets to be paid to Holli in consideration of her disclaimer of further interest in the Trusts. Specifically, the Settlement Agreement dictated that Holli's interest in both Trusts "will be purchased by Dakota, Joe, Michelle, and/or the business entities owned by the Holli Ann Hardin Trust Number One." *Id.* at p. 5–6. Subsequently, Defendant, as President of HFR Enterprises, Inc. entered into a 2.8 million dollar loan agreement, in part to provide the necessary consideration for Holli's interest in both Trusts. *See* **Exhibit "D"**, *Amended and Restated Promissory Note.* The Hardin Trust then paid Holli $2,823,464 for her interest in both Trusts, representing 85% of the total value of the Dakota Trust assets and 20% of the total value of the Hardin Trust assets. *See* **Exhibit "E"**, *Assignment of Interest and Disclaimer of Further Interest.* The Hardin Trust effectively became the owner of Holli's 85% interest in the Dakota Trust. However, the payment has ultimately wrongfully benefitted Defendant as the now sole beneficiary of the Dakota Trust, to the detriment of the Hardin Trust and its beneficiaries.

14.    Defendant purports to be the Trustee of the Dakota Trust. However, upon information and belief, Defendant was not validly appointed as Trustee of the Dakota Trust. Defendant is not a named successor trustee in the Dakota Trust Agreement. *See* **Exhibit "B"**. On May 1, 2013, Decedent, as Trustee of the Dakota Trust, designated Defendant as a successor Trustee, but he later revoked this designation on October 14, 2017. *See* **Exhibit "F"**, *5/1/13 Designation of Successor Trustee*; *See* **Exhibit "G"**, *10/14/17 Designation of Successor Trustee.* Decedent similarly removed Defendant from all officer and director positions for any entities owned by the Dakota Trust, including Viva Las Vegas Properties, Inc. on the same day. *See* **Exhibit**

Page 4 of **15**

Hardin Trust

**"H"**, *Viva Las Vegas Resolution.* After Decedent's death, however, without the authority to do so, Defendant started acting as Trustee of the Dakota Trust and officer and director of Viva Las Vegas Properties, Inc. As purported Trustee of the Dakota Trust, Defendant has not repaid the Hardin Trust for any of the Hardin Trust assets used to buy out Holli's interest in the Dakota Trust.

15.     Defendant's wrongdoing at the expense of the Hardin Trust and its beneficiaries did not stop there. After the Settlement Agreement was signed, Defendant caused waste to assets held in the Hardin Trust. Defendant mismanaged the Colorado Club for personal benefit, including, but not limited to the following:

  a.   hiring his wife, who had little to no experience, to manage the Colorado Club;

  b.   paying his personal credit cards out of the company;

  c.   taking vacations and claiming they were a business expense;

  d.   paying personal expenses from the company;

  e.   making unnecessary and unreasonable improvements, many of which were never completed;

  f.   hiring multiple consultants and paying them hundreds of thousands of dollars with no apparent benefits provided;

  g.   Changing the system at the Colorado Club to have less oversight and allowing money to be taken or taking money from the club;

  h.   Taking a loan from his wife's stepfather for $150,000 and within a month, repaid the loan and $50,000 in interest, which was wired directly to an offshore account;

Hardin Trust

i.   Obligating the entities held by the Hardin Trust to lucrative an unnecessary Management Agreements and Administrative Agreements with an entity he owns, on top of taking a salary for the Club; and

j.   Using funds earmarked for repayment of the loan used to buy Holli's interest for his own personal benefit, allowing the company to default on the loan for months and causing a fire sale of the land and stock.

16.   Because of Defendant's actions, the Colorado Club declined in value significantly, ultimately harming the Hardin Trust.

17.   Upon information and belief, Defendant is seeking to liquidate as many assets as possible, including those held by entities owned by the Dakota Trust, and move to the Virgin Islands. Because of Defendant's wrongful actions, Plaintiff is left with no alternative but to petition this Court for relief.

## VI.
## ARGUMENT AND AUTHORITIES

A.   DECLARATORY JUDGMENT

18.   A person affected by a written contract or other writings constituting a contract may obtain a declaration of rights thereunder. TEX. CIV. PRAC. & REM. CODE § 37.004(a). The two prerequisites for a declaratory judgment action are: (1) there must be a real controversy between the parties and (2) the controversy must be one that will actually be determined by the judicial declaration sought. *Houston Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396, 401 (Tex. App.— Houston [1st Dist.] 2006, no pet.).

19.   In the matter at issue, Holli was a beneficiary of the two trusts at issue before being bought out pursuant to the Settlement Agreement. The assets used in consideration for Holli's relinquishment of further rights as a beneficiary of either of the Trusts came solely from those held

in the Hardin Trust. Because of this, Defendant has been wrongfully benefitted to the detriment of the Hardin Trust.

20.     Plaintiff, Joe, and Michelle never agreed and the Settlement Agreement did not dictate that Defendant would receive such benefit as the lone beneficiary of the Dakota Trust while the Hardin Trust cover all costs pertaining to Holli's buyout without receiving adequate consideration from the Dakota Trust. Instead, pursuant to the Settlement Agreement, Plaintiff became 85% beneficiary of the Dakota Trust. As of the date of this filing, Dakota has failed or otherwise declined to reimburse the Hardin Trust for amounts paid to Holli for the buyout, wrongfully depriving the Hardin Trust and resulting in an ultimately illicit benefit received by Defendant.

21.     Accordingly, there exists a controversy between Plaintiff and Defendant pertaining to the stipulations of the Settlement Agreement and Defendant's failure to abide thereby. Such controversy can be resolved through a declaration by the Court ordering that Defendant repay to the Hardin Trust the amounts received by Holli under the Settlement Agreement buyout and declaring that pursuant to the Settlement Agreement Plaintiff is 85% beneficiary of the Dakota Trust.

22.     Despite no authority to do so, Defendant has wrongfully acted when convenient for his self-dealing as the trustee of the Dakota Trust and/or officer/director of the entities comprising the Colorado Club in which Plaintiff holds an interest. Plaintiff is resultingly entitled to a declaration from the Court stipulating that, pursuant to the Settlement Agreement, Defendant is liable to Plaintiff for 50% of the amounts received by Holli under the Settlement Agreement buyout, Defendant is not trustee of the Dakota Trust or an officer/direct or any entity within the Colorado Club, and Plaintiff is 85% beneficiary of the Dakota Trust.

Hardin Trust

B.    <u>UNJUST ENRICHMENT</u>

23.    In certain circumstances where a party profits from the inequities borne by another, a cause of action for unjust enrichment is appropriate. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998). Unjust enrichment occurs when a person has wrongfully secured a benefit which it would be unconscionable to retain. *Eun Bok Lee v. Ho Change Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

24.    As detailed above, despite no authority in the Settlement Agreement, Defendant has received an unwarranted benefit because none of the assets held in the Dakota Trust were used to fund the buyout of Holli as beneficiary of each of the Trusts. By ignoring Plaintiff's status as 85% beneficiary of the Dakota Trust pursuant to the Settlement Agreement, Defendant has wrongfully benefited to the detriment of the Hardin Trust. Summarily, while each of the Trusts should have equally borne the costs of Holli's buyout, Defendant has received a disproportionate advantage.

25.    Further, since assuming control of the Colorado Club, Defendant has utilized the business as a means of funding his lifestyle by misappropriating funds rightfully belonging to the Trusts. As a result of Defendant's actions, the Colorado Club and other assets held by the Hardin Trust substantially decreased in value, causing further damage to the Hardin Trust.

26.    For these reasons, despite the Trusts existing to continue the business built by Dallas for the benefit of his family, Defendant has robbed the Hardin Trusts of substantial assets which should have fulfilled such purpose. Defendant has caused himself to be unjustly enriched while the Hardin Trust has suffered, entitling Plaintiff to recovery on its unjust enrichment claim against Defendant.

C.    <u>BREACH OF FIDUCIARY DUTY</u>

Hardin Trust

27.     To prevail on a breach of fiduciary duty claim, a plaintiff must prove that (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached their fiduciary duty to the plaintiff, and (3) the breach resulted in an injury to the plaintiff or benefit to the defendant. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The existence of a fiduciary duty is dependent upon the facts of a specific case, and may arise where one person trusts in and relies on another. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997).

28.     In 2022, Defendant assumed management and control of the Colorado Club, which comprised of numerous entities held in the Hardin Trust. By controlling the multi-million dollar business responsible for the value and funding of the Hardin Trust, Defendant assumed a position carrying fiduciary duties toward the Hardin Trust. Further, despite no authority to do so, Defendant has wrongfully acted as trustee of the Dakota Trust, to which Plaintiff is 85% beneficiary.

29.     Despite this, Defendant blatantly disregarded his responsibilities and duties toward the Hardin Trust as beneficial owner of the Colorado Club and 85% beneficiary of the Dakota Trust. Defendant fraudulently diverted hundreds of thousands of dollars from the operations of the Colorado Club and caused the operation to substantially decline in value. Because of this, Defendant was wrongfully benefited to the detriment of the Hardin Trust.

30.     For these reasons, Plaintiff is entitled to recover against Defendant upon its breach of fiduciary duty claim.

## VII.
## DAMAGES

31.     As a result of Defendant's actions, Plaintiff has been damaged in an amount far in excess of the minimum jurisdictional limits of the Court. However, because of the purposeful concealment of Defendant's wrongdoing, such amount of damages is currently unknown and likely

Hardin Trust

difficult to calculate. Plaintiff accordingly requests an award of all actual damages resulting from or proximately caused by Defendant's actions as described herein.

32.    Additionally, Defendant's fraudulent and malicious actions were taken with the purposeful intent to cause substantial injury or harm to Plaintiff. TEX. CIV. PRAC. & REM. CODE § 41.007(7). Because of this, Plaintiff is entitled to an award of exemplary damages against Defendant. TEX. CIV. PRAC. & REM. CODE § 41.003.

## VIII.
## APPLICATION FOR INJUNCTIVE RELIEF

33.    Based on the foregoing, there is a substantial likelihood that Plaintiff will prevail on the merits of the claims against Defendant. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). In addition, Plaintiff has no adequate remedy at law for Defendant's wrongful actions causing unknown damages unlikely to be fully traceable. *See Sharma v. Vinman Int'l, Ltd.*, 231 S.W.3d 405, 426–27 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Further, because of information and belief of Defendant's impending intent to liquidate any assets possible, including the real property located at 3414 Old Richmond Road, held by Viva Las Vegas Properties, Inc., and flee the country, unless Defendant is enjoined, Plaintiff will suffer clear, immediate, and irreparable injury.

34.    Upon information and belief, Defendant intends to close on the sale of real property located at 3414 Old Richmond Road by the end of August, and move to the Virgin Islands shortly thereafter.

35.    As detailed herein, Plaintiff has suffered and will continue to suffer irreparable harm from Defendant's conduct. Property rightfully belonging to the Hardin Trust is in jeopardy of its continued existence as a result of Defendant's past actions and continuing intention of

escaping justice. No amount of money can be reasonably calculated to fully compensate Plaintiff for these losses, even if Defendant was able to respond in payment of money damages.

36.     The harm to Plaintiff is ongoing and further harm is imminent, and if the Court does not issue injunctive relief, Plaintiff will be irreparably injured. Failure to enjoin Defendant is extremely likely to lead to the further depletion of property belonging to the Hardin Trust which Defendant has methodically withheld through fraudulent means. This includes, but is not limited to, Defendant's intentions of liquidating assets and leaving the country.

37.     Plaintiff has no adequate remedy at law because Defendant has absconded with funds that are very unlikely to be fully traceable. Defendant has additionally liquidated and misappropriated assets belonging to the Hardin Trust which are unlikely to ever be found. Further, greater injury will be inflicted upon Plaintiff by the denial of the requested injunctive relief than would be inflicted upon Defendant by granting such relief. Granting the injunctive relief herein would simply require Defendant to abide by his legal obligations and cease his purposeful harming of Plaintiff.

38.     The issuance of injunctive relief will not disserve the public interest. Balancing the equities and other factors, the significant potential of irreparable harm to Plaintiff without the injunctive relief and the lack of harm due to the entry of injunctive relief demonstrate that the requested relief will not disserve the public interest.

39.     In order to preserve the status quo during the pendency of this action, Plaintiff seeks a Temporary Restraining Order and Temporary Injunction against Defendant. Plaintiff requests a Temporary Restraining Order that Defendant, his agents, and other persons or entities in active concert or participation who receive actual notice of the Court's Order, by personal service or otherwise, be enjoined as follows:

Hardin Trust

a. Defendant is restrained from directly or indirectly selling or liquidating assets belonging to the Holli Ann Hardin Trust Number One, Dakota Trust, or entities owned by the Holli Ann Hardin Trust Number One or Dakota Trust;

b. Defendant is restrained from directly or indirectly causing assets or monies belonging to the Holli Ann Hardin Trust Number One, Dakota Trust, or entities owned by the Holli Ann Hardin Trust Number One or Dakota Trust to be sold, liquidated, or transferred;

c. Defendant must preserve all documents, records, or other information pertaining to the Colorado Club, the Holli Ann Hardin Trust Number One, Dakota Trust, or other assets received from Dallas Joseph Fontenot, Jr. or his estate. This includes, but shall not be limited to, all financial records, business records, information from banking or other financial institutions, and information pertaining to Defendant's personal bank accounts and other financial institutions accounts;

d. Defendant is restrained for directly or indirectly acting as trustee of the Dakota Trust or as an officer or director of any entity owned or controlled by the Holli Ann Hardin Trust Number One, Dakota Trust, Dallas Joseph Fontenot, Jr., or his estate; and

e. Defendant shall allow Plaintiff an opportunity to inspect, examine, and copy all information detailed above pertaining to the Holli Ann Hardin Trust Number One, Dakota Trust, Dallas Joseph Fontenot, Jr., or his estate.

40.     Plaintiff asks the Court to enter an ex-parte temporary restraining order to ensure that improper sale of real property does not occur.

41.     Plaintiff further seeks a temporary injunction and, upon final hearing or trial hereof, a permanent injunction for the relief requested above.

42.     Plaintiff is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

43.     Because of the urgency of this matter and potential inability to serve notice of this Application on Defendant before holding a hearing, proceeding *ex parte* may be necessary.

## IX.
## REQUEST FOR APPOINTMENT OF SUCCESSOR TRUSTEE

44.     As detailed above, despite Defendant's wrongful actions under the guise of the capacity of trustee, there currently exists no trustee of the Dakota Trust. The trust agreement of the Dakota Trust dictates that First Interstate Bank of Texas, N.A. shall serve as successor trustee following Dallas, who is deceased, and Holli, who no longer holds any interest in the Dakota Trust. *See* **Exhibit "B"**, *Dakota Trust Agreement*, at p. 5–7. First Interstate Bank of Texas, N.A. has not accepted appointment or otherwise acted as successor trustee in the more than four years since Dallas's death.

45.     Pursuant to Texas Property Code § 113.083(a), upon the vacancy of the position of trustee or failure to select a party for such role and upon petition of an interested party, a court may appoint a successor trustee. Because of the current lack of a trustee of the Dakota Trust, coupled with the extensive fraudulent actions of Defendant, Plaintiff requests that the Court appoint a neutral third-party as successor trustee of the Dakota Trust.

Hardin Trust

## X.
## CONDITIONS PRECEDENT

46.     All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## XI.
## JURY DEMAND

47.     Plaintiff requests a trial by jury on all claims included in this Original Petition.

## XII.
## ATTORNEY'S FEES

48.     Plaintiff has been required to employ counsel to bring this suit and requests an award of all reasonable and necessary attorney's fees for the services provided in representation and pursuit of this action.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, for the reasons detailed herein, Plaintiff LINDA GOEHRS, in her capacity as Temporary Successor Trustee of the Holli Ann Hardin Trust Number One, prays that Defendant DAKOTA FONTENOT be cited to appear and answer herein, and that the Court award a judgment against Defendant for the following:

a. Temporary Restraining Order;
b. Temporary Injunction;
c. Permanent Injunction;
d. Actual Damages;
e. Exemplary Damages;
f. Attorney's Fees;
g. Costs of Court; and
h. All other relief to which Plaintiff may be justly entitled.

Respectfully submitted,



**TEXAS PROBATE
ATTORNEY** PLLC

RUDOLPH M. CULP
State Bar No. 24043014
rudy@texsprobateattorney.com
COLLIN J. BULLARD
State Bar No. 24129570
collin@texasprobateattorney.com
***EFILE EMAIL:*** ***efile@texasprobateattorney.com***
**HOUSTON OFFICE:**
24 Greenway Plaza, Suite 1825
Houston, Texas 77046
O: (713) 297-0700
F: (817) 383-5110
**ATTORNEYS FOR PLAINTIFF**

Page **15** of 15

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Robin Edwards on behalf of Rudy Culp
Bar No. 24043014
robin@texasprobateattorney.com
Envelope ID: 104679620
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 8/22/2025 2:49 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Edwards | | robin@texasprobateattorney.com | 8/21/2025 1:36:04 PM | NOT SENT |
| Rudy Culp | | rudy@texasprobateattorney.com | 8/21/2025 1:36:04 PM | NOT SENT |
| Collin Bullard | | collin@texasprobateattorney.com | 8/21/2025 1:36:04 PM | NOT SENT |
| Texas Probate Attorney, PLLC | | efile@texasprobateattorney.com | 8/21/2025 1:36:04 PM | NOT SENT |

EXHIBIT

A



## TRUST DECLARATION FOR
## THE HOLLI ANN HARDIN TRUST NUMBER ONE

THIS TRUST DECLARATION is made this day by declaration of HOLLI HARDIN FONTENOT, a resident of Harris County, Texas ("Trustor"). The Effective Date of this Trust Declaration is June 5, 1991.

1. **Trust Estate.**

    1.1 **Creation of Trust.** The Trustor hereby establishes, declares, and creates this Trust for the purposes hereinafter set forth, and the Trustee agrees to serve as the initial trustee and to hold the Trust Estate (as hereinafter defined) in trust upon the following provisions.

    1.2 **Transfer in Trust.** On or about the Effective Date, the Trustor has transferred and delivered to the Trustee the cash sum of One Thousand and No/100 Dollars ($1,000.00). Such property shall constitute the initial property of the Trust Estate.

    1.3 **Beneficiaries.** The Beneficiaries of this Trust shall be HOLLI HARDIN FONTENOT, DALLAS JOSEPH FONTENOT, JR., ANNE S. FONTENOT, DALLAS JOSEPH FONTENOT, III, MICHELLE ANNE FONTENOT, and any children of the marriage of HOLLI HARDIN FONTENOT and DALLAS JOSEPH FONTENOT, JR., including any children adopted by HOLLI HARDIN FONTENOT and DALLAS JOSEPH FONTENOT, JR. after the Effective Date (collectively, "Primary Beneficiaries"). Also Beneficiaries of this Trust are the children and other issue of each of the Primary Beneficiaries. The term "Beneficiary" will also mean any and all persons, organizations, trusts, and entities who may have or may acquire a beneficial interest in this Trust, whether vested or contingent in nature, resulting from the exercise of a power of appointment by a Beneficiary or otherwise.

    1.4 **Release of All Rights in Property.** The Trustor hereby releases for the benefit of this Trust any and all rights which the Trustor may have in her individual capacity in the property constituting the Trust Estate.

    1.5 **Acceptance of the Trust.** By acceptance hereof the Trustee, on her behalf and on behalf of her successors in trust, does by the execution hereof acknowledge receipt of the Trust Estate. The Trustee shall own, hold, and possess the Trust Estate (including any additional property which may

Page 1 of 18 Pages

81142_81.01

003185

at any time hereafter be transferred to the Trustee) in trust solely in the capacity of Trustee. The Trustee and her successors in trust shall hold, manage, sell, exchange, invest, and reinvest the Trust Estate; collect all income therefrom; and, after deducting such expenses as are properly payable from income, accumulate and distribute the Trust Estate as herein provided.

1.6  Additions to Trust Estate. The Trustor and any other person shall have the right at any time to add property to the Trust created herein. Such property, when received and accepted by the Trustee, shall become part of the Trust Estate.

1.7  Name of Trust. This Trust shall be known as THE HOLLI ANN HARDIN TRUST NUMBER ONE.

2.  Irrevocability of Trust. The Trust herein created shall be irrevocable and shall not be altered, amended, revoked, or terminated by the Trustor or any other person except as specifically permitted by law.

3.  Definitions. As used herein, the following terms shall have the following meanings.

3.1  Children, Issue. The term "child" or "children" shall refer only to any and all children born in lawful wedlock or lawfully adopted, whether born or adopted before or after the date of execution of this Trust Declaration. The term "issue" shall refer to the lawful blood descendants in the first, second, or any other degree of the ancestor designated.

3.2  Heirs at Law. Whenever a trustee or a legal advisor to the Trustee is called upon to determine the heirs at law of the Trustor or any other person beneficially interested in this Trust, the determination will be made to identify those individual, other than creditors, who would receive the personal property of a decedent upon his or her death as determined in accordance with the laws of intestate succession of the State of Texas, and further determined as if the Trustor of this Trust shall have predeceased the person or persons so named or described.

3.3  Minor Beneficiary. The term "Minor Beneficiary" identifies a Beneficiary who is less than twenty one years of age.

3.4  Disability. A Beneficiary will be considered "disabled" if he or she is incapacitated to an extent to make it impossible or impractical to give prompt and intelligent

Page 2 of 18 Pages

R1142_S1.01

003186

consideration to business matters. The Trustee may act upon such evidence as the Trustee reasonably deems appropriate and reliable without liability by reason thereof.

3.5   Power of Appointment, Qualified Beneficiary Designation. Whenever this Trust gives a Beneficiary the power or authority to appoint a beneficiary of the Trust, the designation must be in writing and be acknowledged in the form required of acknowledgements by Texas law or exercised by a will executed with the formalities required by law of the Beneficiary's residence; it must clearly evidence the intent of the Beneficiary to exercise a power of appointment; and the written beneficiary designation must have been delivered to the Trustee prior to the Beneficiary's death or, if exercised by will, the will must have been filed for probate within three months from the date of the Beneficiary's date of death and must subsequently be admitted to probate no matter the time interval. The term of this Trust may be extended if the Qualified Beneficiary Designation requires that a Beneficiary's interest remain in Trust, or may be divided and be held as a separate trust which is governed by the terms of this Trust.

3.6   Trust Estate. The term "Trust Estate" shall mean any and all of the property delivered to the Trustee to be held, managed, and distributed under the terms of this Trust.

3.7   Trustee. For convenience, the term "Trustee," used in the singular, will mean and identify singular and multiple Trustees serving and acting pursuant to the directions of this Trust Declaration. The term "corporate Trustee" will identify a banking or trust corporation with trust powers.

4.   Appointment of Trustee.

4.1   Original Appointment. The Trustor appoints HOLLI HARDIN FONTENOT as Trustee of this Trust. In the event HOLLI HARDIN FONTENOT should fail to qualify, or having qualified, should die, resign, or become incapacitated or unable to act as Trustee of this Trust, or having qualified should subsequently become divorced from DALLAS JOSEPH FONTENOT, JR., then the Trustor appoints DALLAS JOSEPH FONTENOT, JR. as Trustee of this Trust. The parties acknowledge and agree that the rights and obligations of HOLLI HARDIN FONTENOT to serve as Trustee and to resign as Trustee in accordance with the foregoing have been and are the subject of separate consideration,

Page 3 of 18 Pages
H1142_81.01

003187

receipt of which is hereby acknowledged in full, and such rights and obligations are in the best interest of the administration of the Trust for its Beneficiaries.  HOLLI HARDIN FONTENOT specifically waives any rights which she may have to rescind or revoke her obligation to resign as Trustee upon divorce from DALLAS JOSEPH FONTENOT, JR.

4.2   <u>Succession</u>.  At any time on or after his appointment as Trustee of this Trust, DALLAS JOSEPH FONTENOT, JR. will have the right to appoint a successor or successors to serve as Trustee in the event that DALLAS JOSEPH FONTENOT, JR. chooses not to serve as Trustee or ceases to serve as Trustee for any reason, and DALLAS JOSEPH FONTENOT, JR. may specify any conditions upon succession and service as may be permitted by law.

For example, a successor may be required to furnish a fiduciary bond as a prerequisite or a successor's service may be condition upon the death, resignation, or inability to serve of another appointee.

At any time on or after his appointment as Trustee of this Trust, DALLAS JOSEPH FONTENOT, JR. may also provide that one or more designated successors will have the authority to appoint his, her, or its successor as Trustee.  An appointment of successor Trustee must be in writing and must be acknowledged to be effective.

In the absence of an appointment, or in the event all successors appointed by a Trustee shall fail or cease to serve for any reason, DALLAS JOSEPH FONTENOT, III is to be the successor as Trustee.

Trustor specifically provides that upon assumption of actual service as Trustee, DALLAS JOSEPH FONTENOT, III will have the right to appoint his successor as Trustee and to vest in a successor Trustee, upon assumption of that person's service, the right and authority to designate succession as Trustee.

In the event all of the Trustees named above, including duly appointed successors, fail or cease to serve for any reason, then FIRST INTERSTATE BANK OF TEXAS, N.A. is to be the successor Trustee.  The appointment of FIRST INTERSTATE BANK OF TEXAS, N.A. as Trustee will include any successor to FIRST INTERSTATE BANK OF TEXAS, N.A. by reason of its merger, reorganization, or sale to another banking corporation with trust powers or a trust company with trust powers.

Page 4 of 18 Pages
E1142_S1.01

003188

5.  **Distribution of Income and Trust Corpus, Living and Port-Mortem.**  The Trustee shall hold in trust or dispose of the Trust Estate as follows.

    5.1  **Distribution of Income and Principal.**  The Trustee will have the discretionary authority to distribute to any or all of the Primary Beneficiaries or to apply for the Primary Beneficiaries' use and benefit such amounts of the Trust income and principal of the Trust Estate, even to the exhaustion thereof, as the Trustee shall desire, in the absolute discretion of the Trustee.  The Trustee will have the discretionary authority to apportion or accumulate income to or for one or more of the Primary Beneficiaries in such amounts as the Trustee shall desire, in the absolute discretion of the Trustee; and the Trustee may distribute such amounts in equal or unequal shares, in the Trustee's absolute discretion. The Trustee may elect not to distribute any sums to any one or more of the Primary Beneficiaries.  Accumulated income shall be added to the principal of the Trust.

    5.2  **Term of the Trust.**  The term of this Trust shall be for so long as any of HOLLI HARDIN FONTENOT, DALLAS JOSEPH FONTENOT, JR., and ANNE S. FONTENOT shall live.  Upon the last to die of all of the foregoing, this Trust shall terminate; provided, however, that the Trust will continue for a reasonable term thereafter for the purpose of liquidation and settlement.

    5.3  **Distributions for Death Taxes.**  If the testamentary estate of the Trustor or any other Primary Beneficiary shall include any property of the Trust Estate because of the provisions of Sections 2036, 2037, and 2038 of the Internal Revenue Code of 1986 or any other provisions of the Internal Revenue Code of 1986, as amended, or under any corresponding statute hereafter in effect (dealing with inclusion of the Trust assets in the testamentary estate because of retained powers or otherwise), any death taxes (including but not limited to any estate tax) owing as a result of such inclusion shall be paid by this Trust.  This provision shall control notwithstanding any other provision contained in this Trust.  As used in this Trust Agreement, the term "death taxes" refers to all estate, inheritance, transfer, succession, legacy, or other death taxes of any kind and interest or penalty on such taxes, if any.

    5.4  **Distributions Upon Termination of the Trust.**  Upon termination of this Trust, the undistributed principal and income after the distributions, if any, allowed under Section 5.3 above, shall be divided in equal shares, one for each of DALLAS

Page 5 of 18 Pages

H1142_81.01

003189

JOSEPH FONTENOT, III, MICHELLE ANNE FONTENOT, and each of the children of the marriage of HOLLI HARDIN FONTENOT and DALLAS JOSEPH FONTENOT, JR., including any children adopted by HOLLI HARDIN FONTENOT and DALLAS JOSEPH FONTENOT, JR. after the Effective Date ("Trust Share"). Each of the foregoing, using a Qualified Beneficiary Designation, shall have the right to appoint the Beneficiary or Beneficiaries of the Trust Estate upon his or her death and the manner in which an appointee is to receive his, her, or its Trust Share. If such Beneficiary does not exercise his power of appointment with a Qualified Beneficiary Designation, the Beneficiary's Trust Share of the remaining property of the Trust, net of settlement costs, will pass upon the termination of the Trust *per stirpes*, outright and free of Trust, to his issue living at the time of his death or, if none, *per stirpes* to the Trustor's issue then living.

5.5  Distribution In Accordance With Texas Intestate Laws. In the event all Primary Beneficiaries and all of the issue of the Primary Beneficiaries have died, upon termination of this Trust the Trustee shall distribute the Trust Estate among the heirs at law of DALLAS JOSEPH FONTENOT, JR. in accordance with the Texas rules for intestate distribution as if the Primary Beneficiaries and all of the children and other issue of the Primary Beneficiaries had predeceased the Trustor.

5.6  Method of Distribution. During such time as the Trustee is so expending sums from the Trust Estate for the benefit of any Beneficiary or otherwise as provided herein, the Trustee is authorized to make payments or delivery of the portion or portions of the Trust Estate, either to the Beneficiary directly or to the person having the care and custody of the Beneficiary, all without the necessity of the appointment of any guardian. Without limitation on the foregoing, it is acknowledged and agreed that this Trust constitutes a grantor trust within the meaning of Sections 671, et seq. of the Internal Revenue Code of 1986, as amended and that the income therefrom will be taxed to the Trustor for so long as the Trustor shall live. It is further understood and agreed that the Trustee shall distribute to the Trustor (or to any other person who is deemed to be a grantor of this Trust and taxable on the income of the Trust within the meaning of Section 671, et seq. of the Internal Revenue Code of 1986, as amended) the incremental income taxes arising in connection with the taxable income of the Trust Estate or, at the election of the Trustee, the Trustee may make

Page 6 of 18 Pages
H1142_81.01

such distribution directly to the Internal Revenue Service for the benefit of such person.

5.7    Partial and Final Distributions.  The Trustee, in making or preparing to make a partial or final distribution, may prepare an accounting and may require any or all of the following as a condition to payment:  a written and acknowledged statement from each distributee that the accounting has been thoroughly examined and accepted as correct; a discharge of the Trustee; a release from any loss, liability, claim, or question concerning the exercise of due care, skill, and prudence of the Trustee in the management, investment, retention, and distribution of property during the Trustee's term of service (except for any undisclosed error or omission having basis in fraud or bad faith); and/or an indemnity for the benefit of the Trustee, to include the payment of attorney's fees, from any asserted claim of any taxing agency, governmental authority, or other claimant.  Any Beneficiary having a question or potential claim may require an audit of the Trust as an expense of administration.  Failure to require the audit prior to acceptance of the Trustee's report or the acceptance of payment will operate as a final release and discharge of the Trustee except as to any error or omission having basis in fraud or bad faith.

5.8    Contingent Trust for Certain Beneficiaries.  The interest of any Beneficiary who has not attained the age of thirty (30) years (the "Required Age") or who may be otherwise legally disabled and whose interest is not otherwise covered by the provisions of this Trust Declaration may, in the sole and absolute discretion of the Trustee, be continued in Trust or be held as a separate trust, for the use and benefit of that person until such person shall attain the Required Age or until such person is no longer disabled.  For so long as the Trustee holds the Trust for a Beneficiary pursuant to these terms, the Beneficiary, using the Qualified Beneficiary Designation, shall have the right to appoint the Beneficiaries of his or her interest in the Trust entitled to his or her interest upon the death of the Beneficiary.  If the Beneficiary dies prior to a final distribution of his or her interest from the Trust without having made a Qualified Beneficiary Designation, that person's interest in the Trust will pass *per stirpes* to his or her issue then living, or if none, *per stirpes* to the issue of the Trustor then living.

Page 7 of 18 Pages
B114Z_B1.01

003191

6.  Powers of the Trustee.  In order to carry out the purposes of this Trust Declaration, the Trustee, in addition to all other powers granted by law, shall have the following powers and discretions.

6.1  Retain Assets.  The Trustee shall have the power to continue to hold any and all property received by the Trustee or subsequently added to the Trust Estate or acquired pursuant to proper authority if and as long as the Trustee, in exercising reasonable prudence, discretion, and intelligence, considers that the retention is in the best interest of the Trust.

6.2  Investments.  The Trustee shall have the power to invest and reinvest in every kind of property, real, personal, or mixed, and every kind of investment, specifically including, but not by way of limitation, corporate obligations of every kind, and stocks, preferred or common, without regard to risk of loss or decline in value.

6.3  Management of Securities.  The Trustee shall have the power to exercise, respecting securities held in the Trust Estate, all the rights, powers, and privileges of owners, including, but not limited to the power to vote, give proxies, and to pay assessments and other sums deemed by the Trustee necessary for the protection of the Trust Estate; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and in connection therewith to deposit securities with and transfer title to any protective or other committee under such terms as the Trustee may deem advisable; to exercise or sell stock subscription or conversion rights; to accept and retain as an investment any securities or other property received through the exercise of any of the foregoing powers, regardless of any limitations elsewhere in this instrument relative to investments by the Trustee.

6.4  Form of Ownership of Trust Property.  The Trustee shall have the power to hold securities or other Trust property in the name of the Trustee as Trustee under this Trust Declaration or in the Trustee's own name or in the name of a nominee or in such conditions where ownership will pass by delivery.

6.5  Business Interests.  The Trustee shall have the power to continue and operate, to sell or to liquidate, as the Trustee deems advisable at the risk of the Trust Estate,

Page 8 of 18 Pages
E1142_81.01

003192

any business or partnership interests received by the Trust Estate.

6.6  Sell and Exchange.  The Trustee shall have the power to sell for cash or on deferred payments and on such terms and conditions as are deemed appropriate by the Trustee, whether at public or private sale, to exchange, and to convey any property of the Trust Estate.

6.7  Abandonment of Trust Assets.  The Trustee shall have the power to abandon any Trust asset or interest therein in the discretion of the Trustee.

6.8  Option.  The Trustee shall have the power to grant an option involving disposition of a Trust asset and to take an option for the acquisition of any asset by the Trust Estate.

6.9  Lease.  The Trustee shall have the power to lease any real or personal property of the Trust Estate for any purpose for terms within or extending beyond the duration of the Trust.

6.10  Property Management.  The Trustee shall have the power to manage, control, improve, and repair real and personal property belonging to the Trust Estate.

6.11  Development of Property.  The Trustee shall have the power to partition, divide, subdivide, assign, develop, and improve any Trust property; to make or obtain the vacation of plats and adjust boundaries or to adjust difference in valuation on exchange or partition by giving or receiving consideration; and to dedicate land or easements to public use with or without consideration.

6.12  Repair, Alter, Demolish, and Effect.  The Trustee shall have the power to make ordinary and extraordinary repairs and alterations in buildings or other trust property, to demolish any improvements, to raze party walls or buildings, and to erect new party walls or buildings as the Trustee deems advisable.

6.13  Borrowing and Encumbering.  The Trustee shall have the power to borrow money for any Trust purpose from any person, firm, or corporation on the terms and conditions deemed appropriate by the Trustee and to obligate the Trust Estate for repayment, upon such terms and conditions (including a term extending beyond the duration of the Trust) as the Trustee deems advisable; to encumber the Trust Estate or any of its property by mortgage, deed of

003193

trust, pledge, or otherwise, using whatever procedures to consummate the transaction deemed advisable by the Trustee; and to replace, renew, and extend any encumbrance and to pay loans or other obligations of the Trust Estate deemed advisable by the Trustee.

6.14   Natural Resources.   The Trustee shall have the power to enter into oil, gas, liquid or gaseous hydrocarbon, sulphur, metal and any and all other natural resource leases on terms deemed advisable by the Trustee, and to enter into any pooling, unitization, repressurization, community, and other types of agreements relating to the exploration, development, operation, and conservation of properties containing minerals or other natural resources; to drill, mine, and otherwise operate for the development of oil, gas, and other minerals; to contract for the installation and operation of absorption and repressurizing plants; and to install and maintain pipelines.

6.15   Insurance.   The Trustee shall have the power to procure and carry at the expense of the Trust Estate insurance of the kinds, forms, and amounts deemed advisable by the Trustee to protect the Trust Estate and the Trustee against any hazard.

6.16   Enforcement of Hypothecations.   The Trustee shall have the power to enforce any deed of trust, mortgage, or pledge held by the Trust Estate and to purchase at any sale thereunder any property subject to any such hypothecation.

6.17   Extending Time of Payment of Obligations.   The Trustee shall have the power to extend the time of payment of any note or other obligation held in the Trust Estate, including accrued or future interests, in the discretion of the Trustee.

6.18   Adjustment of Claim.   The Trustee shall have the power to compromise, submit to arbitration, release with or without consideration, or otherwise adjust claims in favor of or against the Trust Estate.

6.19   Litigation.   The Trustee shall have the power to commence or defend at the expense of the Trust Estate any litigation affecting the Trust or any property of the Trust Estate deemed advisable by the Trustee.

6.20   Administration Expenses.   The Trustee shall have the power to pay all taxes, assessments, compensation of the Trustee, and all other expenses incurred in the collection, care, administration, and protection of the Trust Estate.

Page 10 of 18 Pages

B1142_81.01

003194

6.21  <u>Employment of Attorneys, Advisers, and Other Agents</u>.  The Trustee shall have the power to employ any attorney, investment adviser, accountant, broker, tax specialist, or any other agent deemed necessary in the discretion of the Trustee and to pay from the Trust Estate reasonable compensation for all services performed by any of them.

6.22  <u>Termination by Trustee of Small Trust</u>.  The Trustee shall have the power to terminate, in the discretion of the Trustee, the Trust held for the Beneficiaries if the fair market value of the Trust at any time becomes less than $25,000.00 and, regardless of the age of the Beneficiaries to distribute the principal and any accrued or undistributed income to the Beneficiaries, or to their respective guardians, conservators, or other fiduciaries.

6.23  <u>Distribution</u>.  The Trustee shall have the power on any partial or final distribution of the income or principal of the Trust Estate, to apportion and allocate the assets of the Trust Estate in cash or in kind, or partly in cash and partly in kind, or in undivided interests in the manner deemed advisable in the discretion of the Trustee and to sell any property deemed necessary by the Trustee to make the distribution.

6.24  <u>Merger</u>.  The Trustee shall have the power to merge this Trust with any trust established for the benefit of substantially the same beneficiaries as the Beneficiaries of this Trust and to manage and administer the respective Trusts and Trust Estate as one Trust and Trust Estate subject to the terms and conditions of the Trust Declaration governing each of said Trusts.

6.25  <u>General</u>.  The Trustee shall have the power to do all the acts, to take all the proceeds, and to exercise all the rights, powers, and privileges which an absolute owner of the property would have.  The enumeration of certain powers in this Trust Declaration shall not limit the general or implied powers of the Trustee.  The Trustee shall have all additional powers that may now or hereafter be conferred by law or that may be necessary to enable the Trustee to administer the Trust in accordance with the provisions of this Trust Declaration, subject to any limitations specified in this Trust Declaration.  The Trustee shall further have the discretion to maintain reserves for depreciation and/or depletion.

Page 11 of 18 Pages
81142_81.01

7. **Duties and Compensation of the Trustee.**

7.1 **Allocation of Income and Principal.** The Trustee shall determine what is income and what is principal of the Trust created under this Trust Declaration and what expenses, costs, taxes, and charges of any kind whatsoever shall be charged against income and what shall be charged against principal in accordance with the applicable statutes of the State of Texas as they now exist and may from time to time be enacted, amended, or repealed.

7.2 **Relations With Trustee.** No one dealing with the Trustee need inquire concerning the validity of anything the Trustee purports to do, or need see to the application of any money paid or any property transferred to or upon the order of the Trustee.

7.3 **Compensation.** Unless such fee is waived or unless specific provision is otherwise made in the appointment of any Trustee, each Trustee shall be entitled to reasonable compensation for services as Trustee in accordance with the usual and customary charges in the community where and when such services are rendered. The fee schedules of area trust departments prescribing fees for the same or similar services may be used to establish reasonable compensation. A Trustee will be entitled to full reimbursement for expenses, costs, or other obligations incurred as the result of service, including attorney's, accountant's, and other professional's fees.

7.4 **Exculpation From Liability of Trustee.** The Trustee shall not be liable for any error or judgment or for any act done or omitted by the Trustee in good faith or for anything which the Trustee may in good faith do or refrain from doing in connection with this Trust. Accordingly, the Trustee shall not incur any liability with respect to any action taken or omitted in good faith upon the advice of counsel given in respect to any questions relating to the duties and responsibilities of the Trustee under this Trust Declaration or any action taken or omitted in reliance upon any instrument, including the written advice provided for herein, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which the Trustee shall in good faith believe to be genuine, to have been signed and presented by a proper person or persons, and to have conformed with the provisions of this Trust Declaration. The parties acknowledge and agree that the Trustee has no obligations to the Trust or any Beneficiary to offer to the Trust any investment opportunities presented to

Page 12 of 18 Pages

H1142_81.01

003196

Trustee individually during the term of the Trust Declaration.

7.5     Indemnity.   The Trustor shall at all times release and indemnify any successor Trustee and hold such successor Trustee harmless against any and all claims, suits, actions, debts, damages, costs, charges, and expenses, including court costs and attorney's fees, and against all liabilities, losses, or damages of any nature whatsoever that the Trustee shall at any time sustain or suffer in connection with acceptance or appointment as Trustee under this Agreement or as a result or arising out of the acquisition of any assets contributing to the Trust Estate, except to the extent of any such matter arising by reason or in consequence of the fraud or bad faith of the Trustee.

7.6     Bond.   No bond shall be required of the original Trustee hereunder.   Unless any instrument appointing a successor may provide otherwise, no bond shall be required of any successor Trustee; or if a bond is required by law, no surety shall be required on such bond.

7.7     Resignation.   Any Trustee of this Trust may at any time resign with respect to such Trust, with or without cause, effective ninety (90) days after delivery of notice of resignation thereof in writing to each current Beneficiary of this Trust.   If such Beneficiary is a minor, such delivery may be made to any guardian of such minor Beneficiary or to any adult with whom such minor Beneficiary resides.

7.8     Removal of a Trustee.   The Beneficiaries who are then entitled to receive distributions of income from the Trust or distributions of income from any separate trust created by this Trust Declaration may remove any corporate Trustee then serving, the notice of removal to be delivered in writing to the corporate Trustee.   Unless this Trust Declaration or any instrument appointing a successor provides otherwise, the selection of a successor to the corporate Trustee will be made by a court of competent jurisdiction.   In the event there is more than one Beneficiary entitled to the income from the Trust, all income Beneficiaries must join in the written notice of removal.   The consent of any person who is deceased or legally disabled will not be required in meeting the unanimous consent requirements for removal.

7.9     Liability of Trustee.   The Trustee in carrying out the Trustee's powers and performing the Trustee's duties may act in the

Page 13 of 18 Pages

81142_81.01

003197

Trustee's discretion and shall be personally or individually liable only for fraud or acts or omissions in bad faith. No Trustee shall be liable individually or personally for any act or omission of any agent or employee of Trustee unless the Trustee shall have acted in bad faith in the selection and retention of such agent or employee.

7.10 Accounts. The Trustee shall each year render an account of the administration of the Trust hereunder to each living Primary Beneficiary. If a Federal Fiduciary Income Tax Return is then required for this Trust, such accounting may be made by submission of a copy of such return filed for the Trust. If no objection to an accounting has been made in writing by such Primary Beneficiary within sixty (60) days after the date of mailing of such accounting by the Trustee, it shall be deemed approved. Such approval of such account shall, as to all matters and transactions stated therein or shown thereby be final and binding upon all persons (whether in being or not) who are then or may thereafter become interested in, or entitled to share in, either the income or the principal of such Trust, provided always, however, that nothing contained in this Section 7.10 shall be deemed to give such person (or the guardian or representative) acting in conjunction with the Trustee the power to alter, amend, revoke, or terminate the Trust.

7.11 Multiple Trustees. In the event that there are two or more Trustees serving the Trust, all Trustees must sign any instrument transferring real property from the Trust. If the Trustees agree to do so, one Trustee acting alone may be given the primary responsibility of administration and accounting, and one Trustee alone may be authorized to deposit, transfer, and withdraw funds from any depository account held by the Trust. The authority vested in two Trustees may be exercised only by both of the Trustees; and, subject to the foregoing provisions, the authority vested in three or more trustees may be exercised by a majority of the Trustees. In the event of an action or decision by a majority, the non-consenting Trustee will not be responsible for the act of the majority.

8. Spendthrift Provision. The interests of each of the Beneficiaries in the principal or income of the Trust created hereunder shall not be subject to the claims of his or her creditors or creditors of others, including creditors of a spouse of a married Beneficiary, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered until actually distributed to such Beneficiary.

Page 14 of 18 Pages
EI142_8).01

003198

9. <u>Perpetuities Savings Clause</u>.   Unless sooner terminated as otherwise provided in this Trust Declaration, the Trust created herein shall fully cease and terminate twenty-one (21) years after the date of the last survivor of the Trustor, the Primary Beneficiaries, and the children of each of the Primary Beneficiaries in existence as of the date of this Trust.   Upon such termination, the entire principal of the Trust Estate of the Trust, together with any undistributed income therefrom, shall vest in and be distributed to the persons entitled to take under the provisions of the Trust.

10. <u>In Terrorem Provision</u>.   If any person entitled to receive any interest from this Trust shall contest the validity of this Trust or any provision thereof or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this Trust or to prevent any provision thereof from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), then all benefits provided to such person in this Trust shall be revoked, and such benefits shall pass as if such person were not then living.

11. <u>Construction of Trust</u>.

   11.1 <u>Governing Law</u>.   This Trust Declaration shall be governed by the laws of the State of Texas.

   11.2 <u>Severability</u>.   If any part, clause, provision, or condition of this Trust Declaration is held to be void, invalid, or inoperative, such voidness, invalidity, or inoperativeness shall not affect any other clause, provision, or condition hereof; but the remainder of this Trust Declaration shall be effective as though such clause, provision, or condition had not been contained herein.

   11.3 <u>Interpretative Clause</u>.   As used in this Trust Declaration, the masculine, feminine, or neuter gender, and the singular or plural number shall each be deemed to include the others whenever the context so indicates.

   11.4 <u>Notices</u>.   All communications required to be given to the Trustor, the initial Trustee hereunder, or the Primary Beneficiaries (including notice of change of address) shall be in writing and shall be deemed to be duly given if and when personally delivered, or, if mailed via certified mail, return receipt requested, when tendered into the care and custody of the United States postal service properly addressed to as follows:

Page 15 of 18 Pages

B1142_81.01

003199

If to Trustor or Trustee:

HOLLI HARDIN FONTENOT
6002 Burning Tree Drive
Houston, Texas   77036


If to Primary Beneficiaries:

Dallas Joseph Fontenot, Jr.
6002 Burning Tree Drive
Houston, Texas   77036

Anne S. Fontenot
8526 Leader
Houston, Texas   77036

Dallas Joseph Fontenot, III
8526 Leader
Houston, Texas   77036

Michelle Anne Fontenot
8526 Leader
Houston, Texas   77036

11.5  Copies.  To the same extent as if it were the original,
anyone may rely on a copy of this Trust Declaration
certified by a notary public to be a true copy of this
Trust Declaration.  Anyone may rely on any statement of
fact certified by anyone who appears from the original
Trust Declaration or a certified copy thereof to be a
Trustee hereunder.

IN WITNESS WHEREOF, I, the undersigned, HOLLI HARDIN
FONTENOT, attest that I have executed this Declaration of Trust
and that the terms thereof will bind me and my successors and
assigns, my heirs and personal representatives, and any Trustee
of this Trust.  This Trust Declaration has been signed by the
Trustor on the Effective Date.

_____
HOLLI HARDIN FONTENOT


Page 16 of 18 Pages
BJ142_81.01

003200

THE STATE OF TEXAS     §

                              §

COUNTY OF HARRIS     §

         This instrument was acknowledged before me on this the 5th day of June, 1991, by HOLLI HARDIN FONTENOT.



Notary Public in and for
The State of T E X A S

_____
(Printed or Typed Name of Notary)

_____
(Commission Expiration Date)

## ACCEPTANCE BY TRUSTEE

I acknowledged that I have been appointed as a Trustee of THE HOLLI ANN HARDIN TRUST NUMBER ONE, and I hereby evidence my acceptance of the office of Trustee and will hold and administer the Trust according to the provisions thereof as required by law.

Date: _____

_____
HOLLI HARDIN FONTENOT

Page 17 of 18 Pages

81142_81.01

THE STATE OF TEXAS      §

COUNTY  OF  HARRIS     §

          This instrument was acknowledged before me on this the 5th day of June, 1991, by HOLLI HARDIN FONTENOT, TRUSTEE.



Notary Public in and for
The State of T E X A S

(Printed or Typed Name of Notary)

(Commission Expiration Date)

Page 18 of 18 Pages

H1142_81.01

003202

TO WHOM IT MAY CONCERN:

I, Holli Ann Hardin Fontenot, hereby voluntarily resign as trustee of the Holli Ann Hardin Fontenot Trust Number One and the Dakota Trust. This resignation as trustee shall be effective immediately upon acceptance by Dallas J. Fontenot, Jr.

Very truly yours,

Holli Ann Hardin Fontenot

Agreed and accepted this __8__ day of __SEPT.__, 1996.

Dallas J. Fontenot, Jr.

LDK238:19

TOTAL P.02

003203

EXHIBIT

B

# TRUST DECLARATION
# DAKOTA TRUST

THIS TRUST DECLARATION is made this day by declaration of Holli Hardin Fontenot ("Settlor"), who presently resides in Fort Bend County, Texas.

## ARTICLE I.
### TRUST BENEFICIARY

This Trust is created for the use and benefit of Dallas Joseph Fontenot, Jr. and Holli Hardin Fontenot. The term "Trust Beneficiary" or "beneficiary" will also mean any and all persons, organizations, trusts, and entities who may have or may acquire a beneficial interest in this Trust, whether vested or contingent in nature, including a transfer of an interest in the Trust during the life of either Dallas Joseph Fontenot, Jr. or Holli Hardin Fontenot, or both, or from the exercise of a power of appointment by a Trust Beneficiary or otherwise.

For reference, the only child of Dallas Joseph Fontenot, Jr. and Holli Hardin Fontenot is Dakota James Fontenot, who was born on June 22, 1994. Holli Hardin Fontenot has no other children born to her or adopted by her on the date of this Trust Declaration.

For reference, the only other children of Dallas Joseph Fontenot, Jr. are: Dallas Joseph Fontenot, III (who was born on March 29, 1969) and Michelle Anne Fontenot (who was born on March 12, 1970). Dallas Joseph Fontenot, Jr. has no other children born to him or adopted by him on the date of this Trust Declaration.

## ARTICLE II.
### INITIAL TRUST CORPUS AND RIGHT TO ADD TO THE TRUST

A.    INITIAL TRUST CORPUS.  Settlor does hereby declare that from and after the date of this Trust Declaration, Settlor holds in trust the assets described in Schedule A attached to this Declaration, which assets are the initial corpus of this Trust and as Trustee acknowledges receipts of those assets. Settlor or any other person, trust, or entity may add property of any

003271

character to this Trust by a Last Will and Testament, from another trust (whether inter vivos or testamentary), or by deed or other transfer, subject only to the acceptance thereof by the Trustee.

B.   **ADDITIONS TO TRUST CORPUS.**   Additional contributions may be made to the corpus of the Trust, including testamentary contributions.

C.   **SEPARATE PROPERTY.**   The assets of this trust are the separate property of Holli Hardin Fontenot.  No inter vivos transfer of property will be made to this Trust unless the property constitutes the separate property of Holli Hardin Fontenot. Holli Hardin Fontenot may make a testamentary contribution of property to this Trust, and such contribution may constitute the separate property of Holli Hardin Fontenot and Holli Hardin Fontenot's interest in community property.


## ARTICLE III.
### NO REVOCATION OR AMENDMENT

A.   **TRUST IS IRREVOCABLE.**   This Trust is an irrevocable Trust.

B.   **THIS TRUST MAY NOT BE AMENDED.**   This Trust Declaration may not be amended, except by a Court of competent jurisdiction under the doctrine of *cy pres*.

C.   **INCOME TAX MATTERS.**   For so long as the Settlor or Dallas Joseph Fontenot, Jr. is a Trustee of the Trust, the Trust will be treated for income tax reporting purposes as a Grantor Trust under Treasury Regulation § 1.671-4(b).  Thereafter, the Trust is to be treated for income tax purposes as required by the applicable provisions of Subchapter J of the Internal Revenue Code.


## ARTICLE IV.
### DEFINITIONS

A.   **DESCENDANTS.**   The term "Descendants" means the legitimate children of the person designated and the legitimate lineal descendants of such children.  The term includes any person adopted before attaining age eighteen (18) and the adopted person's legitimate lineal descendants.  A posthumous child shall be considered as living at the death of his parent.

003272

B.   **HEIRS AT LAW.**   Whenever a trustee, or a legal advisor to the Trustee is called upon to determine the heirs at law of Settlor, or any other person beneficially interested in this Trust, the determination will be made to identify those individuals, other than creditors, who would receive the personal property of a decedent upon his or her death as determined in accordance with the laws of intestate succession of the State of Texas, United States of America, determined as if the decedent had then died single, intestate, and domiciled in Texas and further determined as if the Settlor of this Trust had predeceased the person or persons so named or described.

C.   **INCOMPETENT, DISABILITY.**   A beneficiary will be considered "incompetent" or "disabled" if he or she is incapacitated to an extent to make it impossible or impractical to give prompt and intelligent consideration to business matters.   The Trustee may act upon such evidence as the Trustee reasonably deems appropriate and reliable without liability by reason thereof.

D.   **MINOR BENEFICIARY.**   The term "Minor Beneficiary" or "Minor" identifies a beneficiary who is less than 21 years of age.

E.   **PER STIRPES.**   Whenever a distribution is directed to be made to the descendants, *per stirpes*, of any person or persons, including the descendants of Dallas Joseph Fontenot, Jr. and Holli Hardin Fontenot, the property to be distributed shall be divided into as many equal shares as there are then living children of each of those persons and deceased children of each those persons who have descendants then living.   Each then living child of such person shall take one share, and the share for the descendants of each deceased child shall be divided among the deceased child's then living descendants on a *per stirpes* basis.

For example, if a distribution were to be made to the descendants, *per stirpes*, of Dallas Joseph Fontenot, Jr. and Holli Hardin Fontenot, assuming the recitations in Article I, the property to be distributed would be divided into three equal shares, one for each of Dallas Joseph Fontenot, III, Michelle Anne Fontenot, and Dakota James Fontenot.

F.   **RELATIVE OR RELATIVES.**   Reference to a "Relative" or "Relatives" will identify any person or persons related to Settlor by blood or lawful adoption in any degree.

003273

G.  **POWER OF APPOINTMENT, QUALIFIED BENEFICIARY DESIGNATION.**
Whenever this Trust Declaration gives a Trust Beneficiary the
power or authority to appoint a beneficiary of the Trust, the
designation must be in writing and be acknowledged in the form
required of acknowledgements by Texas law or exercised by a
will executed with the formalities required by law of the
Trust Beneficiary's residence; it must clearly evidence the
intent of the Trust Beneficiary to exercise a power of
appointment; and the written beneficiary designation must have
been delivered to the Trustee prior to the Trust Beneficiary's
death or, if exercised by will, the will must have been filed
for probate within three months from the date of the Trust
Beneficiary's date of death and must subsequently be admitted
to probate no matter the time interval.  The term of this
Trust may be extended if the qualified beneficiary designation
requires that a Beneficiary's interest remain in Trust, or may
be divided and be held as a separate trust which is governed
by the terms of this Trust Declaration.

H.  **SURVIVE.**  For the purpose of vesting in the event two or more
persons who have an interest in the trust die within a short
time of one another, one must have survived the other for a
period of at least 90 days as a condition to vesting.

I.  **TESTAMENTARY CONTRIBUTIONS.**  The term "testamentary
contributions" will mean any contribution to the Trust made by
reason of the death of a person, including transfers made
under the direction of a will, a beneficiary designation in a
life insurance policy or other contract, by reason of
survivorship language contained in a depository contract, or
transfers from another Trust which designates this Trust as a
beneficiary.

J.  **TRUST.**  "Trust" means the Trust created by this Trust
Declaration

K.  **TRUST DECLARATION.**  The term "Trust Declaration" and the term
"Trust Agreement" each refer to this Trust Declaration.

L.  **TRUST FUND.**  The term "Trust Fund" or "Trust Property" means
all property comprising:  the initial contribution of corpus
to the Trust;  all property paid or transferred to, or
otherwise vested in, the Trustee as additions to the corpus of
this Trust; accumulated income, if any, whether or not added
to the corpus of this Trust; and the investments and
reinvestment of the Trust property, including the increase and
decrease in the values thereof as determined from time to

Page 4 of 23 Pages

003274

time.    The terms "corpus" and "principal" are used interchangeably.

M.    **TRUSTEE.**    For convenience, the term "Trustee," used in the singular, will mean and identify multiple Trustees serving and acting pursuant to the directions of this Trust Declaration. The term "corporate Trustee" will identify a banking or trust corporation with trust powers.

N.    **GENDER, PLURAL USAGE.**    The use of personal pronouns, such as he, she, or it, are to be construed in context.    The term "person" will include a non-person, such as a corporation, trust, partnership or other entity as is appropriate in context.    The identification of person in the plural will include the singular and *vice versa*, as is appropriate in context.

## ARTICLE V.
## APPOINTMENT OF TRUSTEE

A.    **ORIGINAL APPOINTMENT.**    Holli Hardin Fontenot shall serve as initial Trustee of this Trust.

B.    **FIRST SUCCESSOR.**    In the event that Holli Hardin Fontenot should die, resign, or become incapacitated or unable to act as Trustee of this Trust, or in the event that Holli Hardin Fontenot should subsequently become divorced from Dallas Joseph Fontenot, Jr., then Dallas Joseph Fontenot, Jr. shall serve as successor Trustee of this Trust.    In the event that Dallas Joseph Fontenot, Jr. should elect not to serve as Trustee of this Trust, Dallas Joseph Fontenot, Jr. will have the right to appoint a successor or successors to serve as Trustee, as set forth in Section V.C below, and he may specify any conditions upon succession and service as may be permitted by law.

Holli Hardin Fontenot acknowledges and agrees that the rights and obligations of Holli Hardin Fontenot to serve as Trustee and to resign as Trustee in accordance with the foregoing have been and are the subject of separate consideration, receipt of which is hereby acknowledged in full; and such rights and obligations are in the best interest of the administration of the Trust for its Beneficiaries.    Holli Hardin Fontenot specifically waives any rights which she may have to rescind

003275

or revoke her obligation to resign as Trustee upon divorce from Dallas Joseph Fontenot, Jr.

C.   **SUCCESSION.**   Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment will have the right to appoint a successor or successors to serve as Trustee in the event that person ceases to serve for any reason, and each Trustee may specify any conditions upon succession and service as may be permitted by law. For example, a successor may be required to furnish a fiduciary bond as a prerequisite or a successor's service may be conditioned upon another appointee's death, resignation, or inability to serve. Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment may also provide that one or more designated successors as Trustee will have the authority to appoint his, her, or its successor as Trustee. An appointment of successor Trustee must be in writing and must be acknowledged to be effective. Unless other specified by a Trustee in a written designation of succession, succession is to be determined as follows.

If a Trustee by original appointment does not appoint a successor, the remaining Trustee or Trustees then serving will continue service alone. If all Trustees by original appointment fail or cease to serve for any reason without having appointed a successor or successors, the successor or successors as Trustee will be as named below and in the order of succession herein prescribed.

FIRST:   Dallas Joseph Fontenot, III

BUT:   Settlor specifically provides that upon assumption of actual service as Trustee, Dallas Joseph Fontenot, III will have the right to appoint Dallas Joseph Fontenot, III's successor as Trustee, and to vest in a successor Trustee, upon assumption of that person's service, the right and authority to designate succession as Trustee. To the extent this is done, the appointment of succession will supersede the appointments which follow the designation of Dallas Joseph Fontenot, III as Trustee.

NEXT:   Michelle Anne Fontenot

BUT:   Settlor specifically provides that upon assumption of actual service as Trustee, Michelle Anne Fontenot will have the right to appoint Michelle Anne Fontenot's successor as Trustee, and to vest in a successor Trustee, upon assumption of that person's service, the right and

003276

authority to designate succession as Trustee.  To the extent this is done, the appointment of succession will supersede the appointments which follow the designation of Michelle Anne Fontenot as Trustee.

FINALLY:  First Interstate Bank of Texas, N.A., in the event all of the above, including duly appointed successors, fail or cease to serve for any reason.  The appointment of First Interstate Bank of Texas, N.A. as Trustee will include any successor to First Interstate Bank of Texas, N.A. by reason of its merger, reorganization, or sale to another banking corporation with trust powers or a trust company with trust powers.

D.  **AUTHORITY OF SUCCESSOR TRUSTEE.**  A successor will have the authority vested in a Trustee by original appointment under this Trust Declaration, subject to any lawful limitations or qualifications upon the service of a successor imposed by one Trustee in a written document appointing a successor.  A successor Trustee will not be obliged to examine the accounts, records, or acts of the previous Trustee or Trustees; nor will a successor Trustee in any way or manner be responsible for any act or omission to act on the part of any previous Trustee.  Reference to "Trustee" in the singular will include the plural.

E.  **BOND.**  No one serving as Trustee will be required to furnish a fiduciary bond as a prerequisite to service.

F.  **RESIGNATION OR REMOVAL OF A TRUSTEE.**  Any appointee serving or entitled to serve as Trustee may resign at any time and without cause, and the instructions in this Trust Declaration will determine who the successor will be (including successors appointed by a Trustee as herein provided).  The trust beneficiary or beneficiaries who are then entitled to receive distributions of income from the trust, or distributions of income from any separate trust created by this document, may remove any corporate Trustee then serving, the notice of removal to be delivered in writing to the corporate Trustee. Unless this Trust Declaration or any instrument appointing a successor provides otherwise, the selection of a successor to the corporate Trustee will be made by a Court of competent jurisdiction.  In the event there is more than one beneficiary entitled to the income from the trust, all income beneficiaries must join in the written notice of removal.  The consent of any person who is deceased or legally disabled will not be required in meeting the unanimous consent requirements for removal.

003277

G.   **AFFIDAVIT OF AUTHORITY.** Any person or entity dealing with the Trust may rely upon the affidavit of a Trustee or Trustees of the Trust:

*On my [our] oath, and under the penalties of perjury, I [we] swear that I [we] am [are] the duly appointed and authorized Trustee[s] of DAKOTA TRUST. I [we] certify that I [we] have not been removed as Trustee[s] and have the authority to act for, and bind, DAKOTA TRUST in the transaction of the business for which this affidavit is given as affirmation of my [our] authority.*

_____
*Signature Line*

*Sworn and subscribed before me, the undersigned authority, by _____ this _____ day of _____, 19___.*

_____
*Notary Public - State of Texas*

H.   **DOCUMENTING SUCCESSION.** The successor to any Trustee may document succession with an affidavit setting forth that the preceding Trustee has failed or ceased to serve and the successor has assumed the duties of Trustee. The affidavit may be filed in the deed records of Fort Bend County, Texas and in each county in which real property held in Trust is located or in the county in which the principal assets and records of the Trust are located. The public and all persons interested in and dealing with the Trust and the Trustee may rely upon a certified copy of the recorded affidavit as conclusive evidence of a successor's authority to serve and act as the Trustee of the Trust.

I.   **COMPENSATION.** Any person who serves as Trustee may elect to receive a reasonable compensation, reasonable compensation to be measured by the time required in the administration of the Trust and the responsibility assumed in the discharge of the duties of office. The fee schedules of area Trust departments prescribing fees for the same or similar services may be used to establish reasonable compensation. A corporate Trustee will be entitled to receive as its compensation such fees as are then prescribed by its published schedule of charges for Trusts of a similar size and nature and additional compensation for extraordinary services performed by the corporate Trustee. A Trustee will be entitled to full reimbursement for expenses, costs, or other obligations incurred as the result of service, including attorney's, accountant's, and other professional fees.

J.   **MULTIPLE TRUSTEES.** In the event there are two Trustees serving the Trust, both must sign any instrument transferring real property from the Trust. If the Trustees agree to do so, one Trustee acting alone may be given the primary

Page 8 of 23 Pages

003278

responsibility of administration and accounting, and one Trustee alone may be authorized to deposit, transfer and withdraw funds from any depository account held by the Trust. The authority vested in three or more trustees may be exercised by a majority of the trustees. In the event of an action or decision by a majority, the non-consenting Trustee will not be responsible for the act of the majority.

ARTICLE VI.

DISTRIBUTIONS FROM THE TRUST,

LIVING AND POST-MORTEM

A.   FOR SO LONG AS HOLLI HARDIN FONTENOT AND DALLAS JOSEPH FONTENOT, JR. SHALL REMAIN MARRIED. For so long as Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr. shall remain married, the Trustee may from time to time distribute to or pay for the benefit of Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr., or either of them, so much of the net income (and, if the net income of the Trust is not sufficient, the principal of the Trust) as the Trustee determines may be necessary for the support, maintenance, health, and general welfare of Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr., or either of them. Such determination shall be in the absolute discretion of the Trustee, whose decisions shall be binding.

B.   UPON THE TERMINATION BY DIVORCE OF THE MARITAL RELATIONSHIP OF HOLLI HARDIN FONTENOT AND DALLAS JOSEPH FONTENOT, JR. Upon the termination by divorce of the marital relationship of Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr., the interest of Holli Hardin Fontenot in this Trust will terminate and this Trust is to be continued in trust for the benefit of Dallas Joseph Fontenot, Jr. as follows:

1.   This trust will is to be continued in Trust for the sole use and benefit of Dallas Joseph Fontenot, Jr. for so long as he shall live. Dallas Joseph Fontenot, Jr. will, for the duration of the Trust, be entitled to the net income of the Trust, this amount to be paid in convenient installment payments to be not less than quarter-annually. Distributions of income to Dallas Joseph Fontenot, Jr. shall be made in the amount, form, and manner required by Section 2523(f) of the Internal Revenue Code. If the income known by the Trustee to be available to Dallas Joseph Fontenot, Jr. from other sources is insufficient to provide for his continued

Page 9 of 23 Pages

003279

support and maintenance in good health, the Trustee will have the authority to pay to Dallas Joseph Fontenot, Jr. or apply for his benefit, so much of the principal of the Trust, even to the exhaustion thereof, as is necessary to provide for his support and maintenance in the style and comfort to which he is accustomed and to provide for his medical needs and maintenance of good health.   It is intended that the payment of principal be limited by the ascertainable standard provided above, that this provision comply fully with Treasury Regulation §20.2041-1(c)(2), and that this Trust is to be construed and limited to that end.   Dallas Joseph Fontenot, Jr. may at any time require that property which does not produce an income or a sufficient income be sold and invested in income producing property.

2.   Upon the death of Dallas Joseph Fontenot, Jr., Dallas Joseph Fontenot, Jr., by a clause in his Will in which he specifically exercises this power of appointment, shall have the power to appoint the then remaining trust assets to or for the benefit of any one or more of the descendants of Dallas Joseph Fontenot, Jr. or the descendants of Holli Hardin Fontenot, in such shares, proportions, or amounts, upon such trusts and for such estates as he alone may determine.   If Dallas Joseph Fontenot, Jr. fails to exercise this special power of appointment to the fullest extent, then, subject to the other provisions of this Trust, upon his death, the unappointed trust assets shall be delivered to the living descendants of Holli Hardin Fontenot who were born prior to the date of divorce and to the living descendants of Dallas Joseph Fontenot, Jr., *per stirpes*.

C.   **UPON THE DEATH OF HOLLI HARDIN FONTENOT WHILE MARRIED TO DALLAS JOSEPH FONTENOT, JR.**   Upon the death of Holli Hardin Fontenot while married to Dallas Joseph Fontenot, Jr. this Trust is to be continued in Trust as follows:

1.   This trust will is to be continued in Trust for the sole use and benefit of Dallas Joseph Fontenot, Jr. for so long as he shall live.   Dallas Joseph Fontenot, Jr. will, for the duration of the Trust, be entitled to the net income of the Trust, this amount to be paid in convenient installment payments to be not less than quarter-annually.   Distributions of income to Dallas Joseph Fontenot, Jr. shall be made in the amount, form, and manner required by Section 2056(b)(7)(B) of the Internal Revenue Code.   If the income known by the Trustee to be

003280

available to Dallas Joseph Fontenot, Jr. from other sources is insufficient to provide for his continued support and maintenance in good health, the Trustee will have the authority to pay to Dallas Joseph Fontenot, Jr. or apply for his benefit, so much of the principal of the Trust, even to the exhaustion thereof, as is necessary to provide for his support and maintenance in the style and comfort to which he is accustomed and to provide for his medical needs and maintenance of good health. It is intended that the payment of principal be limited by the ascertainable standard provided above, that this provision comply fully with Treasury Regulation §20.2041-1(c)(2), and that this Trust is to be construed and limited to that end. Dallas Joseph Fontenot, Jr. may at any time require that property which does not produce an income or a sufficient income be sold and invested in income producing property.

2.  Upon the death of Dallas Joseph Fontenot, Jr., Dallas Joseph Fontenot, Jr., by a clause in his Will in which he specifically exercises this power of appointment, shall have the power to appoint the then remaining trust assets to or for the benefit of any one or more of the descendants of Dallas Joseph Fontenot, Jr. or the descendants of Holli Hardin Fontenot, in such shares, proportions, or amounts, upon such trusts and for such estates as he alone may determine. If Dallas Joseph Fontenot, Jr. fails to exercise this special power of appointment to the fullest extent, then, subject to the other provisions of this Trust, upon his death, the unappointed trust assets shall be delivered to the living descendants of Holli Hardin Fontenot and to the living descendants of Dallas Joseph Fontenot, Jr., *per stirpes*.

D.  **UPON THE DEATH OF DALLAS JOSEPH FONTENOT, JR. WHILE MARRIED TO HOLLI HARDIN FONTENOT.** Upon the death of Dallas Joseph Fontenot, Jr. while married to Holli Hardin Fontenot, this Trust is to be continued in Trust as follows:

1.  This trust will is to be continued in Trust for the sole use and benefit of Holli Hardin Fontenot for so long as she shall live. Holli Hardin Fontenot will, for the duration of the Trust, be entitled to the net income of the Trust, this amount to be paid in convenient installment payments to be not less than quarter-annually. If the income known by the Trustee to be available to Holli Hardin Fontenot from other sources is insufficient to provide for her continued support and

Page 11 of 23 Pages

003281

maintenance in good health, the Trustee will have the authority to pay to Holli Hardin Fontenot or apply for her benefit, so much of the principal of the Trust, even to the exhaustion thereof, as is necessary to provide for her support and maintenance in the style and comfort to which she is accustomed and to provide for her medical needs and maintenance of good health. Holli Hardin Fontenot may at any time require that property which does not produce an income or a sufficient income be sold and invested in income producing property.

2.   Upon the death of Holli Hardin Fontenot, unless Holli Hardin Fontenot shall issue a direction to the contrary, the Trustee will pay from the Trust assets the entire increment in the taxes payable by reason of her death to the extent that the total of such taxes is greater than would have been imposed if the trust assets had not been taken into account in determining such taxes.

3.   Dallas Joseph Fontenot, Jr., by a clause in his Will in which he specifically exercises this power of appointment, shall have the power to appoint the trust assets remaining upon the death of Holli Hardin Fontenot to or for the benefit of any one or more of the descendants of Dallas Joseph Fontenot, Jr. or the descendants of Holli Hardin Fontenot, in such shares, proportions, or amounts, upon such trusts and for such estates as he alone may determine. If Dallas Joseph Fontenot, Jr. fails to exercise this special power of appointment to the fullest extent, then, subject to the other provisions of this Trust, upon his death, the unappointed trust assets shall be delivered to the living descendants of Holli Hardin Fontenot and to the living descendants of Dallas Joseph Fontenot, Jr., *per stirpes*.

E.   **ELECTION, QUALIFIED TERMINABLE INTEREST PROPERTY.** It is important to emphasize that upon the death of Holli Hardin Fontenot, or the termination by divorce of the marital relationship of Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr., Dallas Joseph Fontenot, Jr. will have no more than a life interest in the Trust. Dallas Joseph Fontenot, Jr. will have no right or power to revoke or amend this Trust. The Trustee may, without liability for doing so or the failure to do so, elect to treat all or a part of the Trust as Qualified Terminable Interest Property pursuant to the requirements of Section 2056(b)(7) or Section 2523(f) of the Internal Revenue Code, whichever is applicable. To the extent that an election is made, and unless Dallas Joseph Fontenot,

003282

Jr. shall issue a direction to the contrary, the Trustee will pay from the Trust assets the entire increment in the taxes payable by reason of his death to the extent that the total of such taxes is greater than would have been imposed if the property treated as qualified terminable interest property had not been taken into account in determining such taxes. To the extent a partial election is made, and to the extent and in the manner then permitted by law, the Trustee will have the authority (1) to divide the Trust into separate trusts to reflect the partial election, or (2) to continue the Trust as a whole, with the fraction or percentage of the whole representing the elective share to be administered and maintained in a manner to reflect its proportionate share of the increment or decline in the whole of the property for the purposes of applying Sections 2044 and 2519 of the Internal Revenue Code. If the Trust is divided into separate parts, the Trustee will make the division according to the fair market value at the time the division is made. It is Settlor's intent and purpose to comply with state and federal law so that the least amount of federal estate tax will be payable upon the deaths of Holli Hardin Fontenot and Dallas Joseph Fontenot, Jr., and this Trust Declaration is to be applied and construed to accomplish this objective.

F.    **DIVISION INTO SEPARATE TRUSTS.** If, following the death of Holli Hardin Fontenot or the termination by divorce of the marital relationship between Dallas Joseph Fontenot, Jr. and Holli Hardin Fontenot, the Trust is divided into separate trusts, the appreciation or depreciation in the value of each such trust or account will measure the value thereof for the purpose of disposition and taxation. For example, if the Trustee elects to treat all but $600,000 of the Trust assets as qualified terminable interest property for the federal estate tax marital deduction, and, if the Trustee segregates the $600,000 amount into a separate trust, the amount distributable therefrom upon the death of Dallas Joseph Fontenot, Jr. will be the value of that account upon the death of Dallas Joseph Fontenot, Jr. If, however, the $600,000 amount represents 25 percent of the total trust estate, and is continued and maintained as a fractional percentage of the whole, the value of the fractional interest upon the death of Dallas Joseph Fontenot, Jr. is to be determined with regard to its proportional share of any increase or decrease in the value of the whole.

G.    **ITEMS OF TANGIBLE PERSONAL PROPERTY IN TRUST.** Holli Hardin Fontenot may have certain items of tangible personal property which are her separate property and which have been

003283

transferred to the Trust or otherwise subject to the Trustee's control. The term "personal belongings" or "tangible personal property" will mean and identify personal wearing apparel, jewelry, household furnishings and equipment, books, albums, art work, entertainment and sports equipment, and all items of decoration or adornment. Holli Hardin Fontenot may at any time and from time to time deliver to the Trustee written instructions as to any living or post mortem gifts of such personal belongings, and the Trustee shall be authorized and bound to make disposition of these items as Holli Hardin Fontenot has reasonably directed.

H. **PARTIAL AND FINAL DISTRIBUTIONS.** The Trustee, in making or preparing to make a partial or final distribution, may prepare an accounting and may require, as a condition to payment, a written and acknowledged statement from each distributee that the accounting has been thoroughly examined and accepted as correct; a discharge of the Trustee; a release from any loss, liability, claim or question concerning the exercise of due care, skill, and prudence of the Trustee in the management, investment, retention, and distribution of property during the Trustee's term of service, except for any undisclosed error or omission having basis in fraud or bad faith; and an indemnity of the Trustee, to include the payment of attorney's fees, from any asserted claim of any taxing agency, governmental authority, or other claimant. Any remainder beneficiary having a question or potential claim may require an audit of the Trust as an expense of administration. Failure to require the audit prior to acceptance of the Trustee's report, or the acceptance of payment, will operate as a final release and discharge of the Trustee except as to any error or omission having basis in fraud or bad faith.

The Trustee, in making or preparing to make a partial or final distribution will have the authority to: (1) partition any asset or class of assets and deliver divided and segregated interests to the beneficiaries; (2) sell any asset or class of assets (whether or not susceptible to partition in kind), and deliver to a beneficiary or beneficiaries a divided interest in the proceeds of sale and/or divided or undivided interests in any note and security arrangement taken as part of the purchase price; and/or (3) deliver undivided interests in an asset or class of assets to the beneficiaries subject to any indebtedness which may be secured by the property.

I. **CONTINUATION OF THE TRUST DURING DISSOLUTION.** The Trust may continue beyond its termination for a time reasonably necessary to conclude the administration of the Trust, pay

003284

expenses of termination and to distribute to the Trust property to those entitled thereto.

J.   **CONTINGENT TRUST FOR CERTAIN BENEFICIARIES.**  The interest of any Trust Beneficiary who has not attained the age of thirty-five (35) years (the "required age"), or who may be otherwise legally disabled, and whose interest is not otherwise covered by the provisions of this Trust Declaration or another Trust, may, in the sole and absolute discretion of the Trustee, be continued in Trust, or be held as a separate trust, for the use and benefit of that person until such person shall attain the required age or until such person is no longer disabled. For so long as the trust shall exist, the Trustee shall hold, manage, and make distributions of income and principal to provide for his or her health, education, support and maintenance.  The Trustee may make an entire distribution of principal to a Trust Beneficiary prior to the required age if, in the Trustee's determination alone, the beneficiary has demonstrated an ability to conserve his or her resources or if it is no longer feasible for the trust to continue considering the size of the trust and the time and cost to maintain the trust.  The Trust Beneficiary, with consent of the Trustee, may also extend the term of the trust.

For so long as the Trust is held for a beneficiary pursuant to these terms, the Trust Beneficiary, using a qualified beneficiary designation, will have the right to appoint the beneficiaries of his or her interest in the Trust entitled to his or her interest upon the Trust Beneficiary's death.  If the Trust Beneficiary dies prior to a final distribution of his or her interest from the Trust, without having made a qualified beneficiary designation, that person's interest will pass *per stirpes* to his or her descendants then living, or if none, *per stirpes* to Settlor's descendants then living.

K.   **PERPETUITIES.**  In no event will the term of this Trust continue for a term greater than twenty-one (21) years after the death of the last survivor of Settlor and all relatives of Settlor living on the effective date of this Trust Declaration.  Any continuation of the Trust by the qualified exercise of a power of appointment will be construed as the creation of a separate trust and an extension of the Rule Against Perpetuities to the extent permitted by law.  A court of competent jurisdiction is to liberally construe and apply this provision to validate an interest consistent with Settlor's intent and may reform or construe an interest according to the doctrine of *cy pres*.

003285

ARTICLE VII.
PAYMENT OF DEBTS, TAXES, AND
SETTLEMENT COSTS
EXERCISE OF ELECTIONS

The following directions concern the payment of debts, taxes, estate and trust settlement costs, and the exercise of any election permitted by Texas law or by the Internal Revenue Code:

A.   PAYMENT OF INDEBTEDNESS AND SETTLEMENT COSTS.  The Trustee will have the discretionary authority to pay from the Trust Fund the costs reasonably and lawfully required to settle the estate of a deceased beneficiary.  In the event there is more than one Trust Beneficiary immediately preceding the death of a beneficiary, distributions of Trust income and principal to pay settlement costs will not exceed that person's trust share or the fair market value of the beneficiary's interest in the Trust which is distributable by reason of his or her death.

B.   SPECIAL BEQUESTS.  Unless otherwise provided in this Trust document, or in any amendment, or in a document exercising a power to appoint the beneficiaries of this Trust, if property given as a special bequest or gift is subject to a mortgage or other security interest, the designated recipient of the property will take the asset subject to the obligation and the recipient's assumption of the indebtedness upon distribution of the asset to the recipient.  The obligation to be assumed shall be the principal balance of the indebtedness on date of death, and the Trust shall be entitled to reimbursement or offset for principal and interest payments paid by the Trust to date of distribution.

C.   ESTATE, GENERATION SKIPPING, OR OTHER DEATH TAX.  Unless otherwise provided in this Trust document, or in a document exercising a power to appoint the beneficiaries of this Trust, estate, inheritance, succession, or other similar tax shall be charged to and apportioned to those whose gifts or distributive share generate a death tax liability by reason of Settlor's death or by reason of a taxable distribution from the Trust or a taxable termination of the Trust.  To the extent Settlor may lawfully provide, a Trustee may pay and deduct from a beneficiary's distributive share (whether the distribution is to be paid outright or is to be continued in Trust)·the increment in taxes payable by reason of a required distribution or termination of interest (i.e., estate, gift, inheritance, or generation skipping taxes) to the extent that the total of such taxes payable by reason of a distribution or

003286

termination is greater than the tax which would have been imposed if the property of the Trust subject to the distribution or termination of interest had not been taken into account in determining the amount of such tax. To the extent a tax liability results from the distribution of property to a beneficiary other than under this Trust, the Trustee will have the authority to reduce any distribution to the beneficiary from this Trust by the amount of the tax liability apportioned to the beneficiary, or if the distribution is insufficient, the Trustee will have the authority to proceed against the beneficiary for his, her, or its share of the tax liability. In making an allocation, the Trustee may consider all property included in the gross estate of the Settlor for federal estate tax purposes, including all property subject to probate, all amounts paid or payable to another as the result of death, including life insurance proceeds, proceeds from a qualified retirement plan or account, proceeds from a joint and survivorship account with a financial institution or brokerage company, proceeds from a buy-sell or redemption contract, and/or any other plan or policy which provides for a payment of death benefits. This provision further contemplates and includes any tax which results from the inclusion of a prior transfer in the federal gross estate of Settlor even though possession of the property previously transferred is vested in someone other than the Trustee. This provision does not include a reduction in the unified credit by reason of taxable gifts previously made by Settlor. If the Trustee determines that the collection of an apportioned tax liability against another is not economically feasible or probable, the tax liability will be paid by the Trust and will reduce the amount distributable to the residuary beneficiaries. The Trustee's judgment with regard to the feasibility of collection is to be conclusive.

D.   **SPECIAL ELECTION FOR QUALIFIED TERMINABLE INTEREST PROPERTY.**
For the purpose of identifying the "transferror" in allocating a GST exemption, the estate of Holli Hardin Fontenot or the Trustee of this Trust may elect to treat all of the property which passes in Trust to Dallas Joseph Fontenot, Jr. for which a marital deduction is allowed, by reason of Section 2056(b)(7) or Section 2523(f) of the Internal Revenue Code, as if the election to be treated as Qualified Terminable Interest Property had not been made. Reference to the "Special Election For Qualified Terminable Interest Property" will mean and identify the election provided by Section 2652(a)(2) of the Internal Revenue Code. The term "GST Exemption" or "GST Exemption Amount" is the dollar amount of property which may pass as generation skipping transfers under Subtitle B,

003287

Chapter 13, of the Internal Revenue Code of 1986 which is exempt from the generation-skipping tax.

E.  **ELECTIVE DEDUCTIONS.**  A Trustee will have the discretionary authority to claim any obligation, expense, cost, or loss as a deduction against either estate tax or income tax, or to make any election provided by Texas law, the Internal Revenue Code, or other applicable law, and the Trustee's decision will be conclusive and binding upon all interested parties and shall be effective without obligation to make an equitable adjustment or apportionment between or among the beneficiaries of this Trust or the estate of deceased beneficiary.

**ARTICLE VIII.**
**SERVICE OF THE TRUSTEE**
**OTHER MATTERS**

A.  **GENERAL AUTHORITY.**  A Trustee is to serve without Court supervision.  The service of a Trustee is to be governed first by the terms, conditions, and authority prescribed by this Trust Declaration, and then as prescribed by the trust laws of the State of Texas.

B.  **RETENTION OF ASSETS.**  A Trustee will have the authority to retain, without liability, any and all property in the form in which it is received by the Trustee without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole.  A Trustee will not have liability nor responsibility for loss of income from or depreciation in the value of property which was retained in the form which the Trustee received it.

C.  **UNDIVIDED INTERESTS.**  A Trustee will have the authority to hold, acquire, and dispose of undivided interests in property.

D.  **LENDING, INVESTING.**  A Trustee will have the authority to lend, borrow, lease, sell, and purchase property, including undivided fractional interests in property, upon such terms and conditions as are reasonably prudent under the facts and circumstances then existing. A Trustee may transact business, including lending, borrowing, leasing, and sale, between two or more related trusts or persons upon such terms and conditions as are reasonably prudent under the facts and circumstances then existing.  Without limiting the general authority above given, a Trustee will have the authority to hold, acquire and sell:

003288

- Publicly traded securities, including stocks, bonds, warrants, futures, mutual funds, partnerships, real estate investment trusts, diversified asset funds.
- Interests in a closely held corporation, partnership, or trust, whether registered or not registered for public sale.
- Obligations of the United States Government or any other government.
- Cash deposits, money market funds, brokerage company accounts, certificates of deposit, savings accounts, and checking accounts, without limitation as to the location of the account or depository.
- Promissory notes, secured and unsecured, including mortgage notes purchased at a discount.
- Land, improved and unimproved, whether presently income producing or held for appreciation in value.
- Land, building and equipment leases.
- Minerals, mineral rights and working interests in mineral producing property or property held for future development.
- Equipment, implements, stock in trade, leasehold improvements, and livestock.
- Insurance policies.

E. **LIMITATION UPON A TRUSTEE'S LIABILITY.** A Trustee, other than a banking corporation serving as a Trustee, will not have personal liability for service in a fiduciary capacity other than for acts or omissions to act which, as determined by a court of law, constitute gross negligence or fraud.

F. **PROTECTION OF THE INTERESTS OF BENEFICIARIES.** No beneficiary will have the power to anticipate, encumber or transfer any interest in the Trust. No part of the Trust will be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary.

G. **RELATIONSHIP WITH BENEFICIARIES WHO ARE MINORS OR INCOMPETENTS.** Distributions to an incompetent or disabled beneficiary, or a Minor Beneficiary may be made in such of the following ways as in the Trustee's opinion will be most beneficial to the interests of the beneficiary: (a) directly to such beneficiary; (b) to his or her parent, guardian or legal representative; (c) to a custodian for said beneficiary under any Uniform Gifts to Minors Act and/or Gifts of Securities to Minors Act in the jurisdiction of residence of such beneficiary; (d) to any person with whom he or she is residing; (e) to some near relative or close friend; or (f) by

003289

the Trustee using such payment directly for the benefit of such beneficiary, including payments made to or for the benefit of any person or persons whom said beneficiary has a legal obligation to support. The Trustee may in the Trustee's sole discretion instead hold such income or corpus for the account of such beneficiary as custodian. A receipt from a beneficiary or from his parent, guardian, legal representative, relative, close friend, or other person described above shall be a sufficient discharge to the Trustee from any liability for making said payments.

The Trustee is likewise authorized to consult with and act upon the advice of the parent, guardian, custodian, or legal representative of any beneficiary who is either an incompetent or a Minor with respect to any and all matters which may arise under this Declaration and as concerns the rights or interests of said beneficiary. All statements, accounts, documents, releases, notices, or other written instruments, including but not limited to written instruments concerning the resignation or replacement of any Trustee or Trustees, required to be delivered to or executed by such beneficiary may be delivered to or executed by the parent, guardian, custodian, or legal representative of said incompetent or Minor Beneficiary, and when so delivered or executed shall be binding upon said incompetent or Minor Beneficiary, and shall be of the same force and effect as though delivered to or executed by a beneficiary acting under no legal disability.

## ARTICLE IX.
### UNPRODUCTIVE OR UNDERPRODUCTIVE PROPERTY

A beneficiary who is then entitled to the income of the Trust, or the income of any other Trust established or continued pursuant to this trust declaration, will have the authority to issue a written directive to the Trustee to convert Trust Property which does not produce an income, or which is underproductive, into property which is income producing or which will provide a greater income to the trust. Upon actual receipt of an income beneficiary's written directive, the Trustee will reasonably and prudently proceed to convert unproductive or underproductive property into property which will produce a reasonable and safe rate of return. The Trustee may do so by selling the unproductive or underproductive asset upon such terms and conditions as is prudent and reasonable under all circumstances which may then exist (including the acceptance of an income or interest bearing obligation as the whole or a part of the sales price), and investing the proceeds of sale in income producing instruments or obligations. Notwithstanding

003290

these requirements, a Trust Beneficiary cannot direct the Trustee to invest or reinvest trust property in a trust investment which is speculative in nature or which, in result, would violate the spendthrift provisions of this Trust Declaration.

### ARTICLE X.
### NO-CONTEST REQUIREMENTS

Settlor vests in the Trustee the authority to construe this Trust instrument and to resolve all matters pertaining to disputed issues or controverted claims. Settlor does not want to burden this Trust with the cost of a litigated proceeding to resolve questions of law or fact unless the proceeding is originated by the Trustee or with the Trustee's written permission. Any other person, agency, or organization who shall originate (or who shall cause to be instituted) a judicial proceeding to construe or contest this Trust instrument, or any will which requires distribution of property to this Trust, or to resolve any claim or controversy in the nature of reimbursement, or seeking to impress a constructive or resulting Trust, or alleging any other theory which, if assumed as true, would enlarge (or originate) a claimant's interest in this Trust or in Settlor's estate, without the Trustee's written permission, shall forfeit any amount to which that person, agency, or organization is or may be entitled and the interest of any such litigant or contestant shall pass as if he or she or it had predeceased us. These directions shall apply even though the person, agency or organization shall be found by a court of law to have originated the judicial proceeding in good faith and with probable cause and even though the proceedings may seek nothing more than to construe the application of this no-contest provision. This requirement is to be limited, even to the exclusion thereof, in the event it operates to deny the benefits of the federal estate tax or federal gift tax marital deduction.

### ARTICLE XI.
### JURISDICTION

The jurisdiction of this Trust will be the State of Texas. Any issue of law or fact pertaining to the creation, continuation, administration, and termination of the Trust, or any other matter incident to this Trust, is to be determined with reference to the specific directions in the Trust Declaration and then under the laws of the State of Texas. If a Article or Subsection of this Trust Declaration is in conflict with a prohibition of state law or federal law, the Article or Subsection, or the Trust Declaration as a whole, is to be construed in a manner which will cause it to be

Page 21 of 23 Pages

003291

in compliance with state and federal law and in a manner which will result in the least amount of taxes and estate settlement costs.

## ARTICLE XII.
### ACCEPTANCE BY TRUSTEE

Holli Hardin Fontenot acknowledges that she is the initial Trustee of the DAKOTA TRUST. By execution of this Trust Declaration, Holli Hardin Fontenot accepts the office of Trustee and agrees to hold and administer the Trust according to the provisions thereof and as required by law.

### CONCLUSION AND ATTESTATION

Holli Hardin Fontenot attests that she has executed this Trust Declaration on the date set forth below, and the terms thereof will bind her, her successors and assigns, and her heirs and personal representatives. This instrument is to be effective upon the date recorded immediately below.

Dated:___November 9, 1994_____


_original signed by Holli Hardin Fontenot_

Holli Hardin Fontenot, individually and as Trustee

Page 22 of 23 Pages

003292

STATE OF TEXAS       §
                             §
COUNTY OF HARRIS    §

On this __9th__ day of __November__ in the year 199_4_ before me, a Notary Public of said State, personally appeared Holli Hardin Fontenot, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same in the capacities expressed therein.

WITNESS MY HAND and official seal.

_____<br>Notary Public, State of Texas

[SEAL]

003293

## SCHEDULE A TO
## TRUST DECLARATION
## DAKOTA TRUST

The Sum of SIXTY FOUR THOUSAND AND NO/100 DOLLARS ($64,000.00) from the Holli Ann Hardin Sole and Separate Property Account, which sum constitutes the separate property of the Settlor

003294

This trust may need a demand power after Holli's death so that we can take advantages of $10,000 per year exclusion for gifts of present interest.

003295



TO WHOM IT MAY CONCERN:

I, Holli Ann Hardin Fontenot, hereby voluntarily resign as trustee of the Holli Ann Hardin Fontenot Trust Number One and the Dakota Trust. This resignation as trustee shall be effective immediately upon acceptance by Dallas J. Fontenot, Jr.

Very truly yours,

Holli Ann Hardin Fontenot

Agreed and accepted this __8__ day of __SEPT.__, 1996.

Dallas J. Fontenot, Jr.

LDK238:19

TOTAL P.02

003296

EXHIBIT

C

## NO. 21-CPR-036521

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
| | § | |
| DALLAS JOSEPH FONTENOT, JR., | § | NUMBER FOUR (4) OF |
| | § | |
| DECEASED | § | FORT BEND COUNTY, TEXAS |

## NO. 21-DCV-288736

| | | |
|---|---|---|
| IN RE: | § | IN THE 240th DISTRICT COURT |
| | § | |
| | § | OF |
| HOLLI ANN HARDIN TRUST | § | |
| NUMBER ONE | § | FORT BEND COUNTY, TEXAS |

## BINDING MEDIATED SETTLEMENT AGREEMENT

The Parties – Dakota Fontenot, individually, in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in his capacity as next friend and virtual representative for S.F., a minor, Holli Ann Fontenot, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, Dallas Joseph Fontenot, III, individually, and in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One, Michelle Ann Fontenot, individually, in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in her capacity as next friend and virtual representative for A.E., a minor, and Ashley Fontenot Estrada, individually and in her capacity as a beneficiary of the Hollis Ann Hardin Trust Number One – hereto agree that all causes of action pending in cause number 21-CPR-036521 and cause number 21-DVC-288736, both of which are pending in Fort Bend County, Texas, and all related claims and/or controversies between them, whether asserted or not, known or unknown, actual or contingent, are hereby settled, in accordance with the terms of this Binding Mediated Settlement Agreement (hereinafter referred to as the "Settlement Agreement").

## A. DEFINITIONS

1. Whenever used in this Settlement Agreement, the following terms shall have and be construed to have the following meanings:

i. "Settlement Agreement" shall mean and refer to this Binding Mediated Settlement Agreement.

ii. "Dakota" shall mean and refer to Dakota Fontenot, individually, in his capacity as beneficiary of the Holli Ann Hardin Trust Number One, and in his capacity as next friend and virtual representative of S.F., a minor.

1

iii.   "Holli" shall mean and refer to Holli Ann Fontenot, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

iv.   "Joe" shall mean and refer Dallas Joseph Fontenot, III, individually and in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

v.   "Michelle" shall mean and refer to Michelle Ann Fontenot, individually, in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in her capacity as next friend and virtual representative of A.E., a minor.

vi.   "Ashley" shall mean and refer to Ashley Fontenot Estrada, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

vii.   "Trust" shall mean and refer to the Holli Ann Hardin Trust Number One.

viii.   "Estate" shall mean and refer to the Estate of Dallas Joseph Fontenot, Jr., whose administration is pending in cause number 21-CPR-036521, in the County Court at Law Number Four (4) of Fort Bend County, Texas.

ix.   "Parties" shall mean and refer to Dakota, Holli, Joe, Michelle, and Ashley, collectively, as described in paragraphs two (ii) through six (vi) above.

x.   "Claims" shall mean and include any and all causes of action, demands, debts, obligations, duties, liens, liabilities, and theories of liabilities of whatsoever kind and nature, whether based in contract or tort, whether arising in equity or under the common law, whether by statute or regulation, whether known or unknown, whether past or present, whether contingent or matured, whether for damages relief, injunctive relief, declaratory relief, equitable relief, or any other type of relief, whether for actual damages, personal injury damages, mental anguish, liquidated damages, punitive damages, exemplary damages, compensatory damages, consequential damages, incidental damages, pecuniary damages, costs, expenses, attorneys' fees, penalties, or fines that are (is), were (was), could be, or could have been asserted as of the Effective Date, regardless of whether actually asserted, whether by claim, counterclaim, cross-claim, motion, third-party claim regarding the Estate and Trust, including but not limited to, claims, whether asserted or not, known or unknown, actual or contingent.

xi.   "Effective Date" shall mean and refer to the date that the last Party to this Settlement Agreement executes the same.

xii.   In respect to any defined term herein, the singular shall include the plural, and the plural shall include the singular.

2

## B. TERMS, CONDITIONS, AND MUTUAL CONSIDERATION

1.      The Parties acknowledge that bona fide disputes and controversies exist between them, both as to liability and the amount thereof in damages, if any, and by reason of such disputes and controversies they desire to compromise and settle all Claims and causes of action of any kind whatsoever which the Parties have or may have arising out of the transactions or occurrences which have been brought or could have been brought regarding the Trust.

2.      **THE PARTIES AGREE AND ACKNOWLEDGE THAT UPON THE EXECUTION OF THIS SETTLEMENT AGREEMENT, THIS SETTLEMENT AGREEMENT SHALL BECOME BINDING AND IRREVOCABLE.**

3.      The Parties agree that the 2013 Last Will and Testament and 2017 First Codicil to the Last Will and Testament will be admitted to probate.  The Parties agree that Holli will be appointed as the Independent Executor of the Estate and agree not to object to the same.

4.      All of the Estate's assets, including all associated bank accounts, shall be distributed to Holli, save and expect the following items:

- The following items are going to be distributed to Dakota:

  o   The 2017 F150 Truck
  o   The 2013 Toyota Sequoia
  o   All interest, including all associated bank accounts, in Entertainment Marketing and Management, LP
  o   The coin collection and gold located in the backpack at the Rosenburg Office

- The following items are going to be distributed to Joe:

  o   The 2008 Honda Ridgeline
  o   One-half (1/2) of the Decedent's Tiki Mug Collection

The Parties agree to execute all documents necessary to effectuate the conveyance of all property described above the individual recipients stated in paragraph four (4).

5.      From the Rosenburg office, Holli shall be entitled to obtain:

- The remaining $150,000 in non-earmarked cash located in the backpack;
- Any and all Playboy Magazines

6.      The Parties agree that all personal property belonging to Dakota, Joe, and/or Michelle that is currently located at 10402 W. Hidden Lake Lane, Richmond, Texas 77406 shall be distributed to Dakota, Joe, and/or Michelle as appropriate.  Dakota, Joe and/or Michelle shall

3

be afforded the opportunity, within thirty (30) days of the Effective Date of this Settlement Agreement, to conduct a supervised walkthrough of their personal property located at 10402 W. Hidden Lake Lane, Richmond, Texas 77406. During that time, Dakota, Joe, and/or Michelle will take photographs of their personal property which they would like to obtain. A list and accompanying photographs will be delivered to counsel for Holli of those items within fourteen (14) days of the walkthrough being completed. Holli will have fourteen (14) days to object to the items which Dakota, Joe, and/or Michelle would like to obtain. If the parties cannot reach a resolution regarding the same, Russ Jones will mediate, at an hourly rate, the division of the disputed personal property. Upon the completion and approval of a final list of items, Dakota, Joe, and/or Michelle, at their expense, shall obtain and remove the items on the approved final list of items at a mutually agreeable date and time within fourteen (14) days of the approval of the final list of items.

7.      The attorney's fees for Holli, Dakota, Joe, Michelle, and/or Ashley may be paid from the assets of the Holli Ann Hardin Trust Number One in an amount no more than $200,000.00 per side. The Parties will present their fees to Linda Goehrs, in her capacity as Temporary Successor Trustee of the Holli Ann Hardin Trust Number One, for payment. The Parties agree that they will not object to the payment of the fees of any other party.

8.      The real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183 shall be distributed to Holli. Dakota, Michelle, and Joe, with Dakota as authorized representative, shall retain a right of first refusal in the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183. If Holli decides to sell or otherwise transfer the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183, Holli shall notify Dakota, Michelle, and Joe in writing and provide an appraisal completed by a certified and licensed real estate appraiser. From the date of receipt of that notice, Dakota, Michelle, and/or Joe shall have 30 days to exercise their right to purchase the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183. If exercised, Dakota, Michelle, and/or Joe shall enter into a real estate contract to purchase the property with a proposed closing date sixty (60) days from the date of receipt of the notice of sale or transfer triggering the right of first refusal. Holli is not required to sell at the appraised value if she receives offers in excess of the appraised value. If Holli receives an offer greater than the appraised value, the right of first refusal will be triggered upon delivery of the great offer to Dakota as authorized representative. The right of refusal will not renew if it is not exercised against the greatest value delivered by Holli.

9.      With regard to the further administration of the Holli Ann Hardin Trust Number One:

- The Parties agree that the assets of the Holli Ann Hardin Trust Number One shall be appraised by certified and licensed business or real estate appraisers, as is appropriate for the particular asset. Russ Jones shall select the appraisers to complete the real estate and business appraisals. The costs of the appraisals shall be borne by the Holli Ann Hardin Trust Number One.

4

• The Parties agree that, once the values on the appraisals are obtained for all Holli Ann Hardin Trust Number One assets, Holli's interest will be purchased by Dakota, Joe, Michelle, and/or the business entities owned by the Holli Ann Hardin Trust Number One in an amount equal to the twenty percent (20%) of the total value of the assets. Such purchase will occur within ninety days (90) of the completion of the valuation of the assets of the Holli Ann Hardin Trust Number One.

• The Parties agree that during the appraisal period described above, Linda Goehrs, in her capacity as Temporary Successor Trustee and/or Dakota, shall execute the necessary documents to install Dakota as an Officer and/or Director of Ice Embassy, Inc., HRF Enterprises, Inc., and Entertainment Marketing and Management, LP.

• The Parties agree that Linda Goehrs shall remain Temporary Successor Trustee of the Holli Ann Hardin Trust Number One until the closing of a sale on Holli's interest in the Holli Ann Hardin Trust Number One. At the time that Holli's interest is purchased, Linda Goehrs will resign as Temporary Successor Trustee, and Dakota, Joe, Michelle, and Ashley shall select a Successor Trustee of the Trust.

• Holli agrees to execute an assignment of interest and disclaimer of further interest in the Holli Ann Hardin Trust Number One at the time that her interest is purchased in accordance with this Settlement Agreement.

• The Parties agree that Dakota and Holli shall remain employees of Entertainment Marketing and Management, LP, and/or the business, or businesses owned by the Holli Ann Hardin Trust Number One. Holli shall be removed from the payroll on the date that her interest is purchased pursuant to this Agreement. The compensation amount that Dakota and Holli have been receiving shall remain unchanged.

• The Parties agree that Dakota and Holli shall remain on the insurance paid for by Entertainment Marketing and Management, LP, and/or the business or businesses owned by the Holli Ann Hardin Trust Number One. Holli shall be removed from the insurance plan on the date that her interest is purchased pursuant to this Agreement.

• To the extent owned by the Trust, Linda Goehrs as Temporary Successor Trustee, shall gift the horses known as Coco and Rusty to Holli.

10.    With regard to the further administration of the Dakota Trust:

• The Parties agree that the assets of the Dakota Trust shall be appraised by certified and licensed real estate appraisers. Russ Jones shall select the appraisers to complete the real estate appraisal. The cost of the appraisal shall be borne by the Dakota Trust.

5

- Upon completion of the appraisal, the total value of the assets will be compiled and Holli's interest will be purchased by Dakota, Joe, Michelle, and/or the business entities owned by the Holli Ann Hardin Trust Number One in an amount equal to eighty-five percent (85%) of the total value of the assets. Such purchase will occur within ninety days (90) of the completion of the valuation of the assets of the Dakota Trust.

- Holli agrees to execute an assignment of interest and disclaimer of further interest in the Dakota Trust at the time that her interest in purchased in accordance with this Settlement Agreement.

11.   Within seven (7) days of the Effective Date of this agreement, Dakota, Joe, Michelle, and/or Ashley agree to dismiss all pending pleas, pleadings, and/or motions, with prejudice regarding the Estate and/or Trust pending in cause number 21-CPR-036521 and cause number 21-DVC-288736, both of which are pending in Fort Bend County, Texas.

12.   Neither the Trust nor any entity owned, held, or possessed by the Holli Ann Hardin Trust Number One, the Dakota Trust, and/or the Estate have any claims against any of the Parties.

13.   The Parties agree to release Linda Goehrs, in her capacity as Temporary Successor Trustee, for making distributions according to this Settlement Agreement which contradict the terms of the Trust Agreement for the Holli Ann Hardin Trust Number One or the Dakota Trust.

## C. RELEASES AND DISCHARGE

1.   **Release of Claims by Dakota.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Dakota, on behalf of himself and all his heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Holli, Joe, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Dakota hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Dakota expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Holli, Joe, Michelle, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Dakota does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

2.   **Release of Claims by Holli.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Holli, on behalf of herself and all her heirs, successors,

6

executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Joe, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Holli hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Holli expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Michelle, Joe, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Holli does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

3. **Release of Claims by Joe.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Joe, on behalf of himself and all his heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Joe hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Joe expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Michelle, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Joe does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

4. **Release of Claims by Michelle.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Michelle, on behalf of herself and all her heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Joe, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Michelle hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Michelle expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind

7

known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Joe, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Michelle does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

5.      **Release of Claims by Ashley**. For and in consideration of the mutual promises, covenants, and agreements stated herein, Ashley, on behalf of herself and all her heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Joe, Michelle, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Ashley hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Ashley expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Joe, and Michelle. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Ashley does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

## D. REPRESENTATIONS AND WARRANTIES

1.      **Representations and Warranties**. Each of the Parties hereto represents and warrants to the other that:

> a.      They are adequately represented by competent counsel in connection with the execution and delivery of this Settlement Agreement and/or had an opportunity to retain counsel in connection with this Settlement Agreement;
>
> b.      In executing this Settlement Agreement, they relied upon the Party's own judgment and any advice it received from its own attorneys;
>
> c.      They were not induced to sign or execute this Settlement Agreement by promises, omissions, agreements, or representations not expressly stated in this Settlement Agreement;
>
> d.      They freely and willingly executed this Settlement Agreement and expressly disclaims reliance upon any facts, promises, statements made or not made, undertakings, or representations made by any person or entity

8

prior to the Effective Date of this Settlement Agreement except as specifically enumerated herein;

e.  They consent that this Settlement Agreement was not procured, obtained, or induced by improper conduct or undue influence;

f.  After an opportunity to consult with an attorney concerning the matters made subject of this Settlement Agreement, and after reviewing this Settlement Agreement, they agree this Settlement Agreement is fair, reasonable, and supported by good, valuable, and adequate consideration; and

g.  They understand and agree to the terms and conditions of this Settlement Agreement, which contains the entire agreement between the Parties relating to the matters made the subject of this Settlement Agreement.

2.  **Capacity and Authority.** Each of the Parties hereto represents and warrants to the other that the person signing this Settlement Agreement in a representative capacity has the requisite authority and consent to execute this Settlement Agreement on behalf of the Party for whom he or she has executed this Settlement Agreement, and that this Settlement Agreement is binding upon the Party for whom he or she has executed this Settlement Agreement and upon such Party's successors and assigns.

3.  **Assignment of Claims.** Each of the Parties hereto represents and warrants to the other that it has not transferred, assigned, or otherwise conveyed, excepting any interest held by counsel, in whole or in part, its respective interest in the Claims at issue and that it is the owner and holder thereof. Each of the Parties further represents and warrants that, aside from any interest held by counsel, it is the only holder of the Claims being released and that no other person or entity owns, or has any interest in, any of the Claims being released. Despite any interest held by counsel, this Settlement Agreement applies to the entirety of each of the Parties' Claims.

4.  **Cooperation in Execution of Further Documents.** Each of the Parties expressly agrees to execute any other documents reasonably necessary to effectuate the terms, purpose, and intent of this Settlement Agreement.

## E. MISCELLANEOUS PROVISIONS

1.  **Invalidity.** In the event any one or more of the provisions of this Settlement Agreement shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement.

2.  **Entire Agreement.** This Settlement Agreement reflects the final and complete agreement between the parties concerning the matters made subject of this Settlement Agreement and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the Parties. There are no unwritten oral agreements between the Parties. The Parties expressly

9

acknowledge that any rights, duties, or obligations, whether contractual or otherwise, owed by or between the Parties prior to the effective date of this Settlement Agreement are terminated as of the Effective Date of this Settlement Agreement and the only rights, duties, or obligations owed by or between the Parties from this point forward shall be those set forth in this Settlement Agreement.

3. **Governing Law and Venue.** The validity, effect, and construction of this Settlement Agreement shall be governed by the laws of the State of Texas. Venue for any cause of action, controversy, or dispute regarding this Settlement Agreement or the subject matter hereof shall be proper only in the state courts of Fort Bend County, Texas.

4. **Amendment.** This Settlement Agreement may not be amended, modified, waived, or terminated unless such is done in a writing signed by all the Parties.

5. **Construction of Agreement.** This Settlement Agreement shall not be construed in favor of or against any Party on the basis that the Party did or did not author this Settlement Agreement or any attachment related to it. It is intended that this Settlement Agreement shall be comprehensive in nature and shall be construed liberally to affect its purposes.

6. **Titles or Headings.** All titles or headings used in this Settlement Agreement are used only for the convenience of the Parties and shall not be construed to have any effect or meaning with respect to the other content of the Settlement Agreement, such other content being controlling as to the Settlement Agreement of the Parties.

7. **Costs and Attorneys' Fees.** Each party shall bear its own costs and attorneys' fees in relation to the claims and the negotiation and preparation of this Settlement Agreement, subject to the attorney's fees provisions within this Settlement Agreement.

8. **Waiver.** The failure of any of the Parties to enforce, at any time, any provision of this Settlement Agreement shall not be construed to be a waiver of such provision, nor in any way affect the validity of this Settlement Agreement or any part thereof or any right of any Party thereafter to enforce each and every provision. No waiver of any breach of this Settlement Agreement shall be held to constitute a waiver of any other breach.

9. **Binding Agreement.** This Settlement Agreement is binding on the Parties hereto and not subject to revocation, repudiation, or withdrawal of consent, even if one or more of them shall become debtors in a bankruptcy proceeding. This binding effect is an integral part of this Agreement.

10. **Execution of Agreement.** This Settlement Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes. A fax signature or a copy of an original signature shall constitute an original signature for purposes of this Settlement Agreement. This Settlement Agreement shall be valid only if fully executed by all Parties and/or their representatives as agreed to herein. If not fully executed by all Parties, this Settlement Agreement shall be null and void and of no effect.

10

11.    **Future Disputes.** In the event that there are future disputes, disagreements, and/or conflicts regarding the terms and/or implementation of any terms of this Settlement Agreement, the Parties agree to return to Russ Jones for mediation regarding the dispute. The Parties agree to return to mediation prior to filing any litigation regarding a breach of this settlement agreement or these terms. If a Party refuses to return to mediation, the remaining parties are permitted to file litigation without returning to mediation. Should further litigation be filed regarding a breach of the agreement, the prevailing party shall be entitled to an award of attorney's fees as determined by a jury or judge.

12.    **Indemnity.** Each party shall indemnify the other parties for all claims made by, through, or under the indemnifying party.

AGREED TO BY ALL PARTIES AS EVIDENCED BY THEIR SIGNATURE BELOW ON THIS THE 7th DAY OF JANUARY, 2022.

_____
Dakota Fontenot, in all capacities

_____
Holli Ann Fontenot, in all capacities

_____
Dallas Joseph Fontenot, III, in all capacities

_____
Michelle Ann Fontenot, in all capacities

_____
Ashley Fontenot Estrada, in all capacities

_____
Christopher Burt
*Counsel for Dakota Fontenot*

11

11.    **Future Disputes.** In the event that there are future disputes, disagreements, and/or conflicts regarding the terms and/or implementation of any terms of this Settlement Agreement, the Parties agree to return to Russ Jones for mediation regarding the dispute. The Parties agree to return to mediation prior to filing any litigation regarding a breach of this settlement agreement or these terms. If a Party refuses to return to mediation, the remaining parties are permitted to file litigation without returning to mediation. Should further litigation be filed regarding a breach of the agreement, the prevailing party shall be entitled to an award of attorney's fees as determined by a jury or judge.

12.    **Indemnity.** Each party shall indemnify the other parties for all claims made by, through, or under the indemnifying party.

AGREED TO BY ALL PARTIES AS EVIDENCED BY THEIR SIGNATURE BELOW ON THIS THE 7th DAY OF JANUARY, 2022.

---

Dakota Fontenot, in all capacities

---

Holli Ann Fontenot, in all capacities

## Dallas Joseph Fontenot III
Dallas Joseph Fontenot, III, in all capacities

## Michelle Ann Fontenot
Michelle Ann Fontenot, in all capacities

## Ashley Fontenot Estrada
Ashley Fontenot Estrada, in all capacities

---

Christopher Burt
*Counsel for Dakota Fontenot*

11

_____

Steven Mendel
*Counsel for Holli Ann Fontenot*

_____

Kenneth Sumner
*Counsel for Dallas Joseph Fontenot, III,*
*Michelle Ann Fontenot, and Ashley Estrada*

12

Steven Mendel
*Counsel for Holli Ann Fontenot*

# Kenneth E. Sumner, Jr.

Kenneth Sumner
*Counsel for Dallas Joseph Fontenot, III,*
*Michelle Ann Fontenot, and Ashley Estrada*

**Signature:** *Dallas Joseph Fontenot III*
Dallas Joseph Fontenot III (Jan 7, 2022 19:33 CST)

**Email:** djoef3@hotmail.com

**Signature:** Michelle Fontenot (Jan 7, 2022 19:36 CST)

**Email:** mannefontenot@gmail.com

**Signature:** Ashley Fontenot Estrada (Jan 7, 2022 19:38 CST)

**Email:** ashleyafontenot@gmail.com

**Signature:** *Kenneth C. Sumner, Jr*

**Email:** ksumner@romanosumner.com

12

EXHIBIT

D

## AMENDED AND RESTATED PROMISSORY NOTE

$2,825,000.00                    Houston, Texas                    May 22, 2023

FOR VALUE RECEIVED, the undersigned, **HFR ENTERPRISES, INC.**, a Texas corporation (the "Maker"), hereby promises to pay to the order of **LHS HOMES, L.L.C.**, a Texas limited liability company ("Lender"), at its offices at 5920 Hillcroft Street, Suite A, Houston, Texas 77036, in lawful money of the United States of America, the principal sum of up to TWO MILLION, EIGHT HUNDRED TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($2,825,000.00) or so much thereof as may be advanced and outstanding hereunder, together with interest.

This amended and restated promissory note (this "Note") is given in substitution of that certain promissory note executed by Maker in favor of Lender dated January 6, 2023 in the amount of ONE MILLION, EIGHT HUNDRED TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($1,825,000.00), which fully funded on or about January 6, 2023, (the "Original Note") and to evidence current and future advances in the aggregate amount of ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) (the "New Funds") in accordance with the terms hereof. The Original Note shall, in its entirety, be superseded, amended, and restated by this Note and payment of the indebtedness thereunder shall be governed by this Note as if the aggregate unpaid indebtedness due under the Original Note had been advanced hereunder by Lender. Maker hereby renews and extends its covenant and agreement to pay the indebtedness evidenced by the Original Note, as amended and restated pursuant to this Note, and Maker hereby renews and extends its covenant and agreement to perform, comply with, and be bound by each and every term and provisions of the Original Note, as amended and restated by the terms of this Note. Maker confirms and agrees that this Note is, and shall continue to be, secured by the Deed of Trust recorded on January 9, 2023 under Instrument No. RP-2023-7823 in the Official Public Records of Harris County, Texas (the "Deed of Trust"), and in no way acts as a release or relinquishment of the liens created by the Deed of Trust. All of the provisions of the Deed of Trust now or heretofore executed by Maker as heretofore or contemporaneously herewith modified are hereby ratified and affirmed in all respects. The liens securing payment of the Original Note are hereby modified, extended, renewed, carried forward, and confirmed by Maker in all respects and shall remain in full force and effect until the principal and all accrued interest under this Note shall be fully and finally paid. As of the date hereof, all principal and interest payments due and owing under the Old Note have been paid in full when due and the outstanding unpaid principal balance of the Old Note is $1,809,300.24 (the "Old Note Balance").

This Note is further secured by certain Conditional Guaranty Agreements of even date herewith executed by Viva Las Vegas Properties, Inc., a Texas corporation and an affiliate of Maker ("VLV Guarantor"), Dakota Fontenot, an individual resident of Fort Bend County ("DF Guarantor"), and Ice Embassy, Inc., a Texas corporation (collectively referred to as "Guarantors"), respectively, in favor of Lender.

It is understood and agreed by and between Maker and Lender that (i) the entire principal of the Old Note has been advanced to Maker pursuant to the Old Note and that (ii) the entire principal of the New Funds under this Note is not being advanced in full to Maker upon the execution hereof, but subsequent and periodic advancements in various increments of the New Funds will be made to Maker, upon request to Lender, up to, but not to exceed, the amount of the New Funds pursuant to

1

the terms hereof. Interest on this Note shall accrue only on the principal amount of the New Funds advanced from the time it is so advanced, at the Contract Rate.

Lender shall advance the New Funds by wire transfer to an account designated by Maker as follows:

(i)     An amount equal to $250,000.00 (the "First New Advance") shall be funded immediately upon execution of this Note.

(ii)    Advances of the remaining New Funds, in amounts up to and not exceeding $750,000.00 in the aggregate, shall be advanced incrementally (such incremental advances being referred to individually and collectively as the "Future Advances") within five (5) Business Days after Lender receives a written request for advance ("Request for Advance") from Maker. Each Request for Advance shall be accompanied by a percentage of completion and cost schedule (a "Schedule of Values") describing the construction, maintenance, repair and/or renovation work completed at Maker's property located at 6710 Southwest Freeway, Houston, Harris County, Texas 77074 (the "Project") as of the date of the applicable Request for Advance, including backup documentation as may be reasonably requested by Lender. Additionally, Lender shall not be required to advance any Future Advances unless: (a) Lender's first lien deed of trust and security interest in the property identified in the Deed of Trust remains in a first lien position without tax liens, mechanics liens or any other monetary encumbrances against such Property other than normal permitted exceptions for current property taxes; (b) The VLV Guarantor's Fort Bend Property securing such Guaranty must have received a mortgagee title policy reflecting a first lien in favor of Lender other than normal permitted exceptions for current property taxes and assessments and nonmonetary encumbrances; (c) Maker and the VLV Guarantor must not otherwise be in any breach of any of its agreements, representation or warranties as set forth in this Note. If Lender refuses to advance the amount requested in any applicable Request for Advance, Lender shall within such 5 Business Day period provide written notice to Maker specifying the reason for such refusal, whereupon Maker and Lender shall endeavor in good faith to reach agreement on the amount to be advanced within ten (10) days after Maker receives notice of Lender's refusal to fund the amount initially requested. If the parties are unable to agree on the funding amount for the applicable Future Advance within such 10-day period, then either party may submit the matter to mediation. The final Future Advance of New Funds shall be made after completion of the Project in such amount that the sum of all Future Advances by Lender shall not exceed $750,000.00.

The unpaid principal balance of this Note shall bear interest prior to maturity at an annual rate equal to the lesser of (a) the Maximum Lawful Rate or (b) eight percent (8.0%) (the "Contract Rate"). Interest on this Note shall be calculated on a per annum basis of 360 days and for the actual number of days elapsed (including the first day but excluding the last day) unless such calculation would result in a rate that exceeds the Maximum Lawful Rate, in which case, interest shall be calculated on a per annum basis of 365 or 366 days, as the case may be. Maker hereby expressly promises to pay to the order of Lender or any other holder hereof the principal amount of this Note and all accrued but unpaid interest now or hereafter to become due and payable under this Note in the

2

manner provided herein. Notwithstanding anything herein to the contrary, the final installment payment under this Note shall include all of the then outstanding principal, accrued but unpaid interest and all other costs, expenses and fees arising out of this Note. All sums paid hereon (whether regularly scheduled payment or prepayment) shall be applied first to the satisfaction of accrued unpaid interest and the remainder, if any, to the reduction of the principal balance hereof.

Subject to prior acceleration as provided in this Note, this Note shall be paid as follows:

Principal and interest under this Note shall be due and payable monthly as follows ("Monthly Payments"):

(i)     Principal and interest on an amount equal to the sum of the Old Note Balance and the First New Advance (or $2,059,300.24) shall be due and payable in sixty (60) equal monthly installments, based on a 20-year amortization, of $17,225.00, with the first such payment being due on June 15, 2023, and continuing on the same day of each month thereafter until May 15, 2028 (the "Maturity Date"), on which date a final payment in the amount of $1,802,414.35 shall be due and payable in full.

(ii)    Interest only on Future Advances shall be due and payable monthly beginning on the 15th day of the calendar month after the month in which the first Future Advance is made and shall continue regularly on the same day of each succeeding calendar month thereafter until and including the Maturity Date, on which date a final payment, which shall include all then outstanding principal and accrued and unpaid interest due on Future Advances, shall be due and payable in full.

For purposes of this Note, the following terms have the meanings assigned to such terms as provided below:

"Applicable Laws" means the laws of the State of Texas and laws of the United States of America in effect from time to time and applicable to this Note.

"Business Day" means a day that is not a Saturday, Sunday, or federal or state holiday.

"Default Rate" means the Maximum Lawful Rate.

"Event of Default" means the failure to pay when due the principal and interest under this Note, or any part thereof, and such failure continues for more than thirty (30) days after Maker receives written notice from Lender specifying the amount of the delinquent payment. Event of Default shall also include Maker shall (a) become insolvent within the meaning of the Bankruptcy Code of the United States, as amended; (b) admit in writing its inability to pay or otherwise fail to pay its/his debts generally as they become due; (c) voluntarily seek consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law; or (d) be made the subject of any proceeding provided for by any Debtor Relief Law that could suspend or otherwise affect any of the rights of Lender or any other holder hereof and such proceeding shall continue for sixty (60) days without dismissal or discharge; or (e) any default by Maker under that certain Deed of Trust securing this Note, executed by Maker in favor of Lender. As used herein, "Debtor Relief Laws" means the Bankruptcy Code of the United States, as amended and all other applicable liquidation, conservatorship, bankruptcy,

3

moratorium, rearrangement, receivership, insolvency, reorganization or similar debtor relief laws from time to time in effect affecting the rights of creditors generally.

"Indebtedness" means the obligations of Maker under this Note.

"Maximum Lawful Rate" means, at any time, the maximum rate of interest which may be charged, contracted for, taken, received or reserved by the Lender in accordance with Applicable Laws. Each change in any interest rate provided for herein based upon the Maximum Lawful Rate resulting from a change in the Maximum Lawful Rate shall take effect with written notice to the Maker before such change in the Maximum Lawful Rate.

All payments due under this Note shall be made by Maker without offset or other reduction of any kind. Any outstanding principal that is not paid in full when due shall bear interest at the Default Rate for the period from and including the due date thereof to but excluding the date the same is paid in full.

If any payment of principal or interest on this Note shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in the computing of interest in connection with such payment. In the event an installment, or the maturity date as set forth herein, is due on the 29th, 30th, or 31st day of the month, for each month which does not have a 29th, 30th, or 31st day, such installment, or the final payment, as applicable, shall be due on the last day of such month. Payments received on weekends or bank holidays will be credited as of the next Business Day. Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by Lender and handled in collection in the customary manner, but the same shall not constitute payment or diminish any rights of Lender except to the extent that actual cash proceeds of such instrument are unconditionally received by Lender.

Unless otherwise agreed in writing, or otherwise required by Applicable Laws, interest on this Note will be calculated on the unpaid principal balance to the date each installment is paid and payments received will be applied in the following order of priority: (i) the payment or reimbursement of any expenses, costs, or obligations (other than the outstanding principal balance hereof and interest hereon) for which either Maker shall be obligated or Lender shall be entitled pursuant to the provisions of this Note, (ii) the payment of accrued but unpaid interest hereon, and (iii) the payment of principal. However, any Monthly Payments timely made by Maker shall be credited as of the date such Monthly Payment is due, and Lender shall not be required to ledger and compute reductions in interest for Monthly Payments made before such Monthly Payment is due.

Maker shall have the privilege to prepay at any time, and from time to time, all or any part of the principal amount of this Note, without notice, penalty or fee. Except as expressly provided herein to the contrary, all prepayments on this Note shall be applied in the following order of priority: (i) the payment of accrued but unpaid interest hereon, and (ii) the payment of all or any portion of the principal balance hereof then outstanding hereunder, in the inverse order of maturity.

Time is of the essence in the performance of this Note. Maker agrees that all past-due principal and past-due accrued interest under this Note shall bear interest from the date it is due until paid at the Maximum Lawful Rate.

4

Upon the occurrence of an Event of Default, Lender may, at its option, after the expiration of the notice and right to cure period provided herein, (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, or (ii) foreclose all liens securing payment hereof. Upon the occurrence of an Event of Default, if this Note is placed in the hands of an attorney for collection (whether or not suit is filed), or if this Note is collected by suit or legal proceedings or through the probate court or bankruptcy proceedings, Maker agrees to pay an additional amount as attorney's fees as may be reasonable.

Except as otherwise provided herein, Maker waives presentment for payment, demand, protest, notice thereof and dishonor, notice of intent to accelerate, notice of acceleration, and diligence in collecting and consents that the time of payment may be extended from time to time without notice and without releasing Maker.

Until such time as all New Funds have been advanced hereunder, Lender shall not assign this Note without the prior written consent of Maker, which consent shall not be unreasonably withheld. Following the final advance of New Funds after completion of the Project, Lender shall have the right to assign this Note without necessity of Maker's consent. In such event, the term "Lender" shall mean any permitted assignee of this Note.

This Note and its validity, enforcement and interpretation, shall be construed in accordance with Applicable Laws, without regard to any conflict of law rules or principles except as otherwise expressly set forth herein. It is expressly stipulated and agreed to be the intent of the Maker and the Lender at all times to comply strictly with Applicable Laws governing the maximum rate or amount of interest payable on the indebtedness evidenced by this Note. If Applicable Law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to this Note, (ii) contracted for, charged, taken, reserved or received by reason of the Lender's exercise of the option to accelerate the maturity of the Indebtedness, or (iii) the Maker will have paid or the Lender will have received by reason of any voluntary prepayment by the Maker of the Indebtedness, then it is the Maker's and the Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Lawful Rate theretofore collected by the Lender shall be credited on the principal balance of the Indebtedness (or, if the Indebtedness have been or would thereby be paid in full, refunded to the Maker), and the provisions of this Note shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term of this Note, then the Maker and the Lender agree that the Lender shall, with reasonable promptness after the Lender discovers or is advised by the Maker that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to the Maker and/or credit such excess interest against the Indebtedness then owing by the Maker to the Lender. The Maker hereby agrees that as a condition precedent to any claim seeking usury penalties against the Lender, the Maker will provide written notice to the Lender, advising the Lender in reasonable detail of the nature and amount of the violation, and the Lender shall have thirty (30) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to the Maker or crediting such excess interest against the Indebtedness then owing by the Maker to the Lender. All sums contracted for, charged, taken, reserved or received by the Lender for the use, forbearance or detention of any Indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the

5

actuarial method, throughout the stated term of this Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Note does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this for so long as any Indebtedness is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note. Notwithstanding anything to the contrary contained herein, it is not the intention of the Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on any Indebtedness, the Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. Additionally, to the extent permitted by Applicable Laws now or hereafter in effect, the Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other Applicable Law by giving notice, if required, to the Maker as provided by Applicable Law now or hereafter in effect.

In case any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been included in this Note.

No amendment, modification, or alteration of the terms of this Note shall be binding unless the same is in writing, dated subsequent to the date of this Note, and duly executed by the parties to this Note.

All notices sent to Maker shall be sent by hand delivery or by certified mail, return receipt requested to HFR Enterprises, Inc., Attn: Dakota Fontenot, 3414 Old Richmond Road, Rosenberg, Texas 77471 (with a copy to BoyarMiller, Attn: Christopher Barteau and Tiffany Melchers, 2925 Richmond Avenue, 14th Floor, Houston, Texas 77098), unless directed otherwise by Maker after notice to the Lender (or any other holder hereof) at the address set forth on Page 1 herein, or at such other address of the Lender (or any other holder hereof) specified by notice to Maker as described herein.  Any notice required herein shall be sufficient if it provides at least 10 days of notice after mailing, unless otherwise required by law.

[Remainder of page intentionally left blank.]

6

IN WITNESS WHEREOF, Maker has duly executed this Note as of the day and year first above written.

**MAKER:**

**HFR ENTERPRISES, INC.,**
a Texas corporation

By: _____
Name: Dakota Fontenot
Title: President

Address:
6710 Southwest Freeway
Houston, Texas 77074
Attention: Dakota Fontenot

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

This instrument was acknowledged before me on May 22, 2023, by Dakota Fontenot, President of HFR Enterprises, Inc., a Texas nonprofit corporation, for and on behalf of such corporation.

_____
NOTARY PUBLIC, STATE OF TEXAS

SIGNATURE PAGE TO
NOTE

CONFIDENTIAL DOCUMENTS                    HAH001246

**EXHIBIT**

E

C.A. 21-CPR-036521

| | | |
|---|---|---|
| ESTATE OF | § | IN COUNTY COURT AT LAW |
| DALLAS JOSEPH FONTENOT, JR., | § | |
| DECEASED | § | NO. FOUR (4) OF |
| | § | |
| | § | FORT BEND COUNTY, TEXAS |

No. 21-DCV-288736

| | | |
|---|---|---|
| IN RE | § | IN THE 240TH DISTRICT COURT |
| HOLLI ANN HARDIN TRUST | § | |
| NUMBER ONE | § | OF |
| | § | |
| | § | FORT BEND COUNTY, TEXAS |

## Assignment of Interest &
## Disclaimer of Further Interest

Pursuant to the Binding Mediation Settlement Agreement reached in the above-captioned cases, and which is attached hereto as Exhibit "A":

1. Holli Ann Fontenot acknowledges receipt of check number 1005 payable to Holli Ann Fontenot in the amount of $2,823,464.00, and which sum represents full satisfaction of eighty five percent (85%) of the total value of The Dakota Trust assets ($1,899,514.00) and twenty percent (20%) of the total value of the Holli Ann Hardin Trust No. 1 assets ($923,950.00).

2. Holli Ann Fontenot hereby assigns any and all beneficial interest she has in the Holli Ann Hardin Trust No. 1 to the Trustee for further administration and distribution by the Trustee.

3. Holli Ann Fontenot assigns any and all beneficial interest she has in The Dakota Trust to the Trustee for further administration and distribution by the Trustee.

4. Holli Ann Fontenot disclaims any right to any further interest in the Holli Ann Hardin Trust No. 1. Holli Ann Fontenot previously resigned as the Trustee of said Trust.

5. Holli Ann Fontenot disclaims any right to any further interest in The Dakota Trust. Holli Ann Fontenot hereby resigns as a fiduciary of said Trust.

[SIGNATURE ON THE FOLLOWING PAGE]

SIGNED AND EXECUTED ON __18__ DAY OF JANUARY 2023.

HOLLI ANN FONTENOT

STATE OF TEXAS            §
                         §
COUNTY OF HARRIS         §

This instrument was acknowledged before me on this the __18__ day of January 2023 by Holli Ann Fontenot.

Notary Public in and for
The State of Texas

### NO. 21-CPR-036521

| | | |
|---|---|---|
| IN THE ESTATE OF | § § | IN THE COUNTY COURT AT LAW |
| DALLAS JOSEPH FONTENOT, JR., | § § | NUMBER FOUR (4) OF |
| DECEASED | § § | FORT BEND COUNTY, TEXAS |

---

### NO. 21-DCV-288736

| | | |
|---|---|---|
| IN RE: | § § | IN THE 240th DISTRICT COURT |
| | § | OF |
| HOLLI ANN HARDIN TRUST | § | |
| NUMBER ONE | § | FORT BEND COUNTY, TEXAS |

### BINDING MEDIATED SETTLEMENT AGREEMENT

The Parties – Dakota Fontenot, individually, in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in his capacity as next friend and virtual representative for S.F., a minor, Holli Ann Fontenot, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, Dallas Joseph Fontenot, III, individually, and in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One, Michelle Ann Fontenot, individually, in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in her capacity as next friend and virtual representative for A.E., a minor, and Ashley Fontenot Estrada, individually and in her capacity as a beneficiary of the Hollis Ann Hardin Trust Number One – hereto agree that all causes of action pending in cause number 21-CPR-036521 and cause number 21-DVC-288736, both of which are pending in Fort Bend County, Texas, and all related claims and/or controversies between them, whether asserted or not, known or unknown, actual or contingent, are hereby settled, in accordance with the terms of this Binding Mediated Settlement Agreement (hereinafter referred to as the "Settlement Agreement").

### A. DEFINITIONS

1.    Whenever used in this Settlement Agreement, the following terms shall have and be construed to have the following meanings:

i.    "Settlement Agreement" shall mean and refer to this Binding Mediated Settlement Agreement.

ii.    "Dakota" shall mean and refer to Dakota Fontenot, individually, in his capacity as beneficiary of the Holli Ann Hardin Trust Number One, and in his capacity as next friend and virtual representative of S.F., a minor.

1

iii.     "Holli" shall mean and refer to Holli Ann Fontenot, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

iv.     "Joe" shall mean and refer Dallas Joseph Fontenot, III, individually and in his capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

v.     "Michelle" shall mean and refer to Michelle Ann Fontenot, individually, in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One, and in her capacity as next friend and virtual representative of A.E., a minor.

vi.     "Ashley" shall mean and refer to Ashley Fontenot Estrada, individually and in her capacity as a beneficiary of the Holli Ann Hardin Trust Number One.

vii.     "Trust" shall mean and refer to the Holli Ann Hardin Trust Number One.

viii.     "Estate" shall mean and refer to the Estate of Dallas Joseph Fontenot, Jr., whose administration is pending in cause number 21-CPR-036521, in the County Court at Law Number Four (4) of Fort Bend County, Texas.

ix.     "Parties" shall mean and refer to Dakota, Holli, Joe, Michelle, and Ashley, collectively, as described in paragraphs two (ii) through six (vi) above.

x.     "Claims" shall mean and include any and all causes of action, demands, debts, obligations, duties, liens, liabilities, and theories of liabilities of whatsoever kind and nature, whether based in contract or tort, whether arising in equity or under the common law, whether by statute or regulation, whether known or unknown, whether past or present, whether contingent or matured, whether for damages relief, injunctive relief, declaratory relief, equitable relief, or any other type of relief, whether for actual damages, personal injury damages, mental anguish, liquidated damages, punitive damages, exemplary damages, compensatory damages, consequential damages, incidental damages, pecuniary damages, costs, expenses, attorneys' fees, penalties, or fines that are (is), were (was), could be, or could have been asserted as of the Effective Date, regardless of whether actually asserted, whether by claim, counterclaim, cross-claim, motion, third-party claim regarding the Estate and Trust, including but not limited to, claims, whether asserted or not, known or unknown, actual or contingent.

xi.     "Effective Date" shall mean and refer to the date that the last Party to this Settlement Agreement executes the same.

xii.     In respect to any defined term herein, the singular shall include the plural, and the plural shall include the singular.

2

## B. TERMS, CONDITIONS, AND MUTUAL CONSIDERATION

1.      The Parties acknowledge that bona fide disputes and controversies exist between them, both as to liability and the amount thereof in damages, if any, and by reason of such disputes and controversies they desire to compromise and settle all Claims and causes of action of any kind whatsoever which the Parties have or may have arising out of the transactions or occurrences which have been brought or could have been brought regarding the Trust.

2.      THE PARTIES AGREE AND ACKNOWLEDGE THAT UPON THE EXECUTION OF THIS SETTLEMENT AGREEMENT, THIS SETTLEMENT AGREEMENT SHALL BECOME BINDING AND IRREVOCABLE.

3.      The Parties agree that the 2013 Last Will and Testament and 2017 First Codicil to the Last Will and Testament will be admitted to probate. The Parties agree that Holli will be appointed as the Independent Executor of the Estate and agree not to object to the same.

4.      All of the Estate's assets, including all associated bank accounts, shall be distributed to Holli, save and expect the following items:

- The following items are going to be distributed to Dakota:

  o   The 2017 F150 Truck
  o   The 2013 Toyota Sequoia
  o   All interest, including all associated bank accounts, in Entertainment Marketing and Management, LP
  o   The coin collection and gold located in the backpack at the Rosenburg Office

- The following items are going to be distributed to Joe:

  o   The 2008 Honda Ridgeline
  o   One-half (1/2) of the Decedent's Tiki Mug Collection

The Parties agree to execute all documents necessary to effectuate the conveyance of all property described above the individual recipients stated in paragraph four (4).

5.      From the Rosenburg office, Holli shall be entitled to obtain:

- The remaining $150,000 in non-earmarked cash located in the backpack;
- Any and all Playboy Magazines

6.      The Parties agree that all personal property belonging to Dakota, Joe, and/or Michelle that is currently located at 10402 W. Hidden Lake Lane, Richmond, Texas 77406 shall be distributed to Dakota, Joe, and/or Michelle as appropriate. Dakota, Joe and/or Michelle shall

3

be afforded the opportunity, within thirty (30) days of the Effective Date of this Settlement Agreement, to conduct a supervised walkthrough of their personal property located at 10402 W. Hidden Lake Lane, Richmond, Texas 77406. During that time, Dakota, Joe, and/or Michelle will take photographs of their personal property which they would like to obtain. A list and accompanying photographs will be delivered to counsel for Holli of those items within fourteen (14) days of the walkthrough being completed. Holli will have fourteen (14) days to object to the items which Dakota, Joe, and/or Michelle would like to obtain. If the parties cannot reach a resolution regarding the same, Russ Jones will mediate, at an hourly rate, the division of the disputed personal property. Upon the completion and approval of a final list of items, Dakota, Joe, and/or Michelle, at their expense, shall obtain and remove the items on the approved final list of items at a mutually agreeable date and time within fourteen (14) days of the approval of the final list of items.

7.    The attorney's fees for Holli, Dakota, Joe, Michelle, and/or Ashley may be paid from the assets of the Holli Ann Hardin Trust Number One in an amount no more than $200,000.00 per side. The Parties will present their fees to Linda Goehrs, in her capacity as Temporary Successor Trustee of the Holli Ann Hardin Trust Number One, for payment. The Parties agree that they will not object to the payment of the fees of any other party.

8.    The real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183 shall be distributed to Holli. Dakota, Michelle, and Joe, with Dakota as authorized representative, shall retain a right of first refusal in the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183. If Holli decides to sell or otherwise transfer the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183, Holli shall notify Dakota, Michelle, and Joe in writing and provide an appraisal completed by a certified and licensed real estate appraiser. From the date of receipt of that notice, Dakota, Michelle, and/or Joe shall have 30 days to exercise their right to purchase the real property and improvements located at 271 Iron Duke Avenue, Las Vegas, Nevada 89183. If exercised, Dakota, Michelle, and/or Joe shall enter into a real estate contract to purchase the property with a proposed closing date sixty (60) days from the date of receipt of the notice of sale or transfer triggering the right of first refusal. Holli is not required to sell at the appraised value if she receives offers in excess of the appraised value. If Holli receives an offer greater than the appraised value, the right of first refusal will be triggered upon delivery of the great offer to Dakota as authorized representative. The right of refusal will not renew if it is not exercised against the greatest value delivered by Holli.

9.    With regard to the further administration of the Holli Ann Hardin Trust Number One:

- The Parties agree that the assets of the Holli Ann Hardin Trust Number One shall be appraised by certified and licensed business or real estate appraisers, as is appropriate for the particular asset. Russ Jones shall select the appraisers to complete the real estate and business appraisals. The costs of the appraisals shall be borne by the Holli Ann Hardin Trust Number One.

4

- The Parties agree that, once the values on the appraisals are obtained for all Holli Ann Hardin Trust Number One assets, Holli's interest will be purchased by Dakota, Joe, Michelle, and/or the business entities owned by the Holli Ann Hardin Trust Number One in an amount equal to the twenty percent (20%) of the total value of the assets. Such purchase will occur within ninety days (90) of the completion of the valuation of the assets of the Holli Ann Hardin Trust Number One.

- The Parties agree that during the appraisal period described above, Linda Goehrs, in her capacity as Temporary Successor Trustee and/or Dakota, shall execute the necessary documents to install Dakota as an Officer and/or Director of Ice Embassy, Inc., HRF Enterprises, Inc., and Entertainment Marketing and Management, LP.

- The Parties agree that Linda Goehrs shall remain Temporary Successor Trustee of the Holli Ann Hardin Trust Number One until the closing of a sale on Holli's interest in the Holli Ann Hardin Trust Number One. At the time that Holli's interest is purchased, Linda Goehrs will resign as Temporary Successor Trustee, and Dakota, Joe, Michelle, and Ashley shall select a Successor Trustee of the Trust.

- Holli agrees to execute an assignment of interest and disclaimer of further interest in the Holli Ann Hardin Trust Number One at the time that her interest is purchased in accordance with this Settlement Agreement.

- The Parties agree that Dakota and Holli shall remain employees of Entertainment Marketing and Management, LP, and/or the business, or businesses owned by the Holli Ann Hardin Trust Number One. Holli shall be removed from the payroll on the date that her interest is purchased pursuant to this Agreement. The compensation amount that Dakota and Holli have been receiving shall remain unchanged.

- The Parties agree that Dakota and Holli shall remain on the insurance paid for by Entertainment Marketing and Management, LP, and/or the business or businesses owned by the Holli Ann Hardin Trust Number One. Holli shall be removed from the insurance plan on the date that her interest is purchased pursuant to this Agreement.

- To the extent owned by the Trust, Linda Goehrs as Temporary Successor Trustee, shall gift the horses known as Coco and Rusty to Holli.

10. With regard to the further administration of the Dakota Trust:

- The Parties agree that the assets of the Dakota Trust shall be appraised by certified and licensed real estate appraisers. Russ Jones shall select the appraisers to complete the real estate appraisal. The cost of the appraisal shall be borne by the Dakota Trust.

5

- Upon completion of the appraisal, the total value of the assets will be compiled and Holli's interest will be purchased by Dakota, Joe, Michelle, and/or the business entities owned by the Holli Ann Hardin Trust Number One in an amount equal to eighty-five percent (85%) of the total value of the assets. Such purchase will occur within ninety days (90) of the completion of the valuation of the assets of the Dakota Trust.

- Holli agrees to execute an assignment of interest and disclaimer of further interest in the Dakota Trust at the time that her interest in purchased in accordance with this Settlement Agreement.

11.    Within seven (7) days of the Effective Date of this agreement, Dakota, Joe, Michelle, and/or Ashley agree to dismiss all pending pleas, pleadings, and/or motions, with prejudice regarding the Estate and/or Trust pending in cause number 21-CPR-036521 and cause number 21-DVC-288736, both of which are pending in Fort Bend County, Texas.

12.    Neither the Trust nor any entity owned, held, or possessed by the Holli Ann Hardin Trust Number One, the Dakota Trust, and/or the Estate have any claims against any of the Parties.

13.    The Parties agree to release Linda Goehrs, in her capacity as Temporary Successor Trustee, for making distributions according to this Settlement Agreement which contradict the terms of the Trust Agreement for the Holli Ann Hardin Trust Number One or the Dakota Trust.

## C. RELEASES AND DISCHARGE

1.    **Release of Claims by Dakota.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Dakota, on behalf of himself and all his heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Holli, Joe, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Dakota hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Dakota expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Holli, Joe, Michelle, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Dakota does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

2.    **Release of Claims by Holli.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Holli, on behalf of herself and all her heirs, successors,

6

executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Joe, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Holli hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Holli expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Michelle, Joe, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Holli does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

3.    **Release of Claims by Joe.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Joe, on behalf of himself and all his heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Michelle, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Joe hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Joe expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Michelle, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Joe does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

4.    **Release of Claims by Michelle.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Michelle, on behalf of herself and all her heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Joe, Ashley, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Michelle hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Michelle expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind

7

known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Joe, and Ashley. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Michelle does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

5.    **Release of Claims by Ashley.** For and in consideration of the mutual promises, covenants, and agreements stated herein, Ashley, on behalf of herself and all her heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns, does hereby release and acquit, and forever discharge, and shall be conclusively deemed to have released, acquitted, and forever discharged, Dakota, Holli, Joe, Michelle, and each of their heirs, successors, executors, administrators, predecessors, principles, agents, employees, attorneys, accountants, representatives, and assigns of and from any and all liability on or for any and all Claims, as defined in this Settlement Agreement. Ashley hereby acknowledges and agrees that the release and discharge expressed herein is a general release and shall be interpreted and enforced as a general release. Ashley expressly waives and assumes the risk of any and all Claims and rights of action, damages, and costs of every kind known or unknown. This release is intended to and does inure to the benefit of all heirs, successors, executors, administrators, predecessors, principals, agents, employees, attorneys, accountants, representatives, and assigns of Dakota, Holli, Joe, and Michelle. It is expressly understood and agreed by and between the Parties that, notwithstanding anything in this Settlement Agreement to the contrary, Claims shall not include, and Ashley does not release, any claim seeking the enforcement or performance of this Settlement Agreement and/or for breach of this Settlement Agreement.

## D. REPRESENTATIONS AND WARRANTIES

1.    **Representations and Warranties.** Each of the Parties hereto represents and warrants to the other that:

a.    They are adequately represented by competent counsel in connection with the execution and delivery of this Settlement Agreement and/or had an opportunity to retain counsel in connection with this Settlement Agreement;

b.    In executing this Settlement Agreement, they relied upon the Party's own judgment and any advice it received from its own attorneys;

c.    They were not induced to sign or execute this Settlement Agreement by promises, omissions, agreements, or representations not expressly stated in this Settlement Agreement;

d.    They freely and willingly executed this Settlement Agreement and expressly disclaims reliance upon any facts, promises, statements made or not made, undertakings, or representations made by any person or entity

8

prior to the Effective Date of this Settlement Agreement except as specifically enumerated herein;

e.  They consent that this Settlement Agreement was not procured, obtained, or induced by improper conduct or undue influence;

f.  After an opportunity to consult with an attorney concerning the matters made subject of this Settlement Agreement, and after reviewing this Settlement Agreement, they agree this Settlement Agreement is fair, reasonable, and supported by good, valuable, and adequate consideration; and

g.  They understand and agree to the terms and conditions of this Settlement Agreement, which contains the entire agreement between the Parties relating to the matters made the subject of this Settlement Agreement.

2.  **Capacity and Authority.** Each of the Parties hereto represents and warrants to the other that the person signing this Settlement Agreement in a representative capacity has the requisite authority and consent to execute this Settlement Agreement on behalf of the Party for whom he or she has executed this Settlement Agreement, and that this Settlement Agreement is binding upon the Party for whom he or she has executed this Settlement Agreement and upon such Party's successors and assigns.

3.  **Assignment of Claims.** Each of the Parties hereto represents and warrants to the other that it has not transferred, assigned, or otherwise conveyed, excepting any interest held by counsel, in whole or in part, its respective interest in the Claims at issue and that it is the owner and holder thereof. Each of the Parties further represents and warrants that, aside from any interest held by counsel, it is the only holder of the Claims being released and that no other person or entity owns, or has any interest in, any of the Claims being released. Despite any interest held by counsel, this Settlement Agreement applies to the entirety of each of the Parties' Claims.

4.  **Cooperation in Execution of Further Documents.** Each of the Parties expressly agrees to execute any other documents reasonably necessary to effectuate the terms, purpose, and intent of this Settlement Agreement.

## E. MISCELLANEOUS PROVISIONS

1.  **Invalidity.** In the event any one or more of the provisions of this Settlement Agreement shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement.

2.  **Entire Agreement.** This Settlement Agreement reflects the final and complete agreement between the parties concerning the matters made subject of this Settlement Agreement and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the Parties. There are no unwritten oral agreements between the Parties. The Parties expressly

9

acknowledge that any rights, duties, or obligations, whether contractual or otherwise, owed by or between the Parties prior to the effective date of this Settlement Agreement are terminated as of the Effective Date of this Settlement Agreement and the only rights, duties, or obligations owed by or between the Parties from this point forward shall be those set forth in this Settlement Agreement.

3.     **Governing Law and Venue.** The validity, effect, and construction of this Settlement Agreement shall be governed by the laws of the State of Texas. Venue for any cause of action, controversy, or dispute regarding this Settlement Agreement or the subject matter hereof shall be proper only in the state courts of Fort Bend County, Texas.

4.     **Amendment.** This Settlement Agreement may not be amended, modified, waived, or terminated unless such is done in a writing signed by all the Parties.

5.     **Construction of Agreement.** This Settlement Agreement shall not be construed in favor of or against any Party on the basis that the Party did or did not author this Settlement Agreement or any attachment related to it. It is intended that this Settlement Agreement shall be comprehensive in nature and shall be construed liberally to affect its purposes.

6.     **Titles or Headings.** All titles or headings used in this Settlement Agreement are used only for the convenience of the Parties and shall not be construed to have any effect or meaning with respect to the other content of the Settlement Agreement, such other content being controlling as to the Settlement Agreement of the Parties.

7.     **Costs and Attorneys' Fees.** Each party shall bear its own costs and attorneys' fees in relation to the claims and the negotiation and preparation of this Settlement Agreement, subject to the attorney's fees provisions within this Settlement Agreement.

8.     **Waiver.** The failure of any of the Parties to enforce, at any time, any provision of this Settlement Agreement shall not be construed to be a waiver of such provision, nor in any way affect the validity of this Settlement Agreement or any part thereof or any right of any Party thereafter to enforce each and every provision. No waiver of any breach of this Settlement Agreement shall be held to constitute a waiver of any other breach.

9.     **Binding Agreement.** This Settlement Agreement is binding on the Parties hereto and not subject to revocation, repudiation, or withdrawal of consent, even if one or more of them shall become debtors in a bankruptcy proceeding. This binding effect is an integral part of this Agreement.

10.     **Execution of Agreement.** This Settlement Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes. A fax signature or a copy of an original signature shall constitute an original signature for purposes of this Settlement Agreement. This Settlement Agreement shall be valid only if fully executed by all Parties and/or their representatives as agreed to herein. If not fully executed by all Parties, this Settlement Agreement shall be null and void and of no effect.

10

11.    **Future Disputes.** In the event that there are future disputes, disagreements, and/or conflicts regarding the terms and/or implementation of any terms of this Settlement Agreement, the Parties agree to return to Russ Jones for mediation regarding the dispute. The Parties agree to return to mediation prior to filing any litigation regarding a breach of this settlement agreement or these terms. If a Party refuses to return to mediation, the remaining parties are permitted to file litigation without returning to mediation. Should further litigation be filed regarding a breach of the agreement, the prevailing party shall be entitled to an award of attorney's fees as determined by a jury or judge.

12.    **Indemnity.** Each party shall indemnify the other parties for all claims made by, through, or under the indemnifying party.

AGREED TO BY ALL PARTIES AS EVIDENCED BY THEIR SIGNATURE BELOW ON THIS THE 7th DAY OF JANUARY, 2022.

_____
Dakota Fontenot, in all capacities

_____
Holli Ann Fontenot, in all capacities

_____
Dallas Joseph Fontenot, III, in all capacities

_____
Michelle Ann Fontenot, in all capacities

_____
Ashley Fontenot Estrada, in all capacities

_____
Christopher Burt
*Counsel for Dakota Fontenot*

11

11.    **Future Disputes.** In the event that there are future disputes, disagreements, and/or conflicts regarding the terms and/or implementation of any terms of this Settlement Agreement, the Parties agree to return to Russ Jones for mediation regarding the dispute. The Parties agree to return to mediation prior to filing any litigation regarding a breach of this settlement agreement or these terms. If a Party refuses to return to mediation, the remaining parties are permitted to file litigation without returning to mediation. Should further litigation be filed regarding a breach of the agreement, the prevailing party shall be entitled to an award of attorney's fees as determined by a jury or judge.

12.    **Indemnity.** Each party shall indemnify the other parties for all claims made by, through, or under the indemnifying party.

AGREED TO BY ALL PARTIES AS EVIDENCED BY THEIR SIGNATURE BELOW ON THIS THE 7th DAY OF JANUARY, 2022.

_____
Dakota Fontenot, in all capacities

_____
Holli Ann Fontenot, in all capacities

## Dallas Joseph Fontenot III
Dallas Joseph Fontenot, III, in all capacities

## Michelle Ann Fontenot
Michelle Ann Fontenot, in all capacities

## Ashley Fontenot Estrada
Ashley Fontenot Estrada, in all capacities

_____
Christopher Burt
*Counsel for Dakota Fontenot*

11

Steven Mendel
*Counsel for Holli Ann Fontenot*

Kenneth Sumner
*Counsel for Dallas Joseph Fontenot, III,*
*Michelle Ann Fontenot, and Ashley Estrada*

12

Steven Mendel
*Counsel for Holli Ann Fontenot*

# Kenneth E. Sumner, Jr.

Kenneth Sumner
*Counsel for Dallas Joseph Fontenot, III,*
*Michelle Ann Fontenot, and Ashley Estrada*

Signature: *Dallas Joseph Fontenot III*
Dallas Joseph Fontenot III (Jan 7, 2022 19:33 CST)

Email: djoef3@hotmail.com

Signature: 
Ashley Fontenot Estrada (Jan 7, 2022 19:38 CST)

Email: ashleyafontenot@gmail.com

Signature: 
Michelle Fontenot (Jan 7, 2022 19:36 CST)

Email: mannefontenot@gmail.com

Signature: *Kenneth C. Sumner, Jr.*

Email: ksumner@romanosumner.com

12



EXHIBIT

F

## DESIGNATION OF SUCCESSOR TRUSTEE
### Dakota Trust

The undersigned Dallas Joseph Fontenot, Jr., Successor Trustee of Dakota Trust, a trust established by Trust Declaration of Holli Ann Fontenot dated November 9, 1994 ("Trust Declaration") does hereby declare as follows:

Article V, Section C of the Trust Declaration provides in part that:

> SUCCESSION.  Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment will have the right to appoint a successor or successors to serve as Trustee in the event that person ceases to serve for any reason, and each Trustee may specify any conditions upon succession and service as may be permitted by law.  For example, a successor may be required to furnish a fiduciary bond as a prerequisite or a successor's service may be conditioned upon another appointee's death, resignation, or inability to serve.  Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment may also provide that one or more designated successors as Trustee will have the authority to appoint his, her, or its successor as Trustee. An appointment of successor Trustee must be in writing and must be acknowledged to be effective.

Pursuant to Article V, Section C of the Trust Declaration, Dallas Joseph Fontenot, Jr. appoints Dakota James Fontenot as successor Trustee, to serve immediately upon the death, disability, resignation, or disqualification of Dallas Joseph Fontenot, Jr.

Dallas Joseph Fontenot, Jr. appoints Frost Bank to serve as successor Trustee upon the death, disability, resignation, or disqualification of Dakota James Fontenot.

Each Trustee will have the right to appoint a successor or successors to serve as trustee of the Trust in the event that he ceases to serve for any reason, and such Trustee may specify any conditions upon succession and service as may be permitted by law.

The incapacity or disability of a trustee hereunder shall be (i) determined by a duly licensed physician representing that he or she is certified by a recognized medical board and is not related by blood or marriage to any trustee or beneficiary hereunder; and (ii) evidenced by a writing which is executed, witnessed, and acknowledged certifying that such a physician is familiar with the physical and mental condition of a person and has concluded that, by reason of accident, physical, or mental deterioration, or other similar cause, such person was, as of the date thereof, unable to give prudent, prompt, and intelligent consideration to financial matters.  No judicial determination of incapacity

or disability shall be necessary. Any physician's certificate described above may be revoked by a similar certificate to the effect that such person is no longer incapacitated, which certificate must be executed either (i) by the originally certifying physician or (ii) by two other licensed, unrelated physicians. In the case of a revocation of a certificate of incapacity or disability of a trustee hereunder, such revocation shall cause such trustee to regain his or her appointment as trustee, and the then serving successor trustee shall be relieved of his or her duties.

This Designation of Successor Trustee shall be effective as of May 1, 2013 and shall revoke and replace all prior Designations of Successor Trustee.

_____
Dallas Joseph Fontenot, Jr., Trustee

STATE OF NEVADA
COUNTY OF __Clark__
This document was acknowledged before me on the 7TH day of May, 2013 by Dallas Joseph Fontenot, Jr., Trustee.

MICHAEL J. MOORE
Notary Public State of Nevada
No. 08-7991-1
My Appt. Exp. September 11, 2016

_____
Notary Public, State of Nevada

EXHIBIT

G
_____
exhibitsticker.com

## DESIGNATION OF SUCCESSOR TRUSTEE
Dakota Trust

The undersigned Dallas Joseph Fontenot, Jr., Successor Trustee of Dakota Trust, a trust established by Trust Declaration of Holli Ann Fontenot dated November 9, 1994 ("Trust Declaration") does hereby declare as follows:

Article V, Section C of the Trust Declaration provides in part that:

> SUCCESSION. Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment will have the right to appoint a successor or successors to serve as Trustee in the event that person ceases to serve for any reason, and each Trustee may specify any conditions upon succession and service as may be permitted by law. For example, a successor may be required to furnish a fiduciary bond as a prerequisite or a successor's service may be conditioned upon another appointee's death, resignation, or inability to serve. Except as set forth in Section V.B (the provisions of which shall control this section), each Trustee by original appointment may also provide that one or more designated successors as Trustee will have the authority to appoint his, her, or its successor as Trustee. An appointment of successor Trustee must be in writing and must be acknowledged to be effective.

Pursuant to Article V, Section C of the Trust Declaration, Dallas Joseph Fontenot, Jr. removes all prior appointments of appoints Dakota James Fontenot as successor Trustee and, instead, appoints Frost Bank to serve as successor Trustee upon the death, disability, resignation, or disqualification of Dallas Joseph Fontenot, Jr.

Each Successor Trustee will have the right to appoint a successor or successors to serve as trustee of the Trust in the event that he ceases to serve for any reason, and such Trustee may specify any conditions upon succession and service as may be permitted by law.

The incapacity or disability of a trustee hereunder shall be (i) determined by a duly licensed physician representing that he or she is certified by a recognized medical board and is not related by blood or marriage to any trustee or beneficiary hereunder; and (ii) evidenced by a writing which is executed, witnessed, and acknowledged certifying that such a physician is familiar with the physical and mental condition of a person and has concluded that, by reason of accident, physical, or mental deterioration, or other similar cause, such person was, as of the date thereof, unable to give prudent, prompt, and intelligent consideration to financial matters. No judicial determination of incapacity or disability shall be necessary. Any physician's certificate described above may be

000456

revoked by a similar certificate to the effect that such person is no longer incapacitated, which certificate must be executed either (i) by the originally certifying physician or (ii) by two other licensed, unrelated physicians. In the case of a revocation of a certificate of incapacity or disability of a trustee hereunder, such revocation shall cause such trustee to regain his or her appointment as trustee, and the then serving successor trustee shall be relieved of his or her duties.

This Designation of Successor Trustee shall be effective as of October 14, 2017 and shall revoke and replace all prior Designations of Successor Trustee.

_____
Dallas Joseph Fontenot, Jr., Trustee

STATE OF TEXAS
COUNTY OF Harris

This document was acknowledged before me on the 14th day of October, 2017 by Dallas Joseph Fontenot, Jr., Trustee.

_____
Notary Public, State of Texas

DIANNE N SKINNER
Notary ID # 126280969
My Commission Expires
November 11, 2019

000457

**EXHIBIT**

H
_____



## RESOLUTIONS ADOPTED BY
## WRITTEN CONSENT OF SHAREHOLDER AND DIRECTOR OF
## VIVA LAS VEGAS PROPERTIES, INC.
### (OCTOBER 14, 2017)

The undersigned, being the sole shareholder of Viva Las Vegas Properties, Inc., a corporation organized and existing under the laws of Texas, does by this writing consent to take the following actions and adopt the following resolutions:

> RESOLVED that the following persons person is elected as the sole Director of Viva Las Vegas Properties, Inc., to serve at the discretion of the Shareholder from October 14, 2017 until such time as his successors are elected by the Shareholder and qualify:

> Dallas Fontenot

The undersigned direct that this consent be filed with the minutes of the proceeding of the Shareholders of Viva Las Vegas Properties, Inc.

The undersigned, now being the sole director of Viva Las Vegas Properties, Inc., does by this writing consent to take the following actions and adopt the following resolutions:

> RESOLVED that the following person is elected to the offices of Viva Las Vegas Properties, Inc. set forth below, to serve at the discretion of the director from October 14, 2017 until such time as his successors are elected by the Shareholder and qualify:

> Dallas Fontenot      President
> Dallas Fontenot      Secretary

> ESOLVED that Dakota Fontenot is hereby removed from all offices and all positions as a Director of Viva Las Vegas Properties, Inc. from and after October 14, 2017.

The undersigned direct that this consent be filed with the minutes of the proceeding of the Directors of Viva Las Vegas Properties, Inc.

This consent is executed pursuant to the laws of Texas and the Bylaws of Viva Las Vegas Properties, Inc., which authorize the taking of action by the Shareholders and Directors by unanimous written consent without a meeting. This consent is intended to substitute for a special meeting of the Shareholders and Directors of Viva Las Vegas Properties, Inc. Only those persons named above shall serve as Directors until a subsequent election or appointment by the

000437

Shareholder of Viva Las Vegas Properties, Inc. Only those persons named above shall serve as an officer until a subsequent election or appointment by the Director of Viva Las Vegas Properties, Inc.

Dated to be effective as of October 14, 2017.

Viva Las Vegas Properties, Inc., Shareholder

by: _____

Dallas Fontenot, President

_____

Dallas Fontenot, Director

000438