UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA GOEHRS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| MADISON FONTENOT and | § | |
| DAKOTA FONTENOT, | § | CIVIL ACTION NO. 4:26-cv-02743 |
| | § | |
| *Defendants,* | § | |
| | § | |
| DALLAS JOSEPH FONTENOT III | § | |
| and MICHELLE FONTENOT, | § | |
| | § | |
| *Intervenors.* | § | |

**INTERVENORS' MOTION FOR AN ORDER TO SHOW CAUSE
WHY DAKOTA FONTENOT SHOULD NOT BE HELD IN CONTEMPT**

Intervenors Michelle Fontenot ("Michelle") and Dallas Joseph Fontenot III

("Joe") seek an order from this Court requiring Dakota Fontenot to show cause as to

why he should not be held in contempt for failing to comply with a binding and

enforceable temporary injunction entered against him before this case was removed.

**INTRODUCTION**

Dakota, Michelle, and Joe have two things in common. They are siblings and

are the primary beneficiaries of a trust known as the Holli Ann Hardin Trust No.

1

One ("Trust") established by their late father, Dallas Fontenot. Linda Goehrs is the Trustee of the Trust.

The Trust's assets previously included two lucrative entities known as HFR Enterprises, Inc., which owned land and a commercial building, and Ice Embassy, Inc., which owned a business (the Colorado Club) that operated on HFR Enterprises, Inc.'s property. Dakota, who served as an officer and director of both entities, owned a separate insolvent entity called Entertainment Marketing & Management, Ltd. That entity purportedly provided certain "management services" to the Colorado Club.

Dakota sold his entity and the Trust's assets for millions of dollars and allocated most of the purchase price to his defunct entity, effectively stealing the Trust's assets for the enrichment of himself and his wife, Madison. To claw back the ill-gotten gains, a probate court in Harris County entered a binding and enforceable preliminary injunction that required Dakota to, among other things, deposit the stolen sale proceeds into the court's registry and provide an accounting. He and Madison responded by removing the case to this Court, presumably believing that would nullify his obligation to comply with the injunction. But it does not.

Under binding authority, the temporary injunction remains in effect post-removal. And Dakota has yet to comply. Therefore, Michelle and Joe respectfully ask this Court to intervene and hold Dakota accountable.

2

### FACTUAL AND PROCEDURAL BACKGROUND

Unbeknownst to Michelle and Joe, Dakota negotiated a sale of Ice Embassy, Inc., HFR Enterprises, Inc.'s real property, and his defunct entity, Entertainment Marketing & Management, Ltd., for a total purchase price of $7,750,000. Although his entity was insolvent, Dakota secretly allocated the purchase price to his business to the exclusion of the businesses held by the Trust, effectively depriving the Trust, Michelle, and Joe of significant assets. After reduction for debts that Dakota and Madison had allowed to accrue, the Trust received approximately $700,000, while Dakota received $2,750,000 in the form of an initial $1,500,000 lump sum payment followed by subsequent installment payments. Dakota's fraudulent scheme didn't end there.

In August of 2025, after receiving 1.5 million dollars in proceeds, Dakota and his wife created an entity in the U.S. Virgin Islands called Emerald Island Holdings, LLC and used the proceeds to purchase real property in the name of that entity. Dakota and Madison later transferred Emerald Island Holdings, LLC to Madison's parents, receiving no cash consideration but continuing to control the entity's primary asset.

At that point, the Trustee as Plaintiff and Joe and Michelle as Intervenors each sought a temporary injunction in the pending Harris County Probate Court litigation

to protect and preserve the remaining installment payments from further dissipation by Dakota and his wife. The temporary injunctive hearing was set on Friday, March 6, 2026.

On the second day of the evidentiary hearing, Dakota revealed that on March 5—the day before the hearing commenced—he had released any right to the remaining $937,500 in future payments in exchange for a significantly reduced lump sum payment of $575,000, to be wired directly to him. Upon receipt of those funds, he and his wife then immediately transferred the money to Madison's parents during the hearing, purportedly in exchange for a lease of the same property owned by Emerald Island Holdings, LLC.

On March 13, 2026, after two and a half days of evidence and argument, the probate court concluded the hearing and orally granted the temporary injunction against Dakota that would require him to deposit all proceeds received pursuant to the sale of the Trust's assets into the registry of the Court and produce relevant documentation regarding the facts and circumstances of the fraudulent transactions.

On March 18, 2026, the court entered a written order granting the temporary injunction. Exhibit 1, Temporary Injunction. The court found that the Trustee and Intervenors demonstrated a probable right to recovery on their claims arising from Dakota's conduct in connection with the fraudulent transactions and further found

4

that the temporary injunction was necessary to prevent probable, imminent, and irreparable harm, including the loss or further dissipation of the Trust's assets. *Id.*

The temporary injunction ordered Dakota to deposit $2,174,500 (sale proceeds) into the registry of the Court within 15 days. *Id.* The court further ordered Dakota to produce various documents relating to the fraudulent transactions and the disposition of the proceeds within 10 days. *Id.* Dakota was also enjoined from spending, transferring, distributing, encumbering, pledging, or assigning any funds or assets held in any bank account in his name or under his control. *Id.* The court also required Dakota to provide a written, sworn accounting within 90 days with accompanying supporting documentation. *Id.*[1]

In a transparent attempt to avoid the effect of that Order, Madison removed the case to this Court. Docket No. 1. But removal does not invalidate the state court's order. And because Dakota has yet to comply with a single obligation set forth in the orders, this Court should intervene and hold Dakota accountable.

---

[1] The order granting the temporary injunction indicated that the matter would be set for trial by separate order, but did not include a trial date in the order itself. *Id.* Dakota then appealed the order to the Fourteenth Court of Appeals, presumably on this basis. On April 7, the probate court then entered a modified order granting the temporary injunction that set a trial date and added some additional factual and legal findings. Exhibit 2. That order still required Dakota to deposit the stolen money into the court's registry and provide information concerning the fraudulent transactions. *Id.*

## ARGUMENT AND AUTHORITIES

28 U.S.C. § 1450 provides that, for any action removed from a state court to a United States district court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Upon removal, the state court orders become federal orders, and federal procedure governs their enforcement. *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300 (1988). Accordingly, the probate court's temporary injunctions remain in effect in this Court.

Federal courts have the inherent power to punish for contempt. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980). "The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts and, consequently, to the due administration of justice." *Chilcutt v. United States*, 4 F.3d 1313, 1327 n. 38 (5th Cir. 1993) (quoting *Ex parte Robinson*, 86 U.S. 505 (1873)).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir 1981). The movant must establish "1) that a court order was in effect, 2) that the order required certain

6

conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Whitcraft v. Brown*, 570 F.3d 268, 271–72 (5th Cir. 2009). All three contempt elements are satisfied here.

First, the probate court orally granted Michelle and Joe's request for a temporary injunction on March 13, 2026, entered a written order granting a temporary injunction on March 18, 2026, and entered a modified order granting a temporary injunction on April 7, 2026. *See* Exhibits 1 and 2. Neither the original order nor the modified order have been set aside or otherwise declared unenforceable. Thus, these orders entered before the removal of this case to this Court, remain in effect under 28 U.S.C. § 1450. So, the first contempt element is satisfied.

Second, the temporary injunction orders required certain conduct by Dakota. Dakota was required to take the following actions:

a. Deposit over $2,000,000 into the registry of the Court by April 22, 2026, at the latest;

b. Produce specific documents in native format with all accompanying metadata by April 17, 2026, at the latest;

c. Refrain from spending, transferring, distributing, encumbering, pledging, or assigning any assets held in his bank accounts;

d. Refrain from spending, transferring, distributing, encumbering, pledging, or assigning any proceeds or assets traceable to any payments from the EMM agreement or the sale of Emerald Island Holdings, LLC; and

7

e. Provide a written, sworn accounting describing and detailing the distribution of all proceeds received from the EMM Agreement, including production of account statements from June 1, 2025, on and all closing, sale, and loan documents for assets acquired with funds traceable to the proceeds, by July 6, 2026, at the latest.

*See* Exhibits 1 and 2. Dakota's obligations are unmistakably clear and specific. So, the second contempt element is satisfied.

Finally, Dakota has failed to even partially comply with these requirements. He did not deposit any sum of money into the registry of the Court and has not produced any of the documents that he was ordered to produce, establishing the third and final contempt element. Exhibit 3, Affidavit of R. Cantrell. So, the third element is also satisfied.

Accordingly, Michelle and Joe ask this Court to issue a show cause order directing Dakota to appear and explain why he should not be held in contempt for failing to comply with the Temporary Injunctions, and after notice and hearing, Michelle and Joe further ask the Court to enter an order holding Dakota in contempt and sanction Dakota to coerce his compliance with the Temporary Injunctions, including a coercive per diem fine, a compensatory fine, coercive incarceration, or a combination thereof. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). Michelle and Joe further request this Court to order Dakota to pay their reasonable and necessary attorneys' fees in preparing this motion and participating in the show cause hearing.

8

CONCLUSION

Intervenors Michelle Fontenot and Dallas Joseph Fontenot III respectfully request that the Court enter the requested show cause order, and after notice and hearing, hold Dakota Fontenot in contempt and issue appropriate sanctions. Intervenors request all other and further relief, including their attorneys' fees, to which the Court finds them justly entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.

By: */s/ Ryan O. Cantrell*
    Ryan O. Cantrell, Attorney-in-Charge
    Texas Bar No. 24055259
    Southern District of Texas No. 726506
    ryan.cantrell@chamberlainlaw.com
    Mariah J. Karigan
    Texas Bar No. 24123088
    Southern District of Texas No. 3663234
    mariah.karigan@chamberlainlaw.com
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    (713) 658-1818

*Attorneys for Michelle Fontenot and Dallas Joseph Fontenot III*

9

## CERTIFICATE OF SERVICE

On August 13, 2026, pursuant to Federal Rule of Civil Procedure 5, a correct copy of this pleading was sent to all parties of record through the Court's electronic case filing system.

*/s/ Ryan O. Cantrell*
Ryan O. Cantrell