**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LINDA GOEHRS, in her capacity as Temporary Trustee of the Holi Ann Hardin Trust No. 1,** et al. | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action Number** |
| | § | **26-cv-02743** |
| | § | |
| **DAKOTA FONTENOT,** | § | |
| **MADISON FONTENOT, et al.,** | § | **(Jury Demanded)** |
| | § | |
| **Defendants.** | § | |

**DEFENDANT DAKOTA FONTENOT'S ANSWER TO PLAINTIFF'S PETITION, COUNTERCLAIM, AND CROSSCLAIM AGAINST INTERVENORS MICHELLE FONTENOT AND DALLAS JOSEPH FONTENOT III**

TO THE UNITED STATES DISTRICT COURT:

Defendant Dakota Fontenot ("Dakota"), files this Answer to the petition of Linda Goehrs, in her capacity as "Temporary" Successor Trustee of the Holli Ann Hardin Trust Number One ("Plaintiff" or the "Hardin Trust"), asserts this Counterclaim against Goehrs, and his Crossclaim against Intervenors Michelle Fontenot ("Michelle") and Dallas Joseph Fontenot III ("Joe").

## I. PRELIMINARY STATEMENT

1. This action was commenced on or about August 21, 2025, in Probate Court No. 1 of Harris County, Texas, Cause No. 537,721, and was removed to this Court.

2. Dakota answered, counterclaimed, and cross-claimed in the probate court, including by his First Amended Answer, First Amended Counterclaim, and Cross-Claim filed on or about October 15, 2025, and demanded a jury. This pleading is filed to meet federal form and to assert, or reassert, claims for recovery of improper distributions. It is not a waiver of any state-court pleading, defense, or jury demand. See Fed. R. Civ. P. 81(c). To the extent an answer, denial or affirmative defense applies to Intervenor's claims, it is so asserted.

## II. ANSWER

### *A. Parties, jurisdiction, and venue*

3. Dakota admits that Plaintiff purports to sue in a fiduciary capacity as temporary successor trustee of the Holli Ann Hardin Trust Number One, a trust created on or about June 5, 1991. Dakota denies that Plaintiff's temporary authority remains valid, and denies that Plaintiff has capacity or standing to assert the claims pleaded.

4. Dakota admits he is an individual.

5. Dakota admits he has served as an officer and director of Ice Embassy, Inc. ("Ice") and HFR Enterprises, Inc. ("HFR"), entities associated with the Colorado Bar & Grill in Houston, Texas (the "Club"), and that he has acted as trustee

of the Dakota Trust and as an officer of Viva Las Vegas Properties, Inc. He denies that those roles were unauthorized, and denies the characterization of his service as "purported" only.

6. Dakota admits this controversy concerns Texas trusts, Texas entities, and some events in Harris County, Texas.

### *B. Background facts*

7. Dakota admits that Holli Ann Hardin Fontenot ("Holli") created the Hardin Trust on or about June 5, 1991, while married to Dallas Joseph Fontenot, Jr. ("Dallas"); that Dakota is the child of Holli and Dallas; and that Joe and Michelle are Dallas's children from a previous marriage and are primary beneficiaries of the Hardin Trust, as is Dakota. He admits Dallas died on September 3, 2021, and that Dallas's assets were held among his estate, the Hardin Trust, and the Dakota Trust, created on or about November 9, 1994.

8. Dakota admits the Hardin Trust owned Ice, which operated the Club, and HFR, which owned the real property on which the Club operated, until the 2025 sale of those assets. He admits Dallas's estate was probated in Fort Bend County and that litigation concerning the estate and the trusts was resolved by a Binding Mediated Settlement Agreement dated January 7, 2022 (the "Settlement Agreement").

9. Dakota admits the Settlement Agreement provided for a buyout of Holli's interest in the trusts, to be purchased by Dakota, Joe, Michelle, and/or entities owned by the Hardin Trust, and that HFR entered into loan financing in connection with that buyout and with deferred maintenance. He admits the Hardin Trust paid Holli approximately $2,823,464. He denies that this payment "wrongfully benefitted" him, denies that the Hardin Trust became an 85 percent beneficiary of the Dakota Trust in the manner alleged, and denies that he has failed to account for consideration flowing between the trusts. Amounts owed, if any, are subject to offset for sums the Hardin Trust entities owe the Dakota Trust and Dakota personally, including sums he guaranteed and collateral he pledged.

10. Dakota admits a May 1, 2013 designation and an October 14, 2017 instrument exist. He denies that the 2017 instrument validly removed him as successor trustee of the Dakota Trust or from his positions with Dakota Trust entities. He alleges, as set out in the Counterclaim, that the 2017 instrument is invalid as a forgery, was revoked, or both, and that the Settlement Agreement was intended to honor Dallas's wish that Dakota be in charge of the family business and entities. He admits he has acted as trustee of the Dakota Trust and denies that he did so without authority.

11. Dakota denies that he caused waste, mismanaged the Club for personal benefit, or engaged in the self-dealing alleged in the petition, including the

allegations that he hired his wife without business justification, paid personal credit cards or personal expenses from the company, took vacations as business expenses, made unnecessary improvements, hired consultants without benefit, changed systems to permit money to be taken, repaid a $150,000 loan with $50,000 of interest to an offshore account within a month, bound the Hardin Trust entities to unnecessary management or administrative agreements, or used loan-repayment funds for personal benefit and caused a "fire sale." Dakota left other employment, guaranteed obligations, and pledged Dakota Trust property to keep a cash-poor business operating. Decisions he made were informed, in good faith, and within the business-judgment rule. Plaintiff was aware of and approved the financing plan and the course of operations.

12. Dakota denies that the Club's decline was caused by his conduct in the manner alleged. He admits the business was appraised, at Plaintiff's instance, as cash poor, and that Ice and HFR were sold on or about July 1, 2025. He denies that the net proceeds to the Hardin Trust reflect misappropriation by him. He denies that he is liquidating trust assets in order to flee, and denies that injunctive relief is necessary or proper.

13. Regarding the Entertainment Marketing & Management transaction described in the removal record and, on information and belief, in Plaintiff's January 15, 2026 amended petition: Dakota admits EMM was addressed in the Settlement

Agreement and that payments concerning EMM were made to him. He denies that those payments were a diversion of Hardin Trust assets, denies that EMM was an asset of the Hardin Trust, and denies that any release of future installments for a reduced lump sum was a fraudulent transfer. Further responding, Plaintiff interfered with contractually owed EMM payments, as alleged in the Counterclaim.

### *C. Plaintiff's claims for relief*

14. Dakota denies that Plaintiff is entitled to a declaratory judgment that he must repay the Hardin Trust for amounts paid to Holli, that Plaintiff is an 85 percent beneficiary of the Dakota Trust, that he is liable for 50 percent of the Holli buyout, or that he is not trustee of the Dakota Trust or an officer or director of the Club entities. The Settlement Agreement and the trust instruments do not impose the liability Plaintiff describes.

15. Dakota denies that he was unjustly enriched. He denies that the trusts were required to bear the Holli buyout equally in the manner alleged, denies that he misappropriated Club funds, and denies that Plaintiff is entitled to recover on an unjust-enrichment theory. Any benefit he received was pursuant to the Settlement Agreement, his compensation, his personal guarantees, or property of the Dakota Trust.

16. Dakota denies that he owed Plaintiff the fiduciary duties alleged, denies that he breached any duty, and denies that any breach caused the injury claimed.

Duties he owed as an officer or director ran to the entities, not to the temporary trustee. He denies that he fraudulently diverted hundreds of thousands of dollars from the Club.

17. Dakota denies that Plaintiff has been damaged in any amount, denies that his conduct was fraudulent or malicious, and denies that exemplary damages are available or warranted. He denies there is a likelihood of success on the merits, irreparable injury, or an inadequate remedy at law, and denies that the balance of equities or the public interest supports a temporary restraining order, temporary injunction, or permanent injunction. He specifically denies the restraints sought, including restraints on sale or transfer of assets, a bar on his serving as trustee or officer, and compelled inspection on the terms requested.

18. Dakota denies that the office of trustee of the Dakota Trust is vacant. He denies that First Interstate Bank of Texas, N.A., or any successor, is the proper trustee, and denies that the Court should appoint a neutral third party. If a vacancy exists, he requests appointment as set out in the Counterclaim. Frost Bank declined to serve as successor trustee of the Dakota Trust on October 16, 2025.

19. Dakota denies that all conditions precedent have been performed or have occurred. He denies that Plaintiff is entitled to a jury on claims that are equitable only, but does not oppose a jury on legal claims and separately demands a jury below. He denies that Plaintiff is entitled to attorneys' fees.

20. Except as expressly admitted, Dakota denies each allegation in Plaintiff's Original Petition and in any amended petition, including the prayer. Pursuant to Fed. R. Civ. P. 8(b)(3) and 8(b)(5), allegations not specifically admitted are denied, and Dakota lacks knowledge or information sufficient to form a belief as to any allegation concerning the internal motives or unpublished calculations of Plaintiff, Joe, or Michelle, and therefore denies those allegations.

21. To the extent Joe and Michelle have pleaded claims against Dakota, including fraudulent-transfer claims concerning the EMM payments, Dakota denies those claims and incorporates these denials and the affirmative defenses below.

## III. AFFIRMATIVE AND OTHER DEFENSES

22. Dakota asserts the following defenses under Fed. R. Civ. P. 8(c) and 12. He does not assume the burden of proof on any defense on which Plaintiff or Intervenors bear that burden. He reserves the right to amend as discovery proceeds.

23. Lack of capacity and standing. Plaintiff's appointment as temporary successor trustee was to last until the estate-plan litigation was resolved. That litigation was resolved by the Settlement Agreement in 2022, which required her to resign when Holli's interest was bought out. She has no independent interest in this suit. She is not a beneficiary of the Dakota Trust and lacks standing to challenge its trusteeship. Claims about Dakota's conduct as an officer or director are not hers to bring. The order appointing her required beneficiary agreement before she hired

counsel to institute this litigation; that agreement was not obtained, including from the guardian of Dakota's children or from Michelle's children, who are beneficiaries.

24. Failure to state a claim upon which relief can be granted.

25. Waiver, ratification, and estoppel. Plaintiff knew of and approved the financing used to buy Holli out of both trusts, knew Dakota personally guaranteed obligations and secured them with Dakota Trust property in which he and that trust had no ownership of the Club, and knew the lengths taken to keep the business operating. She cannot sue because other beneficiaries are dissatisfied with decisions she joined.

26. Business-judgment rule. Complaints about operation of the Club are barred. Dakota acted in good faith, on an informed basis, and in the honest belief that his actions were in the best interests of the entities and their owner. The appraisal Plaintiff commissioned showed a cash-poor business. Value that was salvaged was salvaged through his work.

27. Unclean hands. Plaintiff's equitable claims are barred by her own conduct, including partiality toward Joe and Michelle, funding their litigation from the Hardin Trust, charging unauthorized compensation, and interfering with payments owed to Dakota.

28. Offset and recoupment. Any amount claimed from the Dakota Trust or from Dakota is offset by what Hardin Trust entities owe Dakota Trust entities and

Dakota personally, including guarantees, collateral, advances of at least $36,104.83, and unpaid transition amounts.

29. Release and settlement. The Settlement Agreement released claims regarding the estate and the trusts, known or unknown, through its effective date. Pre-settlement claims are barred.

30. Statute of limitations, laches, and illegality, to the extent shown by the evidence.

31. Failure to mitigate; comparative responsibility; contribution; and proportionate responsibility under Texas Civil Practice and Remedies Code Chapter 33, to the extent applicable.

32. Plaintiff's damages, if any, were caused by prior condition of the business, market conditions, Holli's conduct as executor, Joe and Michelle, or persons other than Dakota.

33. Any duty, if owed, was limited, was not the duty pleaded, and was discharged. Plaintiff has an adequate remedy at law. Injunctive relief is barred because the acts complained of are complete, compensable in money, or both.

## <u>IV. COUNTERCLAIM AGAINST PLAINTIFF</u>

34. Dakota realleges paragraphs 1 through 36.

### *A. Declaratory judgment*

35. An actual controversy exists concerning the 2017 instrument, trusteeship of the Dakota Trust, the effect of the Settlement Agreement on Joe and

Michelle's claimed interest in the Dakota Trust, and sums Dakota advanced for Dakota Trust property. Dakota seeks a declaration under 28 U.S.C. § 2201 and, alternatively, Texas Civil Practice and Remedies Code § 37.005.

36. The validity of Dallas's 2017 estate planning was at the center of the prior litigation. Dallas's children contended that instruments removing Dakota from the plan were contrary to his stated wish, before and after 2017, that Dakota be in charge of the business and family entities. The Settlement Agreement was intended to honor that wish. Dakota asks the Court to declare that the 2017 instrument purportedly removing him as successor trustee of the Dakota Trust is invalid as a forgery, a revoked instrument, or both, and that he is the validly serving trustee.

37. Alternatively, if the Court finds no trustee is validly serving, Dakota asks to be appointed under Texas Property Code § 112.054(a)(2) and (a)(5). Frost Bank has declined to serve.

38. Joe and Michelle knew the Dakota Trust existed and that beneficiary status was in issue. They were represented in the estate-plan litigation and entered the Settlement Agreement to resolve that litigation and "all related claims and/or controversies between them, whether asserted or not, known or unknown, actual or contingent." Dakota asks for a declaration that they waived and released any claim to be beneficiaries of the Dakota Trust.

39. The Dakota Trust holds Viva Las Vegas Properties, Inc., which holds real estate. After the Club sale, rent stopped and the trust had no cash flow. Dakota paid expenses of that property, including lawn care and maintenance, in the amount of $36,104.83 [verify]. He asks for a declaration that the Dakota Trust owes him that sum, plus any additional advances proved at trial, and for recovery of it.

### *B. Specific performance and removal*

40. Plaintiff was appointed temporary successor trustee by a Fort Bend County court in 2021, to serve until the estate-plan litigation was resolved. It was resolved in 2022. The Settlement Agreement required her to resign when Holli's interest was bought out. She did not. She has served more than four years beyond a temporary appointment. Dakota asks the Court to enforce the Settlement Agreement, compel her resignation, and remove her under Texas Property Code §§ 113.082 and 114.008.

### *C. Accounting*

41. Plaintiff has not given Dakota an itemization of Hardin Trust receipts and disbursements, including compensation she has paid herself and distributions or fee payments to or for Joe and Michelle. Dakota demands an accounting under Texas Property Code § 113.151.

### *D. Breach of fiduciary duty*

42. Plaintiff owed duties of loyalty, impartiality, and care to the beneficiaries, including Dakota. She breached those duties in at least the following respects.

43. She supervised the buyout appraisals. A receivable from Dallas was on the books of Ice. Dakota warned that it presented collection risk and should not be taken at book value. She insisted on full book value, which increased the buyout price and benefitted Holli at the expense of Dakota and the other beneficiaries. Holli, as independent executor, then refused to pay the receivable. Collection required a federal lawsuit and recovered only a fraction of book value.

44. She has charged the Hardin Trust her full legal rate in tenth-of-an-hour increments and has not provided monthly statements to the beneficiaries. Article 7.3 of the trust requires compensation "in accordance with the usual and customary charges in the community where and when such services are rendered." Charging a legal hourly rate is not usual and customary trustee compensation in Harris County and is not authorized by the order appointing her. Dakota seeks disgorgement of all fiduciary compensation, in an amount she has not disclosed or is not reasonable usual and customary

45. After the sale, she allowed Joe and Michelle to push her into this lawsuit, on claims she had previously described as without merit, rather than risk being sued herself. She favored them over Dakota. She instituted suit without the

beneficiary agreement required by her appointment order. She has attempted to freeze payments to Dakota unrelated to this litigation. She has funded Joe and Michelle's prosecution of this case from the Hardin Trust and refused an equalizing distribution to Dakota.

46. These breaches damaged Dakota and the Hardin Trust. He seeks actual damages, disgorgement, and equitable relief under Texas Property Code §§ 114.001 and 114.008.

### *E. Tortious interference*

47. As part of the sale, Plaintiff agreed to cover certain transition expenses. The buyer presented receipts of approximately $82,167.25 that she is obligated to pay and has not paid. The buyer has withheld funds owed to Dakota from the EMM sale as a result.

48. Plaintiff also urged the buyer not to make contractually owed payments to Dakota, citing this litigation. EMM is not a Hardin Trust asset and is not a proper subject of this suit. The interference was willful, without justification, and caused Dakota damages in an amount to be proved.

### *F. Improper distributions — counterclaim*

49. Plaintiff has made distributions or disbursements from the Hardin Trust to or for the benefit of Joe and Michelle that are improper, unequal, and outside the Settlement Agreement. By letter dated November 14, 2025, her counsel stated that Joe and Michelle, treated by her as one "side," had been paid $93,247.48 from the

trust, consisting of $29,670.98 to Romano & Sumner and $63,247.48 to Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., and that she claimed authority to pay more under a $200,000 "per side" cap. She refused an equalizing distribution to Dakota. On information and belief additional improper distributions are being made which will be learned in discovery.

50. Paragraph B.7 of the Settlement Agreement states: "The attorney's fees for Holli, Dakota, Joe, Michelle, and/or Ashley may be paid from the assets of the Holli Ann Hardin Trust Number One in an amount no more than $200,000.00 per side." That sentence covered fees of the litigation being settled, not a fund for later suits by one beneficiary against another. Joe and Michelle were aligned with Dakota in the prior matter, did not file their own affirmative claim for relief, and were not a separate "side" entitled to a fresh $200,000. Using the clause to fund this case against Dakota, while telling him his own cap was exhausted, breached the Settlement Agreement and her duty of impartiality.

51. Dakota seeks a declaration that the fee clause does not authorize these payments; an injunction against further payments from the Hardin Trust for Joe and Michelle's fees in this case; an equalizing distribution of not less than $63,247.48, or such greater sum as the evidence shows has been paid for their benefit and not for his; and damages for breach of the Settlement Agreement and breach of trust.

***G. Fees on the counterclaim***

52. Dakota seeks reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code § 37.009, Texas Property Code § 114.064, Chapter 38 of the Civil Practice and Remedies Code to the extent the claims are contractual, and paragraph 11 of the Settlement Agreement. Fee amounts will be proved by motion or at trial.

## V. CROSSCLAIM AGAINST MICHELLE FONTENOT AND DALLAS JOSEPH FONTENOT III

53. Dakota realleges paragraphs 1 through 55. Michelle and Joe are parties to this action as intervenors. This crossclaim arises out of the same transaction or occurrence as Plaintiff's claims and Dakota's counterclaim, and concerns property that is the subject of the original action — assets and distributions of the Hardin Trust. Fed. R. Civ. P. 13(g). It is also asserted as a counterclaim against them to the extent they have asserted claims against Dakota. It is pleaded in the alternative and subject to the jurisdictional reservation above.

54. Michelle and Joe are primary beneficiaries of the Hardin Trust. They intervened, joined Plaintiff's claims, and later added fraudulent-transfer allegations against Dakota and Madison Fontenot. They have prosecuted this case with counsel paid, in whole or in part, by the Hardin Trust.

55. On information and belief, and as stated by Plaintiff's counsel on November 14, 2025, the Hardin Trust has paid approximately $93,247.48 for Joe and Michelle's attorneys' fees, including $63,247.48 to their current counsel and

$29,670.98 to prior counsel, and Plaintiff has asserted a right to pay them more than $100,000 in additional fees. Dakota was refused a corresponding distribution. These sums are improper distributions from the Plaintiff trust. They reduced assets in which Dakota holds a beneficial interest and conferred a benefit on Joe and Michelle that the trust instrument and the Settlement Agreement do not authorize for this litigation. Dakota anticipates the contention that Trust § 5.1 permits unequal distributions and that the Settlement Agreement fee clause authorizes these payments. Section 5.1 does not license a trustee to fund one beneficiary's suit against another, and the fee clause settled the prior case only. Neither provision is a defense to restoration.

56. Joe and Michelle knew the payments were being made from the Hardin Trust to fund claims against a co-beneficiary. They accepted the benefit. They encouraged Plaintiff to file and maintain this suit in exchange for not suing her, and thereby knowingly participated in her breaches of fiduciary duty. They are jointly liable for those breaches.

57. Money had and received / restitution. Joe and Michelle hold money, or the traceable benefit of money, that in equity and good conscience belongs to the Hardin Trust or is payable to Dakota as an equalizing distribution. Dakota seeks restitution of all improper distributions, in an amount to be proved, not less than the unequal fee payments.

58. Unjust enrichment. Joe and Michelle secured a benefit — payment of their litigation against Dakota from trust principal or income — which it would be unconscionable for them to retain. Dakota seeks the value of that benefit.

59. Constructive trust and equitable lien. The Court should impose a constructive trust on amounts Joe and Michelle received, directly or through counsel, from improper Hardin Trust distributions, and on any property acquired with those funds, and should order restoration to the trust or payment to Dakota to equalize the distribution.

60. Breach of the Settlement Agreement. Joe and Michelle are parties to the Settlement Agreement. The fee clause does not entitle them to a separate $200,000 side for this case. Their acceptance of those payments is a breach. Dakota seeks damages and specific performance, including restoration and an equalizing payment.

61. Knowing participation in breach of fiduciary duty. Joe and Michelle assisted and encouraged Plaintiff's partiality and the funding of their suit from the trust. They are jointly and severally liable for the resulting loss.

62. Equitable contribution, reimbursement, and equalizing distribution. Under Texas Property Code §§ 114.001 and 114.008, and in equity, Dakota seeks an order requiring Joe and Michelle to restore improper distributions and requiring

an equalizing distribution to him of not less than $63,247.48, plus any later fee payments from the trust for their benefit, with prejudgment interest.

63. Accounting. Joe and Michelle should account for every distribution, fee payment, or other benefit received from the Hardin Trust since January 7, 2022, including amounts paid to their counsel.

64. Dakota seeks from Joe and Michelle his reasonable and necessary attorneys' fees under Texas Property Code § 114.064, Texas Civil Practice and Remedies Code § 37.009, and paragraph 11 of the Settlement Agreement, and costs.

## VI. JURY DEMAND

65. Dakota demands a trial by jury on all issues so triable, under Fed. R. Civ. P. 38 and the Seventh Amendment. This demand renews the jury demand he filed in the probate court. See Fed. R. Civ. P. 81(c)(3).

## VII. PRAYER

Dakota prays that the Court:

a. enter judgment that Plaintiff take nothing on her claims;

b. declare that the 2017 instrument is invalid and that Dakota is the valid trustee of the Dakota Trust, or appoint him trustee; declare that Joe and Michelle released any Dakota Trust beneficiary claim; and declare that the Dakota Trust owes him $36,104.83 [verify], plus further advances;

c. compel Plaintiff to resign and remove her as temporary successor trustee;

d. order a full accounting of the Hardin Trust;

e. award damages, disgorgement, and injunctive relief against Plaintiff for breach of fiduciary duty, breach of the Settlement Agreement, and tortious interference;

f. declare that fee payments to or for Joe and Michelle in this litigation are improper distributions, enjoin further such payments, and impose a constructive trust on amounts already paid;

g. award Dakota, against Plaintiff and against Joe and Michelle jointly and severally as proved, restitution and an equalizing recovery of not less than $63,247.48 [verify], plus subsequent improper distributions, with prejudgment and postjudgment interest;

h. award Dakota his reasonable and necessary attorneys' fees and costs; and

i. grant all other relief to which he is justly entitled, at law or in equity.

Dated: October 2, 2026.

Respectfully submitted,
________/S/James D. Pierce___________

**James D. Pierce**
Texas Bar No. 15994500
115 Guenther Street
Sugar Land, Texas 77478
Telephone: (713) 419-3775
Facsimile: (281) 242-7330
jim@jamespierce.com

*Attorneys for Defendant Dakota Fontenot*

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, a true and complete copy of this instrument was served by the Court's electronic-filing system, or by email if a party is not a filing user, on the following:

Rudolph M. Culp and Collin J. Bullard, Texas Probate Attorney PLLC, 24 Greenway Plaza, Suite 1825, Houston, Texas 77046, rudy@texasprobateattorney.com, collin@texasprobateattorney.com, counsel for Plaintiff Linda Goehrs.

Ryan O. Cantrell and Mariah J. Karigan, Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., 1200 Smith Street, Suite 1400, Houston, Texas 77002, ryan.cantrell@chamberlainlaw.com, mariah.karigan@chamberlainlaw.com, counsel for Intervenors Michelle Fontenot and Dallas Joseph Fontenot III.

Lloyd E. Kelley, 2726 Bissonnet, Suite 240, PMB 12, Houston, Texas 77005, kelley@lloydekelley.com, counsel for Madison Fontenot.

S/James D. Pierce
______________________________
James D. Pierce